E-FILED
Sunday, 08 May, 2022 01:25:36 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| Lacie Davis, individually and on behalf of all others similarly situated, | 3:22-cv-03071 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ricola USA, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Ricola USA, Inc. ("Defendant") manufactures, labels, markets, and sells cough suppressant and oral anesthetic lozenges "Made With Swiss Alpine Herbs" under the Ricola brand ("Product").



2. The other representations include "Ricola," "Original Herb Cough Drops," "Great Tasting," "Effective Relief," pictures of peppermint, elder, wild thyme, horehound, hyssop, mallow, sage, linden flowers, lemon balm and thyme, and a picture of an amber lozenge.

## I. HERBAL PRODUCTS MARKET

3. The past thirty years has seen a steep increase in consumer consumption and usage of products containing herbal extracts.

4. During this time, eighty percent of adults have used over-the-counter ("OTC") drug products containing herbal ingredients at some point for their healthcare needs over pharmaceutical alternatives.

5. According to Mintel, the herbal remedies market is over $10 billion per year and growing at over four percent per year.

6. Almost half of Americans report using herbal remedies in the prior twelve months.

7. Sixty-five percent of younger parents regularly select products with herbal ingredients for themselves and their children.

8. This has caused the pharmaceutical industry to investigate more ways to use herbal ingredients in OTC products.

9. Herbal ingredients are increasingly incorporated into OTC categories, including external pain relieving rubs, cough suppressants, muscle relaxants, digestive aids, and oral care.

10. Herbal products are used by consumers to address the same issues traditional OTC products are, including common colds, coughs, muscle soreness and aches, sleep issues, and stress.

## II. REASONS FOR INCREASE IN DEMAND FOR HERBAL PRODUCTS

11. The reasons for increased usage of herbal products are several.

12. First, numerous consumers are better able to tolerate products based on herbal

ingredients than synthetic ones.

13. Second, the resurgence in popularity of alternative medicine systems like Ayurveda, which rely heavily on herbal ingredients, has made consumers seek out products made with similar ingredients.

14. Third, a growing number of consumers believe that the American medical and pharmaceutical system overuse traditional medications and seek to reduce their usage of standard prescriptions.

15. Fourth, many consumers believe that herbal ingredients are more potent and less harmful than man-made ingredients.

16. The Coronavirus pandemic further increased consumer adoption of products containing herbal ingredients as another layer of protection from this disease.

### III. REPRESENTATIONS THAT EFFECTIVENESS IS DUE TO HERBAL INGREDIENTS IS MISLEADING

17. Despite the front label representations including "Cough Suppressant," "Oral Anesthetic," "Effective Relief," "Made With Swiss Alpine Herbs," and pictures of ten herbs, the Product's therapeutic effect is not provided by any of the herbs pictured on the front label.

18. This is shown through a review of the Drug Facts on the back label, which identify menthol as the only active ingredient.



**Active Ingredient** (in each drop)
Menthol, 4.8 mg

**Inactive Ingredients** color (caramel), extract of a Ricola herb mixture (elder, horehound, hyssop, lemon balm, linden flowers, mallow, peppermint, sage, thyme, wild thyme), natural flavor, starch syrup, sugar

19. An active ingredient means any component intended to provide a pharmacological or direct effect in the mitigation or treatment of any condition. 21 C.F.R. § 210.3(b)(7).

20. However, the herbs promoted on the front label are exclusively "Inactive Ingredients."

21. Inactive ingredients are defined as any component other than active ingredients. 21 C.F.R. § 210.3(b)(8).

22. Consumers seeing the Product's front label will expect its cough suppressant and oral anesthetic functionality will be provided by its herbal ingredients.

23. It is false, deceptive and misleading to claim or imply that the Product's inactive ingredients provide a therapeutic benefit.

24. Competitor products contain substantially similar ingredients to the Product.

25. However, only Defendant's Product conveys the message that its herbal ingredients are responsible for the cough suppressant and oral anesthetic properties it provides.

26. Competitor herbal lozenges from Meijer, Target, Dollar General, and Walmart, do not represent to consumers that their herbal ingredients are responsible for its therapeutic effects, by disclosing the presence of menthol on their front labels, i.e., "4.8 mg Menthol Per Drop" and "Menthol Cough Suppressant."






## IV. CONCLUSION

27. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

28. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

29. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

30. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

31. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

32. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.99 per 21 lozenges, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

33. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

34. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

35. Plaintiff Lacie Davis is a citizen of Illinois.

36. Defendant Ricola USA, Inc. is a New Jersey corporation with a principal place of business in Parsippany, Morris County, New Jersey.

37. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

38. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

39. The Product is available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

40. Venue is in the Springfield Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Mason County, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

41. Plaintiff Lacie Davis is a citizen of Forest City, Mason, Illinois.

42. Defendant Ricola USA, Inc. is a New Jersey corporation with a principal place of business in Parsippany, New Jersey, Morris County.

43. Ricola was founded almost a hundred years ago in the shadow of the Swiss Alps.

44. The original Ricola lozenge was a potent therapeutic combination of Swiss herbs that was developed based on centuries of local knowledge, passed down orally through the rural mountainside communities.

45. For many decades, the Ricola lozenges were able to provide therapeutic benefits based on its unique blend of Swiss Alpine herbs.

46. In October 2021, Ricola revealed the results of its strategic review of its branding and marketing.

47. The result was the claim that its products are "Made With Swiss Alpine Herbs."

48. The Product is available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

49. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, 3320 Veterans Dr, Pekin, IL 61554, between February 3, 2022, and April 3, 2022, and/or among other times.

50. Plaintiff believed and expected the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.

51. Plaintiff seeks to purchase OTC and other products which contain herbal ingredients that contribute to those products' functionality.

52. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

53. Plaintiff bought the Product at or exceeding the above-referenced price.

54. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

55. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

56. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

57. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

58. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar OTC and other products promoted as made with herbal ingredients, because she is unsure whether those representations are truthful.

## Class Allegations

59. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Iowa, Ohio, Montana, Virginia, New Mexico, Arkansas, Maine, Wyoming, North Dakota and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

60. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

61. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

62. Plaintiff is an adequate representative because her interests do not conflict with other members.

63. No individual inquiry is necessary since the focus is only on Defendant's practices

9

and the class is definable and ascertainable.

64. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

65. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

66. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

67. Plaintiff incorporates by reference all preceding paragraphs.

68. Plaintiff believed the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

69. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

70. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

71. Plaintiff relied on the representations and omissions to believe the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

72. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

73. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are

similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

74. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

75. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

76. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

77. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

78. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

79. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

80. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

81. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

82. Defendant's representations affirmed and promised that the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

83. Defendant described the Product so Plaintiff and consumers believed it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

84. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

85. This duty is based on Defendant's outsized role in the market for this type of Product, the preeminent company in the area of herbal lozenges.

86. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

87. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

88. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

89. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

90. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

91. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it functioned as a cough suppressant and oral anesthetic due to the presence of herbal

ingredients.

92. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

93. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

94. Defendant had a duty to truthfully represent the Product, which it breached.

95. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the preeminent company in the area of herbal lozenges.

96. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

97. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

98. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

99. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

100. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

## Fraud

101. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

102. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

103. Defendant knew of the issues described here yet did not address them.

104. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

105. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the

applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: May 8, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com