E-FILED
Tuesday, 21 June, 2022  04:28:52 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LACIE DAVIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:22-cv-03071-SEM-KLM |
| v. | ) ) | Hon. District Judge Sue E. Myerscough |
| RICOLA USA, INC., | ) ) | Hon. Magistrate Karen L. McNaught |
| Defendant. | ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF RICOLA USA, INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ...........................................................................................1

II.   SUMMARY OF ALLEGATIONS ...................................................................3

     A.    The Parties ...........................................................................................3

     B.    Ricola's Packaging Accurately Discloses the Presence of Swiss Alpine Herbs ...........................................................................................................3

     C.    Plaintiff's Alleged Experience With the Ricola Product .........................5

III.  LEGAL STANDARD ON MOTION TO DISMISS.........................................6

IV.  THE COURT SHOULD DISMISS THE COMPLAINT ...................................7

     A.    Plaintiff's Claims Fail Because No Reasonable Consumer Would Be Deceived by Ricola's Product.................................................................7

     B.    Ricola's Product is Specifically Authorized to Use the "Cough Suppressant" and "Oral Anesthetic" Claims, Which Fall Within the "Safe Harbor" of the ICFA ................................................................................................10

     C.    Plaintiff's Claims Are Expressly Preempted by the FDCA...................13

     D.    Plaintiff Cannot Maintain Her Claims for Breach of Express/Implied Warranties ..........................................................................................14

     E.    Plaintiff's Magnuson-Moss Warranty Act Claim Falls With Her State Claims ................................................................................................15

     F.    Plaintiff's Other Common Law Claims Also Fail as a Matter of Law .................15

          1.   *Negligent Misrepresentation*....................................................15

          2.   *Fraud*.........................................................................................16

          3.   *Unjust Enrichment* ...................................................................17

     G.    Plaintiff's Claim for Injunctive Relief Fails Because There Is No Actual and Imminent Threat of Injury ..................................................................17

V.   CONCLUSION.............................................................................................18

# **TABLE OF AUTHORITIES**

**Page(s)**

<u>Cases</u>

*Access Living of Metro. Chi. v. Uber Techs., Inc.*
958 F.3d 604 (7th Cir. 2020) ...................................................7

*Aliano v. Fifth Generation, Inc.*
No. 14 C 10086, 2015 U.S. Dist. LEXIS 128104 (N.D. Ill. Sep. 24, 2015)...........13

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)...................................................7

*Beardsall v. CVS Pharmacy, Inc.*
953 F.3d 969 (7th Cir. 2020) ...................................................7, 8

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)...................................................6, 7

*Bell v. Publix Super Markets, Inc.*
982 F.3d 468 (7th Cir. 2020) ...................................................2, 7

*Benson v. Fannie May Confections Brands, Inc.*
944 F.3d 639 (7th Cir. 2019) ...................................................6

*Bittman v. Fox*
107 F. Supp. 3d 896 (N.D. Ill. 2015) ...................................................17

*Bober v. Glaxo Wellcome Plc*
246 F.3d 934 (7th Cir. 2001) ...................................................2, 10, 11, 12, 13, 17

*Bowling v. Johnson & Johnson*
65 F. Supp. 3d 371 (S.D.N.Y. 2014)...................................................13

*Camasta v. Jos. A. Bank Clothiers, Inc.*
761 F.3d 732 (7th Cir. 2014) ...................................................18

*Cerretti v. Whole Foods Mkt. Grp., Inc.*
No. 21 CV 5516, 2022 U.S. Dist. LEXIS 65513 (N.D. Ill. Apr. 8, 2022)...............8

*Chiappetta v. Kellogg Sales Co.*
No. 21-CV-3545, 2022 U.S. Dist. LEXIS 35632 (N.D. Ill. Mar. 1, 2022)
...................................................7, 14, 15, 16, 18

*Cleary v. Philip Morris Inc.*
656 F.3d 511 (7th Cir. 2011) ...................................................17

*Engram v. GSK Consumer Healthcare Holdings (US) Inc.*
No. 19-CV-2886(EK)(PK), 2021 U.S. Dist. LEXIS 189143 (E.D.N.Y. Sep. 30, 2021)...........8

*Floyd v. Pepperidge Farm, Inc.*
   No. 21-cv-525-SPM, 2022 U.S. Dist. LEXIS 12610 (S.D. Ill. Jan. 24, 2022)
   ...................................................................................................7, 8, 9, 10, 15, 16

*Forth v. Walgreen Co.*
   No. 17-cv-2246, 2018 U.S. Dist. LEXIS 39212 (N.D. Ill. Mar. 9, 2018) ..............................17

*G & S Holdings, LLC. v. Cont'l Cas. Co.*
   697 F.3d 534 (7th Cir. 2012) ...................................................................................6

*Harris v. Topco Assocs., LLC*
   No. 20 C 4355, 2021 U.S. Dist. LEXIS 89716 (N.D. Ill. May 11, 2021) ........................12, 13

*Housey v. P&G*
   2022 U.S. Dist. LEXIS 53603 (S.D.N.Y. Mar. 24, 2022) ......................................................14

*Ibarrola v. Kind, LLC*
   83 F. Supp. 3d 751 (N.D. Ill. 2015) .......................................................................17

*Lemke v. Kraft Heinz Food Co.*
   No. 21-cv-278-wmc, 2022 U.S. Dist. LEXIS 82279 (W.D. Wis. May 6, 2022)......................1

*Moorman Mfg. Co. v. Nat'l Tank Co.*
   91 Ill. 2d 69 (1982) ...............................................................................................15

*NRDC, Inc. v. United States FDA*
   710 F.3d 71 (2d Cir. 2013)...........................................................................10, 11

*Ollivier v. Alden*
   262 Ill. App. 3d 190 (1994) .......................................................................................16

*Payton v. County of Kane*
   308 F.3d 673 (7th Cir. 2002) .......................................................................................18

*Price v. Philip Morris, Inc.*
   219 Ill. 2d 182 (2005) ...............................................................................................10

*Reinitz v. Kellogg Sales Company*
   No. 21-cv-1239-JES-JEH, 2022 U.S. Dist. LEXIS 98580 (C.D. Ill. June 2,2022) ..................7

*Robinson v. Walgreen Co.*
   No. 20 C 50288, 2022 U.S. Dist. LEXIS 12188 (N.D. Ill. Jan. 24, 2022).........................9, 13

*Rudy v. Family Dollar Stores, Inc.*
   No. 21-CV-3575, 2022 U.S. Dist. LEXIS 20426 (N.D. Ill. Feb. 4, 2022) ..............................16

*Scherr v. Marriott Int'l, Inc.*
   703 F.3d 1069 (7th Cir. 2013) .......................................................................................18

*Schiesser v. Ford Motor Co.*
   No. 16-cv-00730, 2016 U.S. Dist. LEXIS 149392 (N.D. Ill. Oct. 28, 2016) .........................15

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*
   475 F.3d 824 (7th Cir. 2007) ...............................................................................16

*Ulrich v. Probalance, Inc.*
   No. 16 C 10488, 2017 U.S. Dist. LEXIS 132202 (N.D. Ill. Aug. 18, 2017) ..........................18

<u>Statutes</u>

15 U.S.C. §§ 2301, et seq...............................................................................1, 14, 15

21 U.S.C.
   § 355....................................................................................................10
   § 355h(b)(8)(A)..........................................................................................12

815 ILCS 505/1, et seq...........................................................................1, 2, 6, 7, 10, 13, 14

21 C.F.R.
   § 330.1...................................................................................................11
   § 330.10..................................................................................................10
   § 341.14(b)(2)............................................................................................12
   § 341.74(a)...............................................................................................12
   § 356.10(e)...............................................................................................12
   § 356.55(a)...............................................................................................12

<u>Rules</u>

Fed. R. Civ. Proc. 8(a) ......................................................................................6

Fed. R. Civ. Proc. 9(b) ...................................................................................6, 16

Fed. R. Civ. Proc. 12(b)(1) ..................................................................................7

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................1, 6

<u>Other Authorities</u>

53 Fed. Reg. 2436 (Jan. 27, 1988) ...........................................................................12

Defendant Ricola USA, Inc. ("Ricola") respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss Plaintiff Lacie Davis' Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.     INTRODUCTION

Plaintiff claims that she was misled by the front of Ricola's packaging which accurately and unambiguously states that the product is "Made With Swiss Alpine Herbs." Plaintiff does not challenge the fact that the Ricola Product is "Made with Swiss Alpine Herbs" and Plaintiff cannot point to any untruths anywhere on the Ricola Product packaging. Instead, the thrust of Plaintiff's claim is that she interpreted the statement to mean that the herbs function as a "Cough Suppressant" and "Oral Anesthetic" when those "functions" are provided by the menthol in the lozenges. Respectfully, Plaintiff's claim here is yet another in a string of "unreasonable and unactionable" interpretations of product packaging advanced by her attorney throughout the country, and her complaint should be dismissed.[1]

Plaintiff seeks to represent classes of Illinois and other state's consumers with the following claims: (1) Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.; (2) Violation of State Consumer Fraud Acts (of other states); (3) Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; (4) Negligent Misrepresentation; (5) Fraud; and (6) Unjust Enrichment. Plaintiff also seeks injunctive relief. Plaintiff's claims all fail as a matter of law.

---

[1] *See Lemke v. Kraft Heinz Food Co.*, No. 21-cv-278-wmc, 2022 U.S. Dist. LEXIS 82279, at *15, n.3 (W.D. Wis. May 6, 2022) ("this court agrees with the recent decisions issued by the Northern and Southern District Courts of Illinois, as well as the Southern District of New York, in rejecting other suits brought by plaintiff's counsel for advancing an interpretation of a product's packaging that is 'unreasonable and unactionable.'").

First, no reasonable consumer would be misled or deceived by the Ricola Product packaging in the way that Plaintiff alleges and Plaintiff simply ignores "the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020). Plaintiff's theory is implausible and absurd. It is undisputed that the Ricola Product is *made with* Swiss Alpine Herbs. Ricola never makes any representation about the function of these Swiss Alpine Herbs. And as Plaintiff herself points out, the Swiss Alpine Herbs are not listed as "Active ingredients" in the Drug Facts on the back of the package. Thus, Plaintiff's purported misunderstanding – which is contrary to the plain meaning of the words on front of the package – is easily resolved by the other information provided on the label.

Second, Plaintiff alleges that because the Swiss Alpine Herbs are not listed as "Active ingredients" this means that "the Product's therapeutic effect is not provided by any of the herbs pictured on the front label." But Plaintiff's unilateral assumption ignores that the Drug Facts on the back of the package are controlled by the United States Food and Drug Administration ("FDA"). As explained in further detail below, Ricola's label is regulated by the FDA's over-the-counter "monograph" system. Through this system, the FDA dictates which ingredients may be listed as "active" and which must be listed as "inactive." Thus, Plaintiff's allegation – that the Swiss Alpine Herbs must be listed as "active ingredients" to have any "therapeutic effect" – is inconsistent with the requirements of the FDA and is not actionable under the ICFA's "Safe Harbor" provision. *See Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 942 (7th Cir. 2001). For these same reasons, Plaintiff's claims are also expressly preempted by the FDCA.

Finally, Plaintiff's ancillary claims for fraud, unjust enrichment, and breach of warranty all fall with her implausible theory of deception and independently suffer from further defects requiring them to be dismissed as a matter of law. Plaintiff lacks standing to bring a claim for

injunctive relief because she is now aware that the Swiss Alpine Herbs are listed as "Inactive ingredients" and she cannot be further deceived.

For these reasons, Plaintiff's Complaint should be dismissed in its entirety.

## II.   SUMMARY OF ALLEGATIONS

### A.   The Parties

Ricola is a company that sells cough suppressant and oral anesthetic lozenges (Compl. ¶ 1.)  The original Ricola lozenge was developed in Switzerland almost a hundred years ago based on centuries of local knowledge, passed down orally through the rural mountainside communities. (*Id.* ¶¶ 43-44.)  Plaintiff alleges that for many decades, the Ricola lozenges have been able "to provide therapeutic benefits based on its unique blend of Swiss Alpine herbs."  (*Id.,* ¶ 45.)

Plaintiff is an individual who resides in Mason, Illinois.  (*Id.*, ¶ 41.)  Plaintiff alleges that she purchased the Ricola Product "on one or more occasions" between February 3, 2022 and April 3, 2022.  (*Id.*, ¶ 49.)  Plaintiff "seeks to purchase OTC and other products which contain herbal ingredients that contribute to those products' functionality."  (*Id.*, ¶ 51.)

### B.   Ricola's Packaging Accurately Discloses the Presence of Swiss Alpine Herbs

The front of the Ricola Product package (depicted below) states that it is "Made With Swiss Alpine Herbs" and lists ten specific herbs along with a vignette of each plant (Compl. ¶ 1, Fig. 1):



The back of the package includes the "Drug Facts" which list the active and inactive ingredients. (*Id*., ¶ 18.) These Drug Facts are controlled by the FDA through the Code of Federal Regulations. "An active ingredient means any component intended to provide a pharmacological or direct effect in the mitigation or treatment of any condition." (*Id*., ¶ 19 [citing 21 C.F.R. § 210.3(b)(7)].) "Inactive ingredients are defined as any component other than active ingredients." (*Id.*, ¶ 21 [citing 21 C.F.R. § 210.3(b)(8)].) Menthol is the only active ingredient listed in the Drug Facts for the Ricola Product (*Id*., ¶ 18; Fig. 2):



**Active Ingredient:** (in each drop) Menthol, 4.8 mg

**Inactive Ingredients:** color (caramel), extract of a Ricola herb mixture (elder, horehound, hyssop, lemon balm, linden flowers, mallow, peppermint, sage, thyme, wild thyme), natural flavor, starch syrup, sugar  (*Id.*, p. 8.)

## C.    Plaintiff's Alleged Experience With the Ricola Product

Plaintiff alleges that she purchased the Ricola Product "at stores including Walmart, 3320 Veterans Dr, Pekin, IL 61554, between February 3, 2022, and April 3, 2022, and/or among other times." (*Id.*, ¶ 1.)  Plaintiff claims that she "relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing." (*Id.*, ¶ 50.)  However, Plaintiff does not identify any statements made by Ricola other than those present on the Ricola Product packaging.  (*Id.* ¶¶ 1-2, 17-22, 47.)

Plaintiff alleges that she "believed and expected the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product." (*Id.*, ¶ 50.) Plaintiff claims she would not have purchased the Ricola Product if "the true facts had been known"; that "the Product's therapeutic effect is not provided by any of the herbs pictured on the front label." (*Id.*, ¶¶ 17, 72.) Plaintiff never alleges that the Ricola Product did not work for her as a cough suppressant and oral anesthetic.

## III.   LEGAL STANDARD ON MOTION TO DISMISS

Under Federal Rule of Civil Procedure Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. Proc. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation, quotations, and emphasis omitted).

A plaintiff must go beyond "mere labels and conclusions" and plead some facts that suggest a right of relief that is "above the speculative level." *G & S Holdings, LLC. v. Cont'l Cas. Co.*, 697 F.3d 534, 537-38 (7th Cir. 2012). Claims sounding in fraud, including a claim alleging deceptive practices in violation of the ICFA, must satisfy the plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b). *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). In practice, this means that a plaintiff must identify the "who, what, when, where, and how" of the alleged fraud. *Id.*

A complaint that sets forth a mere "formulaic recitation of the elements" will not survive a motion to dismiss; indeed, Plaintiff must provide "enough facts to state a claim to relief that is

plausible on its face" and bear the burden of "nudg[ing] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Rule 12(b)(1) similarly requires dismissal of claims when a plaintiff lacks constitutional standing. *Access Living of Metro. Chi. v. Uber Techs., Inc.,* 958 F.3d 604, 613 (7th Cir. 2020).

## IV.    THE COURT SHOULD DISMISS THE COMPLAINT

### A.    Plaintiff's Claims Fail Because No Reasonable Consumer Would Be Deceived by Ricola's Product

Claims for misleading advertising under the ICFA are governed by the "reasonable consumer" standard. *Bell*, 982 F.3d at 474. This means that statements are only actionable where it is probable "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972-73 (7th Cir. 2020) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).

Courts considering "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Bell*, 982 F.3d at 477. Thus, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477; *see Reinitz v. Kellogg Sales Co.,* No. 21-cv-1239-JES-JEH, 2022 U.S. Dist. LEXIS 98580, at *9 (granting motion to dismiss where plaintiff "did not 'establish a probability that a significant portion of the general consuming public'" would expect fudge to contain milkfat); *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 U.S. Dist. LEXIS 35632, at *7 (N.D. Ill. Mar. 1, 2022) (dismissing claim brought by Plaintiff's same counsel where the plaintiff had "not identified any 'untruths on the packaging' or a plausible deception."); *Floyd v. Pepperidge Farm, Inc.*, No. 21-cv-525-SPM, 2022 U.S. Dist. LEXIS 12610,

at *9-10 (S.D. Ill. Jan. 24, 2022) (same, finding "consumers were not deceived by representations that the crackers contained butter" because "[t]he name and the ingredient list coalesced"); *Cerretti v. Whole Foods Mkt. Grp., Inc.*, No. 21 CV 5516, 2022 U.S. Dist. LEXIS 65513, at *7 (N.D. Ill. Apr. 8, 2022) (same, where "[t]he product contained an accurate ingredients list" and "[w]ith that context, Whole Food's packaging wasn't likely to deceive a significant portion of reasonable consumers").

Here, the Ricola Product packaging – read in context with the information available to consumers – makes clear that the lozenges are "Made With Swiss Alpine Herbs."  This is a true statement because the lozenges are *made with* Swiss Alpine Herbs, which are listed and depicted on the front of the package.  This fact is undisputed by Plaintiff.  Instead, Plaintiff attempts to contort this plain language to mean that the Swiss Alpine Herbs in the Product serve the functions of providing a cough suppressant and oral anesthetic.  That is not what the packaging says or even implies.  Ricola makes no statements on the package about the "function" that these herbs serve other than in the Drug Facts panel.

Plaintiff's assertion that she personally misunderstood the statements and images on the packaging does not make it plausible that her interpretation is shared with a "significant portion of reasonable consumers."  *Beardsall*, 953 F.3d at 972-73.  To the contrary, just as "[c]onsumers are accustomed to seeing a product's ingredients listed by weight under the nutrition facts . . . so too are consumers accustomed to seeing the FDA-mandated 'Directions' on the back of an over-the-counter product."  *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886(EK)(PK), 2021 U.S. Dist. LEXIS 189143, at *14 (E.D.N.Y. Sep. 30, 2021).  In other words, consumers routinely review the instructions and ingredients of OTC drug products when making purchases – this is especially so when consumers must determine the appropriate uses of the drug.

"Allegedly deceptive labels must be viewed in context, and even where a statement might be deceptive in isolation, it may be permissible in conjunction with clarifying language." *Floyd*, 2022 U.S. Dist. LEXIS 12610, at *8-9. For example, in *Floyd*, the plaintiff alleged that the packaging of "Golden Butter" crackers was "misleading because 'even though the [crackers] contain butter, it contains a non-de minimis amount of butter substitutes — vegetable oils.'" *Id.* at *2 (citing *Bober*, 246 F.3d at 938). Dismissing the plaintiff's claim, the court determined that the crackers were "a golden color" and "the use of the word 'butter' is descriptive" and therefore these statements were "not false, misleading, or fraudulent" as a matter of law. *Id.* The court further rejected the plaintiff's interpretation of these statements to mean that "butter was the sole shortening ingredient" where butter was "the second ingredient on the label, behind only flour." *Id.*

Likewise, in *Robinson v. Walgreen Co.*, No. 20 C 50288, 2022 U.S. Dist. LEXIS 12188 (N.D. Ill. Jan. 24, 2022), plaintiffs challenged the labeling of Walgreen's infant acetaminophen product. The plaintiffs alleged that they saw the "Infants' Product and, based on the packaging, believed it to be specifically formulated for — or otherwise to be used exclusively for — infants . . . and purchased the Infants' Product from Walgreens because of these representations." *Id.* at *7. Rejecting the plaintiff's interpretation of the packaging statements and images, the court found that "[n]o reasonable consumer would understand Infants' Product to be specially formulated, in light of the numerous express statements regarding the acetaminophen concentration, overlapping age ranges, and the infant-specific dosing mechanism." *Id.* at *22-23 (internal quotations omitted). Thus, the court found that the label was not deceptive "because it would not mislead a 'reasonable consumer,' as understood *in light of all the information available to plaintiffs*." *Id.* at *24 (emphasis added).

Here, as in *Floyd* and *Robinson*, the "Made With Swiss Alpine Herbs" statement challenged by Plaintiff is truthful and Plaintiff could easily correct her misunderstanding with the other information available on the label. Ricola states that the product is "Made With Swiss Alpine Herbs." There is no ambiguity in this statement and the ingredient list correspondingly reflects that the product is made with Swiss Alpine Herbs. As explained by the court in *Floyd*, "a statement or label cannot mislead unless it actually conveys untrue information about a product." *Floyd*, 2022 U.S. Dist. LEXIS 12610 at *9. Ricola's Product does not convey untrue information, and no reasonable consumer would understand the Ricola Product to be advertising the "functions" of the herbs. Accordingly, Plaintiff's claim should fail as a matter of law.

### B.    Ricola's Product is Specifically Authorized to Use the "Cough Suppressant and "Oral Anesthetic" Claims, Which Fall Within the "Safe Harbor" of the ICFA

The "safe harbor" provision of the ICFA provides that the act shall not apply to actions "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1). Accordingly, if a regulatory body acting under specific statutory authority authorizes the use of a term in labeling and advertising, a defendant may not be held liable under the ICFA even if the term might be deemed false, deceptive, or misleading. *See Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 244 (2005). In other words, if a defendant "is doing something specifically authorized by federal law, section 10b(1) will protect them from liability under the [I]CFA." *Bober*, 246 F.3d at 941 (affirming dismissal of complaint under the 10(b)(1) safe harbor where defendant's statements were "within the boundaries established by federal law").

The FDA must generally approve drugs as GRAS/E individually,[2] however, the "monograph" system allows manufacturers to bypass individualized review. *See* 21 U.S.C. § 355;

---

[2] "GRAS/E" means "generally recognize as safe and effective."

21 C.F.R. § 330.10.  "Under this system, FDA issues a detailed regulation—a "monograph"—for each therapeutic class of OTC drug products." *NRDC, Inc. v. United States FDA*, 710 F.3d 71, 75 (2d Cir. 2013).  "Like a recipe, each monograph sets out the FDA-approved active ingredients for a given therapeutic class of OTC drugs and provides the conditions under which each active ingredient is GRAS/E."  *Id.*

"An OTC monograph is a 'rule book' for each therapeutic category establishing conditions, such as active ingredients, uses (indications), doses, labeling, and testing, under which an OTC drug is generally recognized as safe and effective (GRASE) and can be marketed without a New Drug Application and FDA pre-market approval."  *See* "Over-the-Counter (OTC) Drug Monograph Process," (FDA website, last accessed 21 June 2022, https://www.fda.gov/drugs/over-counter-otc-drug-monograph-process).  Any OTC monograph product must meet the specific conditions in the applicable monograph, and any product that fails to comply with the monograph is liable to regulatory action.  *See* 21 C.F.R. § 330.1 ("An over-the-counter (OTC) drug listed in this subchapter is generally recognized as safe and effective and is not misbranded if it meets each of the conditions contained in this part and each of the conditions contained in any applicable monograph.  Any product which fails to conform to each of the conditions contained in this part and in an applicable monograph is liable to regulatory action.")  Accordingly, "[t]he manufacturer of a drug may not recommend or even suggest uses for a drug that are not approved by the FDA or supported by sufficient medical evidence." *Bober*, 246 F.3d at 942 (citing 21 C.F.R. § 330.1(d)).

Here, Ricola markets its Original Herb Cough Drop product under two monographs: The Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic Drug Products For Over-The-Counter Human Use monograph ("Cold/Cough Monograph") (21 C.F.R. Part 341) and the Oral Health Care Drug Products for Over-the-Counter Human Use tentative final monograph ("Oral Anesthetic

Monograph") (proposed 21 C.F.R. Part 356) (53 Fed. Reg. 2436 (Jan. 27, 1988).[3]  Each monograph

sets forth the specifically permitted active ingredients, indications, warnings, and directions.

Ricola's product contains the active ingredient menthol, which is specifically permitted

under the Cough/Cold Monograph and the Oral Anesthetic Monograph.  *See* Cough/Cold

Monograph at 21 C.F.R. § 341.14(b)(2) (menthol as an antitussive (*i.e.*, cough suppressant); Oral

Anesthetic Monograph at proposed 21 C.F.R. § 356.10(e) (menthol as an anesthetic).  Because the

product contains menthol, Ricola is authorized to use the terms "cough suppressant"/"oral

anesthetic" in the product's statement of identity.  *See* Cold/Cough Monograph at 21 C.F.R. §

341.74(a) (Labeling of antitussive drug products: "Statement of identity. The labeling of the

product contains the established name of the drug, if any, and identifies the product as a 'cough

suppressant'"); *See* Oral Anesthetic Monograph at proposed 21 C.F.R. § 356.55(a) ("Statement of

identity. The labeling of the product contains the established name of the drug, if any, and identifies

the product as an 'oral anesthetic'").

Plaintiff alleges that she and the putative class understood the "cough suppressant" and

"oral anesthetic" statements on the front of the package to mean that the herbs on the front of the

package performed these functions.  (*See* Compl., ¶¶ 17, 22, 25, 50, 68, 71, 78, 81-84, 91-92, 101.)

For example, Plaintiff alleges that "Consumers seeing the Product's front label will expect its

cough suppressant and oral anesthetic functionality will be provided by its herbal ingredients."

(*Id.* ¶ 22.)  However, the "cough suppressant" and "oral anesthetic" statements are indisputably

"within the boundaries established by federal law."  *Bober*, 246 F.3d at 941.  Thus, regardless of

whether Plaintiff's strained interpretations of these claims are plausible – which they are not for

---

[3] "[T]he CARES Act has deemed the TFM to have the force of law as a final monograph, providing
that tentative monographs for Category I drugs . . . are final administrative orders. *Harris v. Topco
Assocs., LLC*, No. 20 C 4355, 2021 U.S. Dist. LEXIS 89716, at *9 (N.D. Ill. May 11, 2021); *see*
21 U.S.C. § 355h(b)(8)(A) ("A . . . tentative final monograph described in subparagraph (B) shall
be deemed to be a final administrative order under this subsection").

the reasons discuss above – Ricola's labeling of the Product as a "cough suppressant" and "oral anesthetic" falls within the safe harbor of the ICFA, and Plaintiff's claims must be dismissed.  *Id.*; *see also Aliano v. Fifth Generation, Inc.,* No. 14 C 10086, 2015 U.S. Dist. LEXIS 128104, at *11-12 (N.D. Ill. Sep. 24, 2015) (granting motion to dismiss where defendants "use of its label is specifically authorized by the TTB, as a regulatory body").

### C.    Plaintiff's Claims Are Expressly Preempted by the FDCA

Plaintiff's claims are also expressly preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA").  "In the context of OTC drugs, the FDCA expressly preempts state law labeling requirements that are 'different from,' 'addition[al] to,' or 'otherwise not identical with' federal labeling requirements."  *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) (citing 21 U.S.C. § 379r(a)(2)).  Here, Plaintiff alleges that she understood the "cough suppressant" and "oral anesthetic" to mean that these functions were provided by the herbs in the Ricola Product.  Plaintiff further alleges that "Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product."  (Compl., ¶ 84.)  But, as explained above, the Cold/Cough and Oral Anesthetic Monographs regulate the labeling of the Ricola Product and specifically permit the statements of identity challenged by Plaintiff, including which ingredients to list as "active" and which to list as "inactive".  Thus, Plaintiff's claims – which seek to impose alternative and/or additional requirements on Ricola to clarify the statements – are preempted by the FDCA and must be dismissed.  *Harris v. Topco Assocs., LLC*, No. 20 C 4355, 2021 U.S. Dist. LEXIS 89716, at *11-12 (N.D. Ill. May 11, 2021) (granting motion to dismiss and explaining that "[b]ecause the [temporary final monograph for aspirin] does not require any specific disclaimers concerning infant products nor the interchangeability of the two products at issue, [plaintiff's] claims are preempted because she seeks to impose additional obligations on [defendant] not imposed by the TFM").

Further, to support her ICFA claim, Plaintiff must allege that she suffered "actual damage" proximately caused by the alleged deception.  *Robinson*, 2022 U.S. Dist. LEXIS 12188, at *19 (setting forth elements of ICFA claim).  But Plaintiff is preempted from alleging that the Ricola

-13-

Product is ineffective – such that she received no benefit from the menthol – to support her claim of "actual harm" where the Cough Suppression and Oral Anesthetic monographs specifically support the challenged statements of identity. *See Housey v. P&G*, 2022 U.S. Dist. LEXIS 53603, at \*24 (S.D.N.Y. Mar. 24, 2022) (finding claims preempted where the "only active ingredient" in challenged toothpaste was fluoride and the "FDA has issued a monograph regarding fluoride, which 'permits the sale, without a new drug application, of products the active ingredient of which is [fluoride] . . . and it provides that the product is not misbranded if it contains the claims regarding decay prevention set forth in the monograph.'"). Thus, Plaintiff is also preempted from pleading the element of harm required to support her claim under the ICFA.

### D.   Plaintiff Cannot Maintain Her Claims for Breach of Express/Implied Warranties

Plaintiff asserts claims for "Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq." (Compl., p. 11, ¶¶ 78-93.) None of these claims are sufficiently pled.

As an initial matter, Plaintiff's warranty claims are premised on the exact same conduct as her alleged false advertising claims. But Ricola has not made any untrue statements on its packaging and Plaintiff's alleged inferences are implausible as a matter of law. Accordingly, Plaintiff's ancillary breach of warranty claims fail for the same reasons as her ICFA claim. *Chiappetta*, 2022 U.S. Dist. LEXIS 35632, at \*13-14 ("[w]e agree with [defendant] that [plaintiff's] claims for breach of express and implied warranties suffer from the same infirmity as [plaintiff's] ICFA claim: [defendant] never made the representation that [plaintiff] claims it made.")

Plaintiff's state-law warranty claims fail for a separate and additional reason: under Illinois law "[b]uyers seeking to sue for breach of express or implied warranties *must first notify the seller of its breach*" before bringing suit. *Id.* at \*12 (emphasis added). Here, Plaintiff has entirely failed to provide the required pre-suit notice for her state-law warranty claims. In a backwards attempt

to satisfy this requirement, Plaintiff tries to use her Complaint to provide "notice to Defendant that it breached the express and implied warranties associated with the Product." (Compl., ¶ 88.) But Plaintiff "cannot satisfy the pre-suit notice obligation by filing suit." *See Chiappetta*, 2022 U.S. Dist. LEXIS 35632, at *14 (rejecting this same conduct). And Plaintiff's further allegation that Ricola received complaints from third-party sources at most "suggests that [Ricola] has 'generalized knowledge' of the alleged defect, which does not suffice under Illinois law." *Id.*; *cf.* Compl. ¶ 89. Thus, Plaintiff has failed to satisfy her pre-suit notice obligations and her state-law warranty claims must be dismissed.

### E. Plaintiff's Magnuson-Moss Warranty Act Claim Falls With Her State Claims

"[A] cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim." *Schiesser v. Ford Motor Co.,* No. 16-cv-00730, 2016 U.S. Dist. LEXIS 149392, at *12 (N.D. Ill. Oct. 28, 2016). Because Plaintiff has failed to plausibly allege her state-law warranty claims, her claim under the Magnuson-Moss Act must also be dismissed. *Id.*; *see also Chiappetta*, 2022 U.S. Dist. LEXIS 35632, at *16.

### F. Plaintiff's Other Common Law Claims Also Fail as a Matter of Law

Plaintiff further alleges claims for negligent misrepresentation, fraud, and unjust enrichment. As explained at length above, Plaintiff has not plausibly alleged <u>any</u> false or deceptive or materially misleading statements to support these claims and they can all be dismissed on that basis alone. However, each claim also suffers from additional fatal defects:

1. ***Negligent Misrepresentation***. The Illinois Supreme Court has long made clear that where a plaintiff's alleged harm is economic in nature, "contract, rather than tort, law provides the appropriate set of rules for recovery." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 88 (1982). Thus, courts have routinely dismissed similar negligent misrepresentation claims brought against manufacturers of consumer goods where the plaintiff has alleged overpayment. *See e.g.,*

*Floyd*, 2022 U.S. Dist. LEXIS 12610, at *15 ("Floyd's negligent misrepresentation claim would also fail under the economic loss doctrine as she only seeks monetary damage"); *Chiappetta*, 2022 U.S. Dist. LEXIS 35632, at *20 (rejecting the plaintiff's argument that an exception to the economic loss rule applies where a manufacturer "may have provided information to consumers that was ancillary to the sale of the Product"). Here, as in *Floyd* and *Chiappetta*, Plaintiff's alleged harm is solely economic in nature (see Compl., ¶¶ 54, 100) and thus she cannot advance a claim for negligent misrepresentation.

       **2.** ___*Fraud*___. To state a claim for common law fraud, a plaintiff must plead: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). "Scienter" – or "knowledge by the defendant that a statement he has made is false"—is therefore "an essential element of common-law fraud." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 198 (1994).

       Here, Plaintiff alleges only that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Compl., ¶ 104.) This single conclusory allegation falls far below the requirements of Rule 9(b). Indeed, this exact language has already been found by an Illinois district court to be inadequate. *See Rudy v. Family Dollar Stores, Inc.,* No. 21-CV-3575, 2022 U.S. Dist. LEXIS 20426, at *24 (N.D. Ill. Feb. 4, 2022) (finding allegation "that Family Dollar's fraudulent intent 'is evinced by its knowledge that the Product was not consistent with its representations'" did not meet Rule 9(b)'s pleading standard); *see also Chiappetta*, 2022 U.S. Dist. LEXIS 35632, at *22 ("[plaintiff] alleges that [defendant] had fraudulent intent because it misrepresented the characteristics of the Product on the Product's packaging . . . . [a]s in *Rudy*, these allegations regarding scienter are conclusory and, therefore, fall

short of what Rule 9(b) requires."). Plaintiff's conclusory allegation does not support the element

of scienter, and her common law fraud claim must therefore be dismissed for this additional reason.

**3.    *Unjust Enrichment*.**  To plead a cause of action for unjust enrichment, a "plaintiff

must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that

defendant's retention of the benefit violates fundamental principles of justice, equity, and good

conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011).  Where "an unjust

enrichment claim rests on the same improper conduct alleged in another claim . . . unjust

enrichment will stand or fall with the related claim.  *Id.* at 517; *see also Bober*, 246 F.3d at 943

(explaining that "in the absence of any deception on the part of the defendants, the requisite

violation of 'fundamental principals of justice, equity, and good conscience' is not present);

*Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015) ("a claim for unjust enrichment

cannot stand on its own in light of the Court's dismissal of [defendant's] fraud and express

warranty claims").

Here, Plaintiff's allegation that "Defendant obtained benefits and monies because the

Product was not as represented and expected to the detriment and impoverishment of Plaintiff and

class members" is predicated on the same conduct as her claims for fraud and breach of warranty.

(Compl. ¶ 105.)  Because Plaintiff has not plausibly alleged any claims for fraud or breach of

warranty, her unjust enrichment claim must also necessarily fail.

**G.    Plaintiff's Claim for Injunctive Relief Fails Because There Is No Actual and
        Imminent Threat of Injury**

"An injunction is an equitable remedy, not a separate cause of action." *Bittman v. Fox*, 107

F. Supp. 3d 896, 905 (N.D. Ill. 2015).  Thus, Plaintiff's request for injunctive relief cannot survive

where her other claims must be dismissed for the reasons stated above.  Yet even if Plaintiff's

claims were sufficiently plausible – which they are not – Plaintiff lacks standing to pursue

injunctive relief.  "The general rule is that consumer plaintiffs cannot seek injunctive relief once

they are aware of a deceptive practice." *Forth v. Walgreen Co.*, No. 17-cv-2246, 2018 U.S. Dist.

LEXIS 39212, at *39-40 (N.D. Ill. Mar. 9, 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014)). "[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013).

Plaintiff alleges that she "would not have purchased" the Ricola Product if she had "known the representations and omissions were false and misleading or would have paid less for it." (Compl., ¶ 54.) Having come forward to allege her unilateral theory of deception, she "is now aware of [Ricola's] sales practices, [and she] is not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 741; *see also Chiappetta*, 2022 U.S. Dist. LEXIS 35632, at *25-26 ("[plaintiff] knows that the Product's filling contains apples and pears in addition to strawberries; therefore, she is unlikely to be harmed by [defendant's] Product packaging in the future"); *Ulrich v. Probalance, Inc.,* No. 16 C 10488, 2017 U.S. Dist. LEXIS 132202, at *16 (N.D. Ill. Aug. 18, 2017) (observing that "[m]ost courts . . . agree . . . that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice" and concluding that plaintiff lacked standing to pursue injunctive relief). Accordingly, Plaintiff lacks standing to pursue injunctive relief.

Plaintiff also cannot rely on her purported representation of a consumer class who purchased the Ricola Product to avoid this result. To the contrary, the Seventh Circuit has made clear that "[s]tanding cannot be acquired through the back door of a class action" and that a named plaintiff cannot "piggy-back on the injuries of the unnamed class members." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (citations and internal quotations omitted). Therefore, Plaintiff's request for injunctive relief must be dismissed.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Ricola respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

Dated:  June 21, 2022                          Respectfully submitted,

                                               By:  */s/ David M. Poell*

                                               David M. Poell
                                               Sheppard Mullin Richter & Hampton LLP
                                               70 West Madison Street, 48th Floor
                                               Chicago, Illinois 60602
                                               Telephone:  (312) 499-6349
                                               Facsimile:  (312) 499-6301
                                               E mail: dpoell@sheppardmullin.com

                                               Paul Garrity (*Pro Hac Vice Application Pending*)
                                               Sheppard Mullin Richter & Hampton LLP
                                               30 Rockefeller Plaza,
                                               New York, NY 10112
                                               Telephone:  (212) 653-8700
                                               Facsimile:  (212) 653-8701
                                               E mail: pgarrity@sheppardmullin.com

                                               *Counsel for Defendant Ricola USA, Inc.*

**<u>CERTIFICATE OF COMPLIANCE</u>**

This Motion to Dismiss Complaint and Memorandum of Law complies with the type volume limitations of Local Rule 7.1(B)(4) because it contains 5,559 words.

By: *<u>/s/ David M. Poell</u>*

## <u>CERTIFICATE OF SERVICE</u>

I, David Poell, an attorney, hereby certifies that, on June 21, 2022, a copy of the foregoing document was filed via this Court's CM/ECF electronic filing system, which effects service on all counsel of record in this matter.

Dated:  June 21, 2022                    Respectfully submitted,

By:  */s/ David M. Poell*

David M. Poell
*Counsel for Defendant Ricola USA, Inc.*