## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **LACIE DAVIS, individually and on behalf of all other similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. 22-cv-3071** |
| **RICOLA USA, INC.,** | ) ) | |
| **Defendant.** | ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Plaintiff Lacie Davis brings this putative class action against Defendant Ricola USA, Inc., alleging that Ricola fraudulently labels and markets its throat lozenges as herbal remedies.  Ms. Davis asserts the following claims: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1, et seq.; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) violation of the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301, et seq.; (5) negligent misrepresentation; (6) common-law fraud; and (7) unjust

enrichment.  Ms. Davis seeks certification of a multistate consumer class, injunctive relief, and damages.

This matter comes before the Court on Defendant's Motion to Dismiss.  See Mot. to Dismiss, d/e 5 (citing Fed. R. Civ. P. 12(b)(6)).  The motion is GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

The Court construes the complaint in the light most favorable to Ms. Davis, accepting all well-pleaded allegations as true and taking all reasonable inferences in her favor.  W. Bend Mut. Ins. Co. v. Schumacher, 844 F.3d 670, 675 (7th Cir. 2016).

Ricola is a corporation based in and incorporated under the laws of New Jersey.  Among other things, Ricola manufactures, labels, markets, and sells cough-suppressant throat lozenges. Ricola is of Swiss origin, and it markets its "Original Herb Cough Drops" as having been "made with Swiss Alpine Herbs," including peppermint, wild thyme, hyssop, horehound, and mallow.  See Compl., d/e 1, at 1 (photograph of label).  Ricola also represents that its "cough suppressant" and "oral anesthetic" lozenges are "great tasting" and provide "effective relief."  Id.

**Exhibit A: Product's Front Label[1]**



Ms. Davis is a consumer and a resident of Illinois.  She purchased Ricola lozenges on at least one occasion in 2022.  Ms. Davis would not have done so, however, had Ricola not marketed its lozenges as deriving their therapeutic benefits from their herbal ingredients.  See id. ¶ 50 ("Plaintiff believed and expected the Product functioned as a cough suppressant and oral anesthetic

---

[1] Compl., d/e 1, at 1.

due to the presence of herbal ingredients because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product."); see also id. ¶ 54 ("Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.").

Ms. Davis' allegations center on the lozenges' front label. Ms. Davis alleges that, based on the label's claims and images, she and other consumers reasonably would "expect its cough suppressant and oral anesthetic functionality will be provided by its herbal ingredients." Id. ¶ 22. Ms. Davis alleges that consumers intentionally seek out, and pay a premium for, therapeutic products containing herbal ingredients. See id. ¶¶ 11–16. Yet despite the "front label representations including 'Cough Suppressant,' 'Oral Anesthetic,' 'Effective Relief,' 'Made with Swiss Alpine Herbs,' and pictures of ten herbs, the Product's therapeutic effect is not provided by any of the herbs pictured on the front label.'" Id. ¶ 17. Rather, the herbs "promoted on the front label" of Ricola's lozenges "are exclusively 'Inactive Ingredients.'" Id. ¶ 20.

**Exhibit B: Product's Ingredient List and Drug Facts[2]**

**Drug Facts**

Active Ingredient (in each drop)          Purposes
Menthol, 4.8 mg...............Cough suppressant, Oral anesthetic

**Uses** temporarily relieves:
● cough due to a cold or inhaled irritants ● occasional minor irritation and pain due to sore throat or sore mouth

**Warnings**
**Sore throat warnings:** ● if sore throat is severe, persists for more than 2 days, is accompanied or followed by fever, headache, rash, swelling, nausea, or vomiting, consult a doctor promptly. These may be serious. ● do not use in children under 6 years of age unless directed by a doctor.

**Ask a doctor before use if you have** ● persistent or chronic cough such as occurs with smoking, asthma, or emphysema ● cough accompanied by excessive phlegm (mucus)

**Stop use and ask a doctor if** ● cough persists for more than 1 week, tends to recur, or is accompanied by fever, rash, or persistent headache. These could be signs of a serious condition. ● sore mouth does not improve in 7 days ● irritation, pain, or redness persists or worsens

**Keep out of reach of children.**

**Directions**
● adults and children 6 years and older: dissolve 2 drops (one at a time) slowly in the mouth. Do not bite or chew. Repeat every 2 hours as needed or as directed by a doctor ● children under 6 years: ask a doctor

**Other Information** protect from heat and moisture

**Inactive Ingredients** color (caramel), extract of a Ricola herb mixture (elder, horehound, hyssop, lemon balm, linden flowers, mallow, peppermint, sage, thyme, wild thyme), natural flavor, starch syrup, sugar

**Active Ingredient** (in each drop)
Menthol, 4.8 mg

**Inactive Ingredients** color (caramel), extract of a Ricola herb mixture (elder, horehound, hyssop, lemon balm, linden flowers, mallow, peppermint, sage, thyme, wild thyme), natural flavor, starch syrup, sugar

Ms. Davis compares Ricola's labeling to that of its generic competitors, which "do not represent to consumers that their herbal ingredients are responsible for [their] therapeutic effects." Id. ¶ 26.  Specifically, Ms. Davis points to "natural herbal cough drops" sold by Meijer, Target, Dollar General, and Walmart.  See id. Ms. Davis alleges that these retailers, unlike Ricola, "disclos[e] the presence of menthol on their front labels."  Id.

---

[2] Compl., d/e 1, at 4 (highlighting in original).

**Exhibit C: Generic Competitors' Front Labels[3]**






Ms. Davis maintains that had she known "the truth," she "would not have bought the Product or would have paid less for it."  Id. ¶ 31.  Pursuant to Federal Rule of Civil Procedure 23, Ms. Davis

_____

[3] Compl., d/e 1, at 5.

seeks to certify two classes of consumers who "purchased the Product during the statutes of limitations for each cause of action alleged." Id. ¶ 59 (citing Fed. R. Civ. P. 23).

Ricola now moves to dismiss Ms. Davis' complaint for failure to state a claim. See Mot. to Dismiss, d/e 5 (citing Fed. R. Civ. P. 12(b)(6)). Ricola argues that Ms. Davis' suit is "yet another in a string of 'unreasonable and unactionable' interpretations of product packaging advanced by her attorney throughout the country." See Def.'s Mem., d/e 6, at 1 (quoting Lemke v. Kraft Heinz Food Co., 2022 WL 1442922, at *5 (W.D. Wis. May 6, 2022)).

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving the defendant fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), this Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and

construing all reasonable inferences in plaintiff's favor.  Id.  But
the complaint still must set forth facts that plausibly demonstrate
a claim for relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
547 (2007).  A plausible claim is one that alleges factual content
from which the Court can reasonably infer that the defendant is
liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009).  Reciting the elements of a cause of action or
supporting claims with conclusory statements are insufficient to
state a cause of action.  Id.

Rule 9(b) requires a party alleging fraud to "state with
particularity the circumstances constituting fraud."  Fed. R. Civ. P.
9(b).  Pursuant to Rule 9(b), a plaintiff must "describe the 'who,
what, when, where, and how' of the fraud—'the first paragraph of
any newspaper story.'"  United States ex rel. Presser v. Acacia
Mental Health Clinic, LLC, 836 F.3d 770, 776 (7th Cir. 2016)
(quoting United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d
849, 853 (7th Cir. 2009)).

# III. ANALYSIS

## A.    Ms. Davis' ICFA Count States a Claim.

Ms. Davis' first count alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1, et seq.  See Compl., d/e 1, ¶¶ 67–72.  To state an ICFA claim, Ms. Davis must allege with particularity (1) a deceptive act or practice by Ricola; (2) that Ricola intended for Ms. Davis to rely on the deception; (3) that the deception occurred in trade or commerce; and (4) actual damage proximately caused by the deception.  See Davis v. G.N. Mortg. Corp., 396 F.3d 8669, 883 (7th Cir. 2005); see also Avery v. State Farm Mut. Auto Ins. Co., 835 N.E.2d 801, 856 (Ill. 2005).

Ricola's labeling is "deceptive" if it "creates a likelihood of deception or has the capacity to deceive."  Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 940 (7th Cir. 2001).  Moreover, Ms. Davis must plausibly allege that Ricola's labeling is "likely to deceive reasonable consumers."  Beardsall v. CVS Pharm., Inc., 953 F.3d 969, 973 (7th Cir. 2020).  The "allegedly deceptive" label must be considered "in light of the totality of the information made available

to the plaintiff." See Benson v. Fannie May Confections Brands, Inc., 944 F.3d 639, 646 (7th Cir. 2019) (citation omitted).

If the statement at issue is not deceptive as a matter of law, the Court may dismiss an ICFA count for failure to state a claim. See Bober, 246 F.3d 940 (concluding, as a matter of law, that label at issue was not deceptive because it could "only be read" in a nondeceptive way). In other words, when a deceptive-advertising claim is based on "unreasonable or fanciful interpretations . . . dismissal on the pleadings may well be justified." See Bell v. Publix Super Markets, Inc., 982 F.3d 468, 477–78 (7th Cir. 2020).

Ms. Davis' ICFA claim centers on the information conveyed by Ricola's front labeling. The lozenges' front label states that they are "Made with Swiss Alpine Herbs." See supra ex. A. Each of the herbs depicted on the label—ten in all—are listed as inactive ingredients on the back label. See supra ex. B. No one disputes that the herbs are present in Ricola lozenges. Nor do they dispute that the "therapeutic effect" of Ricola lozenges "is not provided by any of the herbs pictured on the front label." Compl., d/e 1, ¶ 17.

Instead, the therapeutic effect of Ricola lozenges comes from menthol. As Ms. Davis notes in her Complaint, the "Drug Facts on

the back label . . . identify menthol as the only active ingredient."
Id. ¶ 18.  Ricola, unlike its generic competitors, does not disclose
on its lozenges' front label the presence or function of menthol.
Compare supra ex. A with supra ex. C.

Ricola argues that its labeling practices are not deceptive as a
matter of law.  Ricola contends that any confusion generated by its
lozenges' front label, which does not denote the lozenges' active
ingredient, can be resolved by the back label, which does.

However, Ms. Davis claims that this deceived her and other
consumers into believing that Ricola lozenges were "herbal
remedies."  Ms. Davis alleges that the clarity provided by Ricola's
back label cannot overcome the deceptive "omission of any front
label reference to the active menthol ingredient."  Pl.'s Resp., d/e 7,
at 5.  Instead, Ms. Davis argues, Ricola "use[s] ambiguity to
mislead consumers while [it] maintain[s] some level of deniability
about the intended meaning.'"  Id. (citing Bell, 982 F.3d at 477).

The first question is whether the omission of menthol from
Ricola's front label suffices for an ICFA claim.  The Court finds that
it does.  "A material omission, like a misrepresentation, is
actionable under the ICFA."  Kinman v. Kroger Co., 2022 WL

1720589, at *5 (N.D. Ill. May 27, 2022).  The statute defines a deceptive practice or act as any "false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."  815 ILCS 505/2.  An omission is material "where a buyer would have acted differently knowing the information."  Id. (citing Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 595 (Ill. 1996)).  Here, Ms. Davis alleges that she purchased Ricola lozenges for what she believed was their herbally derived therapeutic properties.  Ms. Davis further alleges that, but for Ricola's omission from its lozenges' front label of any mention of menthol, she and other consumers would have purchased a competitor product.  This claim falls within ICFA's scope.

The next question is whether Ms. Davis' claim of deception by Ricola's front label can overcome the inclusion of menthol on the back label.  The Seventh Circuit's decision in Bell v. Publix Super Markets, Inc. suggests that it can.

In that case, the Seventh Circuit considered whether consumer-fraud statutes like the ICFA forbid manufacturers from making front-label representations that are undermined by an

accurate ingredients list.  Bell, 982 F.3d at 474–75.  The Bell plaintiffs alleged that a cheese product representing itself as "100% Grated Parmesan Cheese" was unlawfully deceptive because—as the product's back label properly disclosed—nearly 10% of the grated cheese comprised anti-caking and anti-mold agents.  The district court dismissed the plaintiffs' claims, finding that a reasonable consumer needed only to check the back label.  But the Seventh Circuit reversed, holding that a plaintiff's ICFA claim survives a motion to dismiss "if [she has] plausibly alleged that the [defendant's] front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie."  Id. at 476.

In so holding, the Seventh Circuit also distinguished actionable ambiguities from those arising out of "unreasonable or fanciful interpretations of labels or other advertising."  Id. at 477–78 (citing Carrea v. Dreyer's Grand Ice Cream, Inc., 475 F. App'x 113, 115 (9th Cir. 2012) ("It is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products."); Red v. Kraft Foods, Inc.,

2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Made with Real Vegetables" label on box of crackers could not reasonably mean crackers were "composed of primarily fresh vegetables")).

Ricola argues that Ms. Davis' interpretation is similarly implausible.  But the import of <u>Bell</u> is that plaintiffs need only "plausibly allege[] that . . . front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." <u>Id.</u> at 476.  And here, Ms. Davis plausibly alleges that a reasonable consumer would believe that Ricola lozenges are powered by "Swiss Alpine Herbs" rather than ordinary menthol.  That Ricola's back label may revolve the ambiguity is immaterial at the pleadings stage.  What matters is that Ricola's front label prominently notes only the presence of "Swiss Alpine Herbs," and that Ms. Davis alleges that the front label misled her. That is enough to state a claim under the ICFA.  Ricola's motion to dismiss this count must be denied.

## B. Ms. Davis' Breach of Warranty Counts Fail to State a Claim.

Ms. Davis also brings claims for breach of express warranty, breach of implied warranty of merchantability, and breach of

warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.  Ricola argues that Ms. Davis' warranty claims must be dismissed for lack of pre-suit notice.  Ms. Davis responds that she provided notice by filing suit.  Ricola is correct.

In Illinois, express warranties "are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  810 ILCS 5/2-313.  "Unless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  810 ILCS 5/2-314(1).  Merchantable goods "must be . . . fit for the ordinary purposes for which such goods are used."  810 ILCS 5/2-314(2)(c).

Under Illinois law, consumers must "directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty."  Connick, 675 N.E.2d at 589; see also 810 ILCS 5/2-607(3)(a)) (requiring that a buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from

any remedy").  The only exception to this rule is "a consumer plaintiff who suffers a personal injury."  Connick, 675 N.E.2d at 589 (collecting cases).

From the face of the complaint, Ms. Davis first notified Ricola of its apparent breach when she served Ricola with this lawsuit. See Compl., d/e 1, at ¶ 88 ("Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.").  Because she does not allege a personal injury, see Connick, 675 N.E.2d at 589, Ms. Davis' failure to provide pre-suit notice bars her breach of warranty claims.

Nonetheless, Ms. Davis contends that Ricola had constructive notice—that it "should have been aware" of the alleged breach by way of third-party complaints.  Id. ¶ 89.  But such an allegation does not suffice under Illinois law.  See Anthony v. Country Life Mfg., LLC, 70 F. App'x 379, 384 (7th Cir. 2003).  The notice requirement "is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer."  Connick, 675 N.E.2d at 590 (emphasis added). Ms. Davis' state-law breach of warranty claims must be dismissed.

This leaves Ms. Davis' claim under the federal Magnuson-Moss Warranty Act.  A claim under Magnuson-Moss turns on the "existence of an underlying viable state-law warranty claim." Schiesser v. Ford Motor Co., 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016) (citing 15 U.S.C. § 2310(d)(1)).  Because Ms. Davis cannot state a viable state-law claim, her federal claim must be dismissed as well.  See Cerretti v. Whole Foods Mkt. Grp., Inc., 2022 WL 1062793, at *5 (N.D. Ill. April 8, 2022) (noting that the "Magnuson-Moss Warranty Act incorporates state-law notice requirements").

### C. Ms. Davis' Negligent Misrepresentation Count Fails to State a Claim.

The Court turns next to Ms. Davis' negligent misrepresentation claim, in which she alleges that Ricola breached its "duty to truthfully represent" the composition of its lozenges. Compl., d/e 1, at ¶¶ 94–100.  Ricola contends that this claim is barred by Illinois law.  The Court agrees.

Ms. Davis alleges that Ricola's negligent misrepresentation induced her into purchasing Ricola's lozenges rather than its competitors' lozenges.  However, Illinois law does not allow "an

aggrieved party to recover under a negligence theory for solely economic damages." <u>Moorman Mfg. Co. v. Nat'l Tank Co.</u>, 435 N.E.2d 443, 452 (Ill. 1982).  The lone exception to this rule applies only if the aggrieving party "is in the business of supplying information for the guidance of others in their business transactions." <u>First Midwest Bank, N.A. v. Stewart Title Guar. Co.</u>, 843 N.E.2d 327, 335 (Ill. 2006).  This exception "is not applicable if the information supplied is merely ancillary to the sale of a product." <u>Id.</u>

Here, Ms. Davis has pled only economic damages—that is, damages flowing from a purchase which, she alleges, was induced by Ricola's misrepresentation.  She does not allege that Ricola is "in the business of supplying information for the guidance of others in their business transactions." <u>But see</u> <u>id.</u>  Any information provided by Ricola was, therefore, "merely ancillary to the sale" of its lozenges.  <u>See</u> <u>id.</u>

Because Illinois law forecloses Ms. Davis' negligent misrepresentation claim, it must be dismissed with prejudice.

### D. Ms. Davis' Common-Law Fraud Count Fails to State a Claim.

Ms. Davis also brings a claim for common-law fraud.  Compl., d/e 1, at ¶¶ 101–104.  To state a claim for fraud under Illinois law, Ms. Davis must allege that "(1) defendant made a false statement; (2) of material fact; (3) which defendant knew or believed to be false; (4) with the intent to induce plaintiff to act; (5) the plaintiff justifiably relied on the statement; and (6) the plaintiff suffered damage from such reliance."  Houben v. Telular Corp., 231 F.3d 1066, 1074 (7th Cir. 2000).  Ms. Davis must plead fraud with particularity, but she need only allege the intent element generally. Fed. R. Civ. P. 9(b).

Ms. Davis alleges that Ricola "misrepresented . . . that [its lozenges] functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients."  Compl., d/e 1, at ¶ 101.  She alleges as well that Ricola's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations."  Id. ¶ 104.  Ricola argues that Ms. Davis' fraud claim falters on this last point—that a "single conclusory

allegation" of intent "falls far below the requirements of Rule 9(b)." Def.'s Mem., d/e 6, at 16. Again, the Court agrees.

As noted above, Ms. Davis need only allege scienter generally. Fed. R. Civ. P. 9(b). But "general" does not mean "conclusory." See generally Ashcroft v. Iqbal, 556 U.S. 662, 680–81 (2009) (rejecting as conclusory allegations that government officials "knew of, condoned, and willfully and maliciously agreed" to engage in tortious conduct). Several other courts in this Circuit have found that the precise allegation made here—that scienter was "evinced by [defendant's] knowledge that the Product was not consistent with its representations"—is conclusory. See, e.g., Chiappetta v. Kellogg Sales Co., 2022 WL 602505, at *8 (N.D. Ill. Mar. 1, 2022); Rudy v. Family Dollar Stores, Inc., 2022 WL 345081, at *9 (N.D. Ill. Feb. 4, 2022) (collecting cases). This Court joins those courts.

Because Ms. Davis fails to allege that Ricola intended to defraud her, her fraud claim is dismissed without prejudice.

**E. Ms. Davis' Unjust Enrichment Count States a Claim.**

Ms. Davis' last remaining claim alleges unjust enrichment. See Compl., d/e 1, at ¶ 105. As the parties agree, when "an unjust enrichment claim rests on the same improper conduct alleged in

another claim . . . unjust enrichment will stand or fall with the related claim." See Def.'s Mem., d/e 6, at 17 (quoting Cleary v. Philip Morris Inc., 656 F.3d 511, 516 (7th Cir. 2011)); Pl.'s Mem. in Opp., d/e 7, at 14.

The Court already has found that Ms. Davis states a claim under the ICFA. Ms. Davis' unjust enrichment claim, therefore, survives as well. Cf. Toulon v. Cont'l Casualty Co., 877 F.3d 725, 741–42 (7th Cir. 2017) ("We agree with the district court that [plaintiff] failed to state a claim for unjust enrichment because she failed to state a claim for fraud or for violation of the ICFA.").

## F. The Court Dismisses Ms. Davis' Demand for Injunctive Relief.

Lastly, Ricola argues that Ms. Davis lacks standing to pursue her demand for injunctive relief. Def.'s Mem., d/e 6, at 17–18. The Court agrees.

Standing is a prerequisite for relief. A plaintiff must show that he has standing for each type of relief he seeks. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). To establish an injury-in-fact that could be remedied by an injunction, Ms. Davis needs to allege a "real and immediate threat of future violations of

[her] rights." Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074 (7th Cir. 2013). Past exposure to illegal conduct alone does not show a present case or controversy for purposes of injunctive relief, unless it is accompanied by continuing, present adverse effects. O'Shea v. Littleton, 414 U.S. 488, 495 (1974).

Ms. Davis' knowledge of Ricola's allegedly deceptive practices fells her request to enjoin them. The general rule holds that "consumer plaintiffs cannot seek injunctive relief once they are aware of a deceptive practice." See Ulrich v. Probalance, Inc., 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017); see also Camasta v. Jos. A. Bank. Clothiers, Inc., 761 F.3d 732, 741 ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."). "Without more than the speculative claim that [Ms. Davis] will again be harmed by" Ricola, she "is not entitled to injunctive relief." Camasta, 761 F.3d at 741.

Accordingly, Ms. Davis' demand for injunctive relief is dismissed without prejudice for lack of standing.

## V. CONCLUSION

For these reasons, Ricola's Motion to Dismiss (d/e 5) is GRANTED IN PART and DENIED IN PART.

**IT IS THEREFORE ORDERED THAT:**

1.  Defendant's Motion to Dismiss (d/e 5) is GRANTED IN PART and DENIED IN PART.

2.  Plaintiff's claims under the ICFA and for common-law unjust enrichment shall proceed.

3.  Plaintiff's claims for breach of express warranty, breach of implied warranty, breach of warranty under the Magnuson-Moss Warranty Act, and common-law fraud are DISMISSED WITHOUT PREJUDICE.

4.  Plaintiff's claim for negligent misrepresentation is DISMISSED WITH PREJUDICE.

5.  Plaintiff's demand for injunctive relief is DISMISSED WITHOUT PREJUDICE for lack of standing.

5.  If Plaintiff wishes to file an amended complaint, she may do so by September 30, 2022.  If Plaintiff files an amended complaint, Defendant shall file an answer or other responsive pleading by October 14, 2022.  If Plaintiff does not file an amended complaint, Defendant shall file an answer or other responsive pleading by September 23, 2022.

5.  This matter is REFERRED to U.S. Magistrate Judge Karen L. McNaught for a scheduling conference pursuant to Federal Rule of Civil Procedure 16.  The parties are DIRECTED to meet and confer prior to the

scheduling conference, as required by Federal Rule of Civil Procedure 26(f).  Any resultant scheduling order shall include deadlines for class-certification motion practice.  <u>See</u> Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").

**ENTERED:  SEPTEMBER 9, 2022**

**FOR THE COURT:**

<u>s/ Sue E. Myerscough</u>
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**