**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| LACIE DAVIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:22-cv-03071-CRL-KLM |
| v. | ) ) | Hon. District Judge Colleen R. Lawless |
| RICOLA USA, INC., | ) ) | Hon. Magistrate Karen L. McNaught |
| Defendant. | ) ) ) ) | |

**RICOLA USA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS......................................3

    A.    Facts Relevant to Show Lack of Deception and Harm .............................3

    B.    Facts Relevant to Show Lack of Intent .....................................................4

    C.    Facts Relevant to Show The Claim is Preempted......................................5

III. ARGUMENT ........................................................................................................5

    A.    Relevant Background .................................................................................5

        1.    Ricola Markets The OTC Product In Compliance With The FDCA..........5

        2.    Plaintiff Incorrectly Believes That The Menthol In the Product Is Synthetic ..................................................................................................6

        3.    Ricola Produces Unrebutted Evidence That The Menthol In The Product Is Herbal ...............................................................................7

        4.    Plaintiff's Expert Conducts A Consumer Survey Based On The Same Mistaken Assumption .....................................................................7

        5.    Plaintiff Does Not Produce Any Admissible Evidence Of Damages.........8

        6.    All Expert and Fact Discovery Deadlines Have Closed .............................9

    B.    Legal Standard ...........................................................................................9

    C.    Plaintiff Cannot Establish The Elements Of Her Claims........................10

        1.    Unrebutted Evidence Establishes That The Product's Active Ingredient Is Herbal and Therefore Plaintiff and Other Consumers Were Not Deceived................................................................11

        2.    The Matthews Study Ignores The Fact That The Active Ingredient Is Herbal, and Does Not Provide Evidence Of Any Materially Deceptive Statement .................................................................13

        3.    Plaintiff Has No Evidence To Establish Ricola's Intent............................15

        4.    Plaintiff Has Not Offered Any Viable Damages Model To Support That The Product's Labeling Proximately Caused Her Any Harm ..........15

    D.    Plaintiff Lacks Article III Standing.........................................................17

E.    Plaintiff's Claims Are Expressly Preempted By The FDCA ................................. 18

CONCLUSION ..................................................................................................................... 21

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ........................................................................................10

*In re Aqua Dots Prods. Liab. Litig.*
    654 F.3d 748 (7th Cir. 2011) ...........................................................................17

*Aux Sable Liquid Prods. v. Murphy*
    526 F.3d 1028 (7th Cir. 2008) .........................................................................18

*Beardsall v. CVS Pharmacy, Inc.*
    953 F.3d 969 (7th Cir. 2020) ......................................................................11, 12

*In re Brand Name Prescription Drugs Antitrust Litig.*
    No. 94 C 897, 2000 U.S. Dist. LEXIS 1750 (N.D. Ill. Feb. 9, 2000) .....................16

*Celotex Corp v. Catrett*
    477 U.S. 317 (1986) ..........................................................................................9

*Clark v. Bumbo Int'l Tr.*
    No. 15 C 2725, 2017 U.S. Dist. LEXIS 137607 (N.D. Ill. Aug. 28, 2017) ............11

*Colpitts v. Blue Diamond Growers*
    No. 20 Civ. 2487 (JPC), 2023 U.S. Dist. LEXIS 57108 (S.D.N.Y. Mar. 31, 2023) ..............16

*Elder v. Bimbo Bakeries USA, Inc.*
    No. 3:21-cv-637-DWD, 2023 U.S. Dist. LEXIS 176362 (S.D. Ill. Sep. 29, 2023)
    .................................................................................10, 11, 13, 14, 15

*Flynn v. FCA US LLC*
    39 F.4th 946 (7th Cir. 2022) ......................................................................17, 18

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*
    528 U.S. 167 (2000) ........................................................................................17

*Great Lakes Reinsurance UK v. 1600 W. Venture, LLC*
    261 F. Supp. 3d 860 (N.D. Ill. 2017) ...............................................................15

*Kim v. Carter's Inc.*
    598 F.3d 362 (7th Cir. 2010) ...........................................................................15

*Murphy v. NCAA*
    138 S. Ct. 1461 (2018) .....................................................................................18

*Nofsinger v. Jackson Nat'l Life Ins. Co.*
    No. 17-cv-03367, 2021 U.S. Dist. LEXIS 135841 (N.D. Ill. July 21, 2021) ..........15

*Ogden v. Atterholt*
    606 F.3d 355 (7th Cir. 2010) ..................................................................10

*Oshana v. Coca-Cola Co.*
    472 F.3d 506 (7th Cir. 2006) ..................................................................10

*Payton v. Cnty. of Kane*
    308 F.3d 673 (7th Cir. 2002) ..................................................................17

*Price v. Philip Morris, Inc.*
    219 Ill. 2d 182 (2005) ..............................................................................15

*Roger Whitmore's Auto Servs., Inc. v. Lake Cnty.*
    424 F.3d 659 (7th Cir. 2005) ..................................................................10

*Solak v. Target Corp.*
    No. 3:22-cv-813, 2023 U.S. Dist. LEXIS 158087 (N.D.N.Y. Sep. 7, 2023)....................19, 21

*Spierer v. Rossman*
    798 F.3d 502 (7th Cir. 2015) ..................................................................10

*TransUnion LLC v. Ramirez*
    141 S. Ct. 2190 (2021)..............................................................................17

*Turek v. Gen. Mills, Inc.*
    662 F.3d 423 (7th Cir. 2011) ..............................................................18, 21

*Weaver v. Champion Petfoods USA Inc.*
    3 F.4th 927 (7th Cir. 2021) .....................................................................11

*Wright v. Walmart, Inc.*
    No. 22-cv-02311-SPM, 2023 U.S. Dist. LEXIS 146631 (S.D. Ill. Aug. 21, 2023)................19

**Statutes and Regulations**

Code of Federal Regulations ("C.F.R.")

    21 C.F.R. § 201.60 ...................................................................................19

    21 C.F.R. § 201.61 ...................................................................................19

    21 C.F.R. pt. 341 .......................................................................................5

    21 C.F.R. pt. 356 .......................................................................................5

    21 C.F.R. § 356.10(e)................................................................................5

Federal Register ("Fed. Reg.")

    53 Fed. Reg. 2436 (Jan. 27, 1988) ...........................................................5

64 Fed. Reg. 13254 (Mar. 17, 1999) ....................................................................6, 20

Federal Food Drug and Cosmetic Act ("FDCA")...........................................2, 3, 5, 18, 19, 20, 21

Federal Rule of Civil Procedure 56 ..........................................................................9

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").......1, 10, 11, 13, 15, 21

21 U.S.C. § 379r(a)(2) ......................................................................................19

Defendant Ricola USA, Inc. ("Ricola") respectfully submits this Memorandum of Law in Support of Its Motion For Summary Judgment.[1]

## I. <u>INTRODUCTION</u>

Plaintiff was a satisfied and frequent purchaser of Ricola's Original Herb cough drops (the "Product") for over 20 years.  After speaking with her attorney whom she met through a Facebook ad, Plaintiff apparently learned for the first time that the active ingredient in the Product was menthol.  Plaintiff alleges she was deceived by the front of the package to believe the active ingredient is herbal and, forming the sole basis for these allegations, assumes that the menthol in the Product is synthetic.

Plaintiff brings claims against Ricola for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and for unjust enrichment.  She alleges that she was misled by the statement "Made With Swiss Alpine Herbs," and imagery of herbs on the front label, to believe that the Product's "functions" were provided by <u>herbal</u> active ingredients.  Plaintiff asserts that she was injured because she paid more for the Product believing it had herbal active ingredients.  When filing her complaint, Plaintiff relied on assumptions from her counsel that the menthol in the Product is non-herbal to allege she was deceived and harmed.

At this stage, Plaintiff can no longer rely on her allegations alone and must come forward with admissible evidence to support her claims.  Summary judgment should be granted on Plaintiff's claims because she cannot meet her evidentiary burden, she lacks Article III standing, and her claims are expressly preempted by federal law.  Ricola moves for summary judgment on five independent grounds.

---

[1] Ricola believes that a hearing would be helpful to the Court in resolving these issues and respectfully requests that Plaintiff's Motion be set for oral argument pursuant to Local Rule 7.1(A).

First, because her assumption that the Product's active ingredient is synthetic is wrong, Plaintiff has no evidence that Ricola engaged in a deceptive act or practice.  The undisputed facts here demonstrate that **the menthol in the Product comes solely from herbs**.  Plaintiff thus has not put forward any evidence that consumers could have been misled.

Second, Plaintiff has no evidence of Ricola's "intent" that she rely on the challenged claims.  Plaintiff has not identified any documents, taken any depositions, or produced any expert evidence supporting this element.

Third, Plaintiff has failed to offer any evidence of actual damages.  Although her expert, Andrea Matthews, Ph.D., opined that she *might* be able to perform a damages analysis in the future if asked – no such work was ever done and all discovery has since closed in this matter.  Accordingly, she has not met her burden to establish that the Product's labeling proximately caused actual damages to her.  Without any viable damages model, Plaintiff cannot proceed to trial on her claims.

Fourth, Plaintiff lacks standing under Article III because she has no concrete injury.  Plaintiff bought the Product believing the active ingredient was herbal in nature.  She received just that – a Product with herbal menthol (as opposed to synthetic menthol) as the active ingredient.  She therefore lacks any evidence of actual damages to support Article III standing.

 Fifth, Plaintiff's claims are expressly preempted by the FDCA.  Specifically, the Product's label is regulated by the FDA's over-the-counter "monograph" system.  The FDA directs which ingredients must be listed as "active" and "inactive," in the ubiquitous Drug Facts panel.  Plaintiff alleges that she inferred from the statements "Cough Suppressant" and "Oral Anesthetic," the Product's name, and images of herbs on the front label that the Product's functions were provided by herbal ingredients.  (ECF No. 1, ¶¶ 17, 22, 25, 50, 68, 71.)  Ricola accurately discloses menthol

-2-

in the Product's Drug Facts Panel and is not required by FDCA to clarify its active ingredients by changing the Product's name (or otherwise disclosing the active ingredients on the front of the label to dispel Plaintiff's alleged confusion).  Thus, Plaintiff's claims seek to impose additional requirements on Ricola inconsistent with the FDCA and are expressly preempted.

Accordingly, summary judgment should be granted in favor of Ricola based on any of the five independent grounds.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 7.1(D)(1)(b), Ricola provides the following undisputed material facts:

### A. Facts Relevant to Show Lack of Deception and Harm

1.      The active ingredient in the Product is menthol.  (ECF No. 1 ("Compl."), ¶ 18.)

2.      The menthol in the Product is 100% herbal.  (Henry Decl., Ex. 3 Expert Report of Stefan Gafner, Ph.D. dated September 28, 2023 ("Gafner Report") ¶¶ 7, 28-30, 34-35.)

3.      The Drug Facts panel on the back of the Product's packaging discloses menthol as the active ingredient in the Product.  (Compl., ¶ 19.)

4.      The Product functions as a cough suppressant and oral anesthetic due to the presence of the menthol in the Product, which menthol is an herbal ingredient.  (Gafner Report, ¶¶ 7, 28-30, 34-35.)

5.      Peppermint is one of the herbs depicted on the front of the Product's label. (Compl., ¶ 2.)

6.      The menthol in the Product is obtained directly from mint, either from corn mint (*Mentha canadensis*, syn. *Mentha arvensis* var. *glabrata*, *Mentha arvensis* var. *piperascens*) or from peppermint (*Mentha × piperita*) (Gafner Report, ¶¶ 7, 28-30, 34-35.)

-3-

7.     Plaintiff did not submit any expert report purporting to opine on the nature of the menthol in the Product.  (Henry Decl., ¶ 4.)

8.     Plaintiff has no testing to support her allegation that the menthol in the Product is synthetic.  (Henry Decl., ¶ 4.)

9.     Plaintiff did not submit any rebuttal expert report. (Henry Decl., ¶ 5.)

10.     Plaintiff has not produced any facts contradicting the herbal nature of the menthol in the Product or otherwise showing that the menthol in the Product is synthetic.  (Henry Decl., ¶¶ 3-4, 8, Ex. 1.)

11.     Plaintiff does not consider menthol to be an herbal ingredient. (Henry Decl., Ex. 4, Lacie Davis Deposition Transcript ("Davis Tr.") 110:7-10.)

12.     Plaintiff has admitted that she does not know whether the menthol in the Product is herbal or synthetic.  (Henry Decl., Ex. 4, Davis Tr. 66:7-17; 90:21-91:13; 108:1-7.)

13.     Plaintiff did not submit any expert report opining as to the actual damages suffered by Plaintiff or the putative class.  (Henry Decl., Ex. 2 ("Matthews Report") ¶¶ 165, 174-75, 188-89; Ex. 5, Andrea Matthews, Ph.D. Deposition Transcript ("Matthews Tr.") 135:9-12, 140:15-25, 141:1-12.)

### B.     Facts Relevant to Show Lack of Intent

14.     Plaintiff did not submit any expert report purporting to establish that Ricola intended that she rely on the alleged "misrepresentations" for information regarding the "herbal" qualities of the Product's active ingredients.  (Henry Decl., ¶ 4.)

15.     Plaintiff has not identified any facts to support an allegation that Ricola intended that she rely on the alleged "misrepresentations" for information regarding the "herbal" qualities of the Product's active ingredients.  (Henry Decl., ¶¶ 3, 8, Ex. 1.)

-4-

C.      **Facts Relevant to Show The Claim is Preempted**

16.      Ricola markets the Product under two FDA-approved monographs: The Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic Drug Products For Over-The-Counter Human Use Monograph M012: ("Cold/Cough Monograph") (21 C.F.R. pt. 341) and the Oral Health Care Drug Products for Over-the-Counter Human Use tentative final monograph ("Oral Anesthetic Monograph") (proposed 21 C.F.R. pt. 356) (53 Fed. Reg. 2436 (Jan. 27, 1988)).

17.      The active ingredient in the Product is menthol.  (Compl., ¶ 18.)

18.      The Cold/Cough Monograph and Oral Anesthetic Monograph permit "menthol" to be listed as an active ingredient.  *See* Cough/Cold Monograph at 21 C.F.R. § 341.14(b)(2); Oral Anesthetic Monograph at proposed 21 C.F.R. § 356.10(e).

19.      The Cold/Cough Monograph and Oral Anesthetic Monograph do not distinguish between herbal menthol and synthetic menthol.  *See* Cough/Cold Monograph at 21 C.F.R. § 341.14(b)(2); Oral Anesthetic Monograph at proposed 21 C.F.R. § 356.10(e).

### III.  ARGUMENT

A.      **Relevant Background**

1.      **Ricola Markets The OTC Product In Compliance With The FDCA**

Ricola markets the Product under two FDA-approved monographs: The Cold/Cough Monograph and the Oral Anesthetic Monograph.  (UMF No. 16.)  The Product contains the active ingredient menthol (UMF No. 17), which is specifically permitted under both monographs.  *See* Cough/Cold Monograph at 21 C.F.R. § 341.14(b)(2); Oral Anesthetic Monograph at proposed 21 C.F.R. § 356.10(e).

In compliance with the FDA's regulations, the back of the Product's package includes the "Drug Facts" panel which lists the "active" and "inactive" ingredients.  The FDA has determined consumers are "expected to follow" the Drug Facts panel in deciding whether to purchase an OTC

drug product.  64 Fed. Reg. 13254, 13258 (Mar. 17, 1999) ("[T]he order for the placement of [drug facts] information in the final rule is modeled after the decision making process consumers would be expected to follow, and should follow, when selecting and using OTC drug products").  The placement of the Drug Facts panel on the back of the package is part of the FDA's uniform system for "consumers in reading and understanding OTC drug product labeling so that consumers may use these products safely and effectively."  64 Fed. Reg. at 13254.  The Product's Drug Facts panel accurately discloses menthol as the Product's active ingredient.

**2.      Plaintiff Incorrectly Believes That The Menthol In the Product Is Synthetic**

Before filing this lawsuit, Plaintiff purchased the Product for "over 20 years."  (Henry Decl., Ex. 4, Davis Tr. 15:3-9; 34:9-16.)  Over that time period, she purchased the Product approximately 600 times and never had a problem with the Product.  (*Id.*, Davis Tr. 14:24-15:2; 70:7-71:2; 99:17-100:6.)  In early 2022, Plaintiff was scrolling through Facebook and saw an advertisement from her attorney in this case seeking named plaintiffs for a lawsuit against Ricola. (*Id.*, Davis Tr. 10:1-7.)  Plaintiff claims that – despite purchasing the Product hundreds of times – she never reviewed the back of the Product's package until speaking with her attorneys and reading the draft Complaint.  (*Id.*, Davis Tr. 24:18-25:22; 99:17-100:6.).

Plaintiff "seeks to purchase OTC and other products which contain herbal ingredients that contribute to those products' functionality."  (ECF No. 1, Compl. ¶ 51.)  Plaintiff asserts that other consumers similarly "intentionally seek out, and pay a premium for, therapeutic products containing herbal ingredients."  (ECF No. 11, p. 4.)  Plaintiff alleges consumers "are better able to tolerate products based on herbal ingredients than synthetic ones" and "believe that herbal ingredients are more potent and less harmful than man-made ingredients."  (ECF No. 1, Compl. ¶¶ 11-16.)

-6-

Plaintiff alleges that she and other class members were harmed because, after viewing the Product's front label, they believed that "the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients." (ECF No. 1, Compl. ¶¶ 50, 68, 71; ECF No. 11, p. 12 (Plaintiff "alleges that she purchased Ricola lozenges for what she believed was their herbally derived therapeutic properties").)   Plaintiff admits that menthol is listed as the active ingredient in the Product's Drug Facts panel.  (ECF No. 1, Compl. ¶ 18; Henry Decl., Ex. 4, Davis Tr. 111:12-18.)  Plaintiff does not know the source of menthol, how it is used in products, or whether it can be an herbal ingredient.  (Henry Decl., Ex. 4, Davis Tr. 66:7-17, 110:7-10; *see also id.* 90:21-91:13; UMF No. 12.)    Despite filing this lawsuit, which alleges that the menthol in the Product is non-herbal, Plaintiff has never "actually looked it up to see if it is or not."  (*Id.*, Davis Tr. 108:1-7.)

### 3.    Ricola Produces Unrebutted Evidence That The Menthol In The Product Is Herbal

Contrary to the assumptions made by Plaintiff and her counsel, Dr. Gafner confirmed that the menthol in the Product is 100% derived from the herbs *mentha arvensis* and *mentha × piperita* – i.e., that the menthol in the Product is herbal.  (UMF Nos. 2, 6.)  Plaintiff did not submit any expert report, or rebuttal expert report opining on whether or not the menthol in the Product is herbal.  (UMF Nos. 7, 9.)  Plaintiff has not produced any evidence showing that the menthol in the Product is synthetic.  (UMF Nos. 7-10.)

### 4.    Plaintiff's Expert Conducts A Consumer Survey Based On The Same Mistaken Assumption

Plaintiff's only expert, Andrea Matthews, Ph.D., was asked to conduct a consumer survey consisting of two questionnaires to test certain consumer beliefs about the Product (the "Matthews Study").  (Henry Decl., Ex. 2, ¶¶ 16-19.)  However, like Plaintiff's Complaint, the Matthews Study was built around the false premise that the menthol in the Product is synthetic.  As such, both of

-7-

Dr. Matthews' questionnaires misrepresented the nature of the Product's ingredients to respondents.

The first flawed questionnaire purported to test how consumers perceived the front label of the Product by showing it to them and asking consumers about the source of the Product's cough suppressant and oral anesthetic benefits (the "Flawed Front Label Study"). (Henry Decl., Ex. 2, ¶¶ 127-138.) However, because Dr. Matthews apparently did not understand that the menthol in the Product is in fact an herbal ingredient, the potential responses in the Flawed Front Label Study failed to delineate between herbal menthol and synthetic menthol. (*See* Henry Decl., Ex. 2, ¶ 134.)

The second flawed questionnaire purported to assess the extent to which consumers preferred to purchase cough drops where the cough suppressant and oral anesthetic benefits "came from herbal ingredients versus from menthol" (the "Flawed Preference Study"). (Henry Decl., Ex. 2, ¶ 139.) Again, the Flawed Preference Study relied on a categorically incorrect premise: that the menthol in the Product is synthetic. (Henry Decl., Ex. 5, Matthews Tr. 105:7-11 (Q. "The only analysis that you did was you only looked at those people who would either pick herbal only or menthol; right?" A. "We gave people a choice between herbal only and menthol only, that is correct.")

As a result, the Matthews Study is entirely useless because it did not address consumer preferences related to the actual active ingredient in the Product – herbal menthol.

### 5.    Plaintiff Does Not Produce Any Admissible Evidence Of Damages

In her report, Dr. Matthews states that "if requested" she might run a damages model to measure the alleged price premium in the Complaint and references several broad economic concepts that might allow her to do so. (Henry Decl., Ex. 2, ¶¶ 165, 174-75, 188-89.) Dr. Matthews confirmed at deposition that she was never asked to perform this work and that she

currently has no opinion as to whether there is a price premium associated with Product and/or the challenged label.  (Henry Decl., Ex. 5, Matthews Tr. 135:9-12, 140:15-25, 141:1-12; UMF No. 13.)

### 6.    All Expert and Fact Discovery Deadlines Have Closed

On November 1, 2022, Judge Myerscough entered a scheduling order setting fact and expert discovery deadlines in this case.  (ECF No. 16.)  Plaintiff's deadline to file a motion for class certification and serve her Rule 26 expert reports (if any) was May 5, 2023, but Plaintiff did not file or serve any by that date.  (*Id.*)  On June 22, 2023, Plaintiff filed a motion acknowledging that these deadlines had passed and seeking to extend the deadline to file her motion for class certification.  (ECF No. 23.)  Plaintiff attached the Matthews Declaration as Exhibit C to that motion.  (ECF No. 23-3.)  On July 28, 2023, Magistrate Judge McNaught granted Plaintiff's motion and deemed the motion and supporting documents – including the Matthews Declaration – filed.  (ECF No. 27.)  At the hearing on July 30, 2023, Judge McNaught set a briefing schedule for the motion for class certification and extended: (i) Ricola's deadline to depose Plaintiff's expert to August 30, 2023; (ii) Ricola's deadline to file an opposition to the motion for class certification and exchange Rule 26 expert reports to September 28, 2023; (iii) Plaintiff's deadline to file a reply brief in support of motion for class certification (if any) to October 12, 2023; and (iv) Plaintiff's deadline to depose Ricola's expert(s) to October 26, 2023.  (Henry Decl ¶ 2.)  No other changes were requested by the parties or made to the Court's original scheduling order.  (*Id.*)  Accordingly, all discovery in this matter closed on October 31, 2023.  (ECF No. 16.)

### B.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(a) provides that courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of either

providing evidence to show there is an absence of material fact or pointing to a lack of evidence in the record to support an element of a claim that the non-movant must prove at trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 324-25 (1986). The burden then shifts to the non-movant "to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

Although courts construe facts in the light most favorable to the non-movant, *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010), a factual dispute can preclude summary judgment only if related to an issue that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this standard, the non-movant must come forward with sufficient "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252; *see Roger Whitmore's Auto Servs., Inc. v. Lake Cnty.*, 424 F.3d 659, 669 (7th Cir. 2005) (finding that the non-movant's evidence to oppose summary judgment was little more than "bare speculation or a scintilla of evidence, neither of which will suffice").

### C.  Plaintiff Cannot Establish The Elements Of Her Claims

"It is the obligation of the Plaintiff, as the party opposing summary judgment, to offer some admissible evidence in support of each element of her claim, sufficient for a reasonable juror to render a verdict in her favor." *Elder v. Bimbo Bakeries USA, Inc.*, No. 3:21-cv-637-DWD, 2023 U.S. Dist. LEXIS 176362, at *16 (S.D. Ill. Sep. 29, 2023). Here, to prevail on her ICFA and unjust enrichment claims, Plaintiff must prove: (1) a deceptive act or practice undertaken by Ricola; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that Ricola intended Davis and the members of the class to rely on the deception; and (4) that actual damages were proximately caused by the deception. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Benson*, 2021 U.S. Dist. LEXIS 220986, at *12 n.4; *see also* ECF No. 11, pp. 20-21 ("Under Illinois law, plaintiffs' request for relief based on unjust enrichment is not a stand-

-10-

alone claim; rather, it is tied to the fate of their claim for statutory fraud.").  Plaintiff has failed to put forward admissible evidence to support these elements.

### 1.  Unrebutted Evidence Establishes That The Product's Active Ingredient Is Herbal and Therefore Plaintiff and Other Consumers Were Not Deceived

To establish the first element of her ICFA claim, Plaintiff "bears the burden of proving the defendant's advertising claim is false or misleading." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 977 (7th Cir. 2020).  "To be actionable under the ICFA, a representation must be 'material,' which is established by applying an objective standard." *Clark v. Bumbo Int'l Tr.*, No. 15 C 2725, 2017 U.S. Dist. LEXIS 137607, at *15 (N.D. Ill. Aug. 28, 2017) (emphasis added).

Plaintiff's testimony alone is insufficient to satisfy that a representation is false or misleading at this stage.  *Beardsall*, 953 F.3d at 977 (non-moving party "may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; [she] must go beyond the pleadings and support [her] contentions with proper documentary evidence."); *see also Weaver v. Champion Petfoods USA Inc.,* 3 F.4th 927, 937 (7th Cir. 2021) (finding plaintiff's own testimony "falls short of evidence" to satisfy the reasonable consumer standard).  Rather, to clear this bar, Plaintiff must offer admissible evidence to "establish 'a probability that a significant portion of the general consuming public [. . .], acting reasonably in the circumstances, could be misled." *Elder v. Bimbo Bakeries USA, Inc.*, No. 3:21-cv-637-DWD, 2023 U.S. Dist. LEXIS 176362, at *6 (S.D. Ill. Sep. 29, 2023).

Here, Plaintiff alleges in her Complaint that (i) "Plaintiff relied on the [Product's] representations and omissions to believe the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients" (ECF No. 1, ¶¶ 50, 68); and (ii) that these representations were deceptive because "menthol" is "the only active ingredient" and "the Product's therapeutic effect is not provided by any of the herbs pictured on the front label" (*Id.*, ¶¶

-11-

17-18).  There is no admissible evidence, let alone any evidence or any facts, that the Product's

therapeutic effect is not provided by herbal menthol – including the peppermint herb pictured on

the front label.  (UMF No. 7-10.)  Plaintiff has not identified any evidence or submitted any expert

reports which establish that the menthol in the Product is synthetic – or anything other than herbal.

(UMF 7-10.)  Plaintiff thus "has not gone beyond the pleadings and supported [her] claims with

the necessary evidence," and this alone dooms her case.  *Beardsall*, 953 F.3d at 976.

Plaintiff revealed at deposition that she does not even know how menthol is made and/or

whether it can be an herbal ingredient.  (UMF Nos. 11-12.)  In fact, Plaintiff has never "actually

looked it up to see if it is or not." (Henry Decl., Ex. 4, Davis Tr. 108:1-7.)  Thus, Plaintiff concedes

that if the menthol in the Product is in fact an herbal ingredient, the Product's label would not

necessarily be misleading:

> Q. So assuming that menthol is an herbal ingredient and it was just omitted from
> the front of the package, would you still feel mislead knowing that an herbal
> ingredient contributes to the function of the product?
>
> A.  Not necessarily.

(Henry Decl., Ex. 4, Davis Tr. 131:10-19.)  Plaintiff (and her counsel) did not, before filing the

Complaint, investigate whether or not the menthol in the Product was an herbal ingredient.

In contrast to Plaintiff's bare allegations, Ricola has produced unrebutted evidence

demonstrating that: (i) the cough suppressant and anesthetic functions in the Product are provided

by an herbal ingredient (menthol) (UMF Nos. 1-4, 6); and (ii) peppermint, which is depicted on

the front of the Product's label, is a contributing source for the menthol in the Product which

provides the therapeutic effect (UMF Nos. 5-6).  Thus, as Dr. Gafner explains in his report,

"Plaintiff's allegation that the Product does not contain herbal ingredients is without any basis in

fact" because "[t]he menthol in the Product, identified as the active ingredient of the Product, is

an herbal product." (Henry Decl., Ex. 3, Gafner Report ¶ 34.)  Plaintiff's claims are therefore conclusively disproven by the undisputed factual record and summary judgment should be granted.

### 2.    The Matthews Study Ignores The Fact That The Active Ingredient Is Herbal, and Does Not Provide Evidence Of Any Materially Deceptive Statement

The only evidence offered to support the first element of Plaintiff's ICFA claim is the expert report of Andrea Matthews, Ph.D. – a purported expert in consumer research.  However, Dr. Matthews' expert testimony is not directed to a materially deceptive statement, let alone any evidence of the same.

In conducting her study, Dr. Matthews (like Plaintiff and her counsel) made an incorrect assumption of fact: that the menthol in the Product was synthetic – and could not properly be understood to be an herbal ingredient.  As such, Dr. Matthews attempted to assess "the extent to which consumers preferred to purchase cough drops where the cough suppressant and oral anesthetic benefits came from *herbal ingredients **versus** from menthol*" and "preferences for cough drops which derive *the medicinal benefit from only herbal ingredients **compared to** menthol*." (Henry Decl., Ex. 2, ¶¶ 139, 159 (emphasis added).)  Hence, her consumer testing (in addition to other flaws, such as failing to show respondents the entirety of the labeling at issue) was simply not designed to address consumer preferences related to the actual active ingredient in the Product – herbal menthol.  (*See* Henry Decl., Ex. 5, Matthews Tr. 68:22-69:2; 154:15-23 (Q. "So your analysis that you were tasked with was to compare herbal only versus menthol only, not herbal only versus anything else that could be the active ingredient; is that correct?" A. "Our analysis for materiality was to assess preferences for herbal only versus menthol only.  That was represented to us as the nature of the complaint.").)

This is not the first time that Dr. Matthews (or Plaintiffs' counsel) have relied on false assumptions in attempting to establish consumer deception.  In *Elder v. Bimbo Bakeries*, an expert

-13-

report submitted by Dr. Matthews was recently ruled insufficient to create a material dispute of

fact on the element of deception because it similarly relied on a false assumption (again supplied

by Plaintiffs' counsel here) and summary judgment was granted in favor of the defendant.  2023

U.S. Dist. LEXIS 176362, at *6.  Specifically, in *Elder*, the plaintiff alleged that the defendant's

"All Butter Loaf Cake" would mislead a reasonable consumer to believe that the butter in the

product provided all of the product's flavor and shortening function when, instead, they were

provided by artificial flavors and/or soybean oil.  *Id.* at *2-3.  At summary judgment, the defendant

argued that plaintiff had not offered any evidence to substantiate that butter did not provide the

product's flavor or shortening function.  *Id.* at *11-13.  In response, the plaintiff attempted to rely

on a purported "Consumer Confusion Survey" in which "Dr. Matthew[s] made the assumption

that, in fact, the product was not butter flavored and shortened by butter alone."  *Id.* at *18.

Rejecting Dr. Matthews' survey, the court explained that the problem underlying this assumption

was that "there is no evidence that the product here has its butter flavor or its shortening from

anything but butter."  *Id.*  Because Dr. Matthews had no basis for this assumption (other than bare

assertions from Plaintiff's counsel) the court found that the "survey provides no help to Plaintiff

in her effort to show the existence of evidence" to meet the reasonable consumer standard.  *Id.* at

*19.

     The Matthews Study here suffers from a nearly identical flaw.  In designing her survey

questions, Dr. Matthews simply did not bother to delineate between herbal menthol and synthetic

menthol because she incorrectly assumed that the menthol in the Product was not an herbal

ingredient.  As a result, the responses in the Flawed Front Label and Preference Studies can only

establish that consumers might: (1) believe that the Product's active ingredient is herbal and/or

menthol based on the front of the package (any combination of these answers are correct); and (2)

-14-

have a slight preference for herbal active ingredients over synthetic menthol (which is not in the Product).  (*See* Henry Decl., Ex. 2, ¶¶ 33-35, 159-63.)  In other words, every possible answer to these key questions in the Matthews Study support that consumers are not misled and/or harmed. (*See id.*, ¶¶ 129, 140-41.)

The results of the Matthews Study, which rely on false assumptions regarding the Product's properties, are therefore far from evidence to "establish 'a probability that a significant portion of the general consuming public [. . .], acting reasonably in the circumstances, could be misled." *Elder*, 2023 U.S. Dist. LEXIS 176362, at *6.

### 3.    Plaintiff Has No Evidence To Establish Ricola's Intent

"A successful claim under the ICFA requires that the plaintiff 'plead and prove that the defendant committed a deceptive or unfair act *with the intent that others rely on the deception*." *Nofsinger v. Jackson Nat'l Life Ins*. Co., No. 17-cv-03367, 2021 U.S. Dist. LEXIS 135841, at *11 (N.D. Ill. July 21, 2021) (emphasis added).  Therefore, to support her ICFA claim, Plaintiff "must set forth some evidence raising a genuine issue of material fact that [Ricola] intended to induce [her] reliance" on the alleged misrepresentations or omissions on the Product's packaging.  *Great Lakes Reinsurance UK v. 1600 W. Venture, LLC*, 261 F. Supp. 3d 860, 866 (N.D. Ill. 2017) (granting summary judgment on ICFA claim because plaintiff failed to point to evidence of defendant's intent).   Here, Plaintiff has not identified (and cannot offer) any evidence whatsoever to support an allegation that Ricola intended that she rely on the alleged "misrepresentations" for information regarding the "herbal" qualities of the Product's active ingredients.  (UMF Nos. 14-15.)   Thus, her claims independently fail for this reason.  *Great Lakes*, 261 F. Supp. 3d at 866.

### 4.    Plaintiff Has Not Offered Any Viable Damages Model To Support That The Product's Labeling Proximately Caused Her Any Harm

"The actual damage element of a private ICFA action requires that the plaintiff suffer

'actual pecuniary loss.'" *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 275-76 (2005) ("Theoretical harm is insufficient. Damages may not be predicated on mere speculation, hypothesis, conjecture or whim."). At the summary judgment stage, "[i]t is not enough to discuss what a damage model <u>might</u> look like, what evidence <u>might</u> be developed, or what an expert <u>might</u> prepare or say." *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 2000 U.S. Dist. LEXIS 1750, at *12 (N.D. Ill. Feb. 9, 2000) (emphasis added); *see also Colpitts v. Blue Diamond Growers*, No. 20 Civ. 2487 (JPC), 2023 U.S. Dist. LEXIS 57108, at *12-13 (S.D.N.Y. Mar. 31, 2023) (granting summary judgment in NY false advertising case where plaintiff had "not substantiated his allegation that reasonable consumers are willing to pay a higher price for the Smokehouse Almonds due to their alleged mislabeling, since the record contains no evidence whatsoever as to how the source of smoky flavoring affects the market price of flavored foods.")

Here, Plaintiff has never put forward any evidence to establish that she or the putative class overpaid for the Product because of any representations on the label – i.e., that the Product's labeling proximately caused her harm. (UMF No. 13.) In her declaration, Dr. Matthews states "we were asked to present the methodology we would use *if requested* to conduct a price premium analysis on the value consumers would place on the Product if its source of medicinal benefits was herbs versus menthol." (Henry Decl., Ex. 2, ¶ 19.) But Dr. Matthews confirmed at deposition that she was never asked to perform this work and that she currently has no opinion as to whether there is a price premium associated with Product and/or the challenged label. (Henry Decl., Ex. 5, Matthews Tr. 135:9-12, 140:15-25, 141:1-12.) At this stage, the deadline to submit damages evidence has long since passed and Plaintiff has failed to carry her burden. Summary judgment can and should be granted on this failing alone.

Moreover, regardless of Plaintiff's failure to produce any evidence of damages before the close of discovery, or at any point in the case to date, Dr. Matthews' proposed damages model would still have suffered from the same fatal flaws as her Flawed Front Label and Preference Studies because she again assumed that the menthol in the Product was synthetic. For example,

-16-

Dr. Matthews claims in her report that "[a] reasonable next step for research would be to measure the amount that consumers would be willing to pay for cough drops that they believed obtained their cough suppressant and oral anesthetic benefits *from herbal ingredients only, compared to those who obtained these benefits through menthol*." (Henry Decl., Ex. 2, ¶ 165 (emphasis added).) In other words, Dr. Matthews erroneously proposed to run a damages model that would test consumer preferences for non-herbal menthol – which is not in the Product.

In sum, no reasonable factfinder could conclude from the evidence in the record that Plaintiff has established that she paid a price premium for the Product. Because she has failed to offer any viable damages model to support her injury, an element she must prove to succeed on her claims, summary judgment should be granted.

### D. **Plaintiff Lacks Article III Standing**

Under Article III, plaintiff must have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Silha*, 807 F.3d at 173. While allegations that a plaintiff has suffered a price premium can be sufficient to support Article III standing at the pleadings stage, *see* e.g., *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011), "[w]hen litigation moves beyond the pleading stage and Article III standing is challenged as a factual matter, a plaintiff can no longer rely on mere allegations of injury; he must provide *evidence* of a legally cognizable injury in fact." *Flynn v. FCA US LLC*, 39 F.4th 946, 949-50 (7th Cir. 2022). Plaintiff must therefore establish with evidence that she, together with all members of the putative class, suffered an injury in fact relating to the Product. *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-08 (2021)

-17-

("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.").

Here, as discussed above, Plaintiff alleges in her Complaint that she and members of the putative class paid a price premium for the Product. (ECF No. 1, Compl. ¶¶ 71-72.)  However, Plaintiff has never identified any evidence to support this alleged price premium and her expert, Dr. Matthews, merely opined that she "might" be able to perform testing in the future. (UMF No. 13.)  Moreover, contrary to Plaintiff's alleged deception forming the basis for this speculative theory of a price premium being paid by consumers for herbal menthol (versus synthetic menthol), Dr. Gafner's report conclusively establishes that the active ingredient in the product is in fact herbal. (UMF Nos. 2, 4, 6.)  Thus, Plaintiff and the putative class got exactly what they alleged they paid for – a Product with an active herbal ingredient – and they could not have been damaged in purchasing the Product.

Plaintiff's allegation that she and the putative class paid a "premium price" for the Product, is therefore not supported by any admissible evidence and she lacks any cognizable injury. Accordingly, Plaintiff has failed to establish standing under Article III, and summary judgment is properly granted on this basis. *Flynn*, 39 F.4th at 952-53.

### E.        Plaintiff's Claims Are Expressly Preempted By The FDCA[2]

When federal and state law conflict, "federal law prevails and state law is preempted." *Murphy v. NCAA*, 138 S. Ct. 1461, 1476 (2018); *Turek v. Gen. Mills, Inc.,* 662 F.3d 423, 427 (7th Cir. 2011) (states cannot impose requirements which are not "identical" to FDCA). "Preemption can take on three different forms: express preemption, field preemption, and conflict preemption."

---

[2] Ricola raised several preemption arguments in connection with its motion to dismiss.  However, these arguments were not addressed by the Court in its Order dated September 12, 2022. (*See* ECF Nos. 6, 7, 10, 11.)

*Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). Express preemption, "occurs when a federal statute explicitly states that it overrides a state or local law that is inconsistent with the language of the preemption." *Wright v. Walmart, Inc.*, No. 22-cv-02311-SPM, 2023 U.S. Dist. LEXIS 146631, at *8 (S.D. Ill. Aug. 21, 2023).

The FDA regulates the sale of OTC drug products such as the Product. The FDA developed a separate regulatory process, known as the monograph system, for the approval of classes of OTC drug products, such as cough drops, and their active ingredients. As a component of the monograph system, "the FDA regulates the contents of labels and controls the information the labels the convey." *Id.* at *12. Pursuant to the Food Drug and Cosmetic Act ("FDCA"), "any labeling requirement that is different from or in addition to, or that is otherwise not identical with, a requirement imposed under federal law is subject to preemption." 21 U.S.C. §379r(a)(2). Thus, "[a]s many cases have held, monograph conditions are 'requirements' that have preemptive effect." *Solak v. Target Corp.*, No. 3:22-cv-813, 2023 U.S. Dist. LEXIS 158087, at *10 (N.D.N.Y. Sep. 7, 2023).

Here, Ricola markets the Product under the Cold/Cough Monograph and Oral Anesthetic Monograph and thus is required to follow FDA's regulations as to how the Product should be labeled. (UMF No. 16.) First, FDA requires that the Product to be labeled with the statement(s) of identity "Cough Suppressant" and/or "Oral Anesthetic" on the principal display panel. *See* §§ M012.70(b), M012.74, 53 F.R. § 356.55(a); 21 C.F.R. § 201.61 ("The principal display panel of an over-the-counter drug in package form shall bear as one of its principal features a statement of the identity of the commodity"). The Product complies with these regulations, and identifies itself

as a "Cough Suppressant" and "Oral Anesthetic" on the front of the package – i.e., the principal display panel.[3]

Second FDA requires that the Product have a drug facts panel on the back which lists "active ingredients as the very first information within a clearly defined panel, immediately below a prominent title." 64 Fed. Reg. 13254, 13260. As the FDCA further explains in the final rule, the purpose of this placement is to:

> [E]nable consumers to quickly and systematically compare ingredients within products for similar uses. In addition, **because the respective purposes will be listed next to each active ingredient, consumers will know why the ingredient is in the product**.

64 Fed. Reg. 13254, 13260 (emphasis added); *see also* 13258. Through these actions, the FDCA expressly regulates whether and where on the label an OTC product should disclose its active ingredients.

Plaintiff claims that she inferred from the statements "Cough Suppressant" and "Oral Anesthetic," the Product's name, and images of herbs on the front label that the Product's functions were provided by herbal active ingredients. (ECF No. 1, Compl. ¶¶ 17, 22, 25, 50, 68, 71.) Accordingly, to dispel Plaintiff of her alleged confusion, Ricola would be required to change the Product's labeling to specify that the active ingredient is herbal menthol by identifying the active ingredient on the front of the label. This proposed requirement is inconsistent with the determinations of the FDA regarding placement of the Product's active ingredients in connection with the statement of identity. Through this litigation, Plaintiff cannot seek to impose additional

---

[3] The term "principal display panel," as it applies to packaged OTC products, "means the part of a label that is most likely to be displayed, presented, shown, or examined under customary conditions of display for retail sale." 21 C.F.R. § 201.60.

requirements on Ricola which are not the same as the FDCA and her claims are therefore expressly preempted.[4]

Moreover, Plaintiff cannot avoid express preemption by simply asserting that Ricola can make other changes to the Product's packaging – i.e., by adding other language or removing references to the herbs in the Product. *Solak*, 2023 U.S. Dist. LEXIS 158087, at \*16-17 (dismissing ICFA claims and explaining that "by claiming that some other terminology is necessary to ensure that the label is not misleading, plaintiff impermissibly claims that state law imposes requirements that are different from, additional to, or otherwise not identical with, the requirements of the FDCA"); *see also Turek,* 662 F.3d at 427 (claims regarding product's percentage daily value of fiber were preempted because, if successful, they would require the addition of "disclaimers" that were "not identical to the labeling requirements imposed on such products by federal law").

In sum, in compliance with FDA regulations, the Product accurately discloses (i) its statements of identity on the principal display panel and (ii) that menthol is the active ingredient in the Drug Facts panel. Plaintiff's claims – which attempt to impose additional requirements on Ricola inconsistent with the FDCA – are expressly preempted.

## **CONCLUSION**

For the foregoing reasons, Ricola's Motion for Summary Judgment should be granted.

---

[4] Plaintiff's Complaint vaguely references a September 2022 draft FDA guidance document which contains a recommendation that products list the "Established Name" of an active ingredient near disclosures of strength. (ECF No. 1, Compl. ¶ 20.) However, this draft guidance is explicitly "non-binding" and does not impose any additional labeling requirements on OTC monograph products.

Dated:  November 17, 2023                    Respectfully submitted,

                                             By:  */s/ David M. Poell*
                                             David M. Poell (Ill. State Bar No. 6302765)
                                             Sheppard Mullin Richter & Hampton LLP
                                             321 N. Clark St., 32nd Flr.
                                             Chicago, Illinois 60602
                                             Telephone:  (312) 499-6349
                                             Facsimile:  (312) 499-6301
                                             E mail: dpoell@sheppardmullin.com

                                             Paul Garrity (N.Y. State Bar No. 2756419)
                                             Sheppard Mullin Richter & Hampton LLP
                                             30 Rockefeller Plaza,
                                             New York, NY 10112
                                             Telephone:  (212) 653-8700
                                             Facsimile:  (212) 653-8701
                                             E mail: pgarrity@sheppardmullin.com

                                             Sascha Henry (Cal. State Bar No. 191914)
                                             Khirin A. Bunker (Cal. State Bar No. 329314)
                                             Sheppard Mullin Richter & Hampton LLP
                                             333 S. Hope St., 43rd Flr.
                                             Los Angeles, CA 90071-1422
                                             Telephone: (213) 620-1780
                                             Facsimile: (213) 620-1398
                                             E mail: shenry@sheppardmullin.com
                                                     kbunker@sheppardmullin.com

                                             *Counsel for Defendant Ricola USA, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This Ricola's Motion for Summary Judgment complies with the type volume limitations

of Local Rule 7.1(B)(4) because Section III (Argument) contains 5,407 words.


By:  <u>*/s/ David M. Poell*</u>
David M. Poell

## <u>CERTIFICATE OF SERVICE</u>

I, David Poell, an attorney, hereby certifies that, on November 17, 2023, a copy of the foregoing document was filed via this Court's CM/ECF electronic filing system, which effects service on all counsel of record in this matter.

Dated:  November 17, 2023          Respectfully submitted,

By:  /s/ *David M. Poell*

David M. Poell
*Counsel for Defendant Ricola USA, Inc.*