# Exhibit 5

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF ILLINOIS

 3                   SPRINGFIELD DIVISION

 4

 5   LACIE DAVIS, individually and on )
     behalf of all others similarly   )
 6   situated,                        )
                                      )
 7           Plaintiff,               ) No.
                                      ) 3:22-cv-03071-
 8       vs.                          ) CLR-KLM
                                      )
 9   RICOLA USA, INC.,                )
                                      )
10           Defendant.               )
     _____)
11

12

13

14          Remote videotaped deposition of

15       ANDREA LYNN MATTHEWS, Ph.D., taken on

16       behalf of the Defendant, commencing

17       at 9:31 a.m. on Monday,

18       August 28, 2023, before DEBORAH L.

19       LUNDGREN, CSR No. 6727, a Certified

20       Shorthand Reporter in and for the

21       State of California.

22

23

24

25
```

```
 1   APPEARANCES:

 2


 3   FOR THE PLAINTIFF:

 4       SHEEHAN & ASSOCIATES, P.C.
         BY:  SPENCER SHEEHAN
 5            ATTORNEY AT LAW
         60 Cuttermill Road
 6       Suite 409
         Great Neck, New York  11021
 7       516.268.7080 spencer@spencersheehan.com

 8
     FOR THE DEFENDANT:
 9
         SHEPPARD MULLIN RICHTER &
10       HAMPTON, LLP
         BY:  SASCHA V. M. HENRY
11            ~and~ KHIRIN BUNKER
              ATTORNEYS AT LAW
12       333 South Hope Street
         Forty-Third Floor
13       Los Angeles, California  90071-1422
         213.620.1780 shenry@sheppardmullin.com
14       kbunker@sheppardmullin.com

15       ~and~

16       SHEPPARD MULLIN RICHTER &
         HAMPTON, LLP
17       BY:  PAUL GARRITY
              ATTORNEY AT LAW
18       30 Rockefeller Plaza
         New York, New York  10112
19       212.653.8700 pgarrity@sheppardmullin.com

20
     ALSO PRESENT:
21
         DONALD PARRIOTT
22       BILL HIGGINS

23
     VIDEOGRAPHER:
24
         GIGI FADICH
25
```

```
1                         I N D E X

2

3    EXAMINATION BY:                                PAGE

4      MS. HENRY                                     5

5

6                       E X H I B I T S

7                                                   PAGE

8      Exhibit 1     Deposition notice (6 pages)     12

9      Exhibit 2     Notice of intent to serve       14
                     document subpoena to
10                   Dr. Andrea Lynn Matthews
                     (10 pages)
11
       Exhibit 3     Email string re deposition      14
12                   notice and subpoena for
                     Dr. Matthews (3 pages)
13
       Exhibit 4     Dr. Matthews' report            19
14                   (100 pages)

15     Exhibit 5     6-23-23 Email attaching Excel   20
                     spreadsheet (1 page)
16
       Exhibit 5A    Excel spreadsheet of backup     22
17                   data (retained)

18     Exhibit 6     9-17-22 Email to Dr. Matthews   142
                     from Mr. Sheehan (2 pages)
19
       Exhibit 7     2-22-23 email re Qualtrics      147
20                   (9 pages)

21     Exhibit 8     4-10-23 Email string            148
                     (4 pages)
22
       Exhibit 9     Photo of Ricola packaging,      150
23                   Bates 8 (1 page)

24

25
```

| | | |
|---|---|---|
| 1 | Remote Deposition; Monday, August 28, 2023 | |
| 2 | 9:31 a.m. | |
| 3 | | 09:30:40 |
| 4 | THE VIDEOGRAPHER:  Good morning.  This is | 09:30:40 |
| 5 | the remote deposition of Dr. Andrea Lynn Matthews | 09:31:19 |
| 6 | taken on Monday, August 28, 2023, in the matter of | 09:31:24 |
| 7 | Lacie Davis, et al., versus Ricola USA, | 09:31:29 |
| 8 | Incorporated, Case No. 3:22-cv-03071 initials | 09:31:33 |
| 9 | CLR-KLM. | 09:31:40 |
| 10 | This case is being heard in the United | 09:31:43 |
| 11 | States District Court for the Central District of | 09:31:47 |
| 12 | Illinois, Springfield Division. | 09:31:49 |
| 13 | This deposition is on behalf of the | 09:31:52 |
| 14 | defendant.  My name is Gigi Fadich, legal | 09:31:54 |
| 15 | videographer, contracted through Dean Jones Legal | 09:31:58 |
| 16 | Videos, Incorporated, of Los Angeles and Santa Ana, | 09:32:02 |
| 17 | California. | 09:32:04 |
| 18 | Because we are not in person, I will have | 09:32:04 |
| 19 | to interrupt proceedings if the deponent drifts out | 09:32:06 |
| 20 | of frame or should there be any connectivity issues. | 09:32:09 |
| 21 | This deposition is commencing at 9:32 a.m. | 09:32:10 |
| 22 | Pacific time. | 09:32:15 |
| 23 | Would all present please identify | 09:32:16 |
| 24 | themselves beginning with the deponent. | 09:32:19 |
| 25 | THE WITNESS:  My name is Andrea Lynn | 09:32:21 |

| | | |
|---|---|---|
| 1 | Matthews, Ph.D. | 09:32:24 |
| 2 |     MS. HENRY:  I'm Sascha Henry.  I'm counsel | 09:32:28 |
| 3 | for Ricola USA, and I will be taking the deposition. | 09:32:34 |
| 4 | Also present with me is Khirin Bunker and Bill | 09:32:38 |
| 5 | Higgins of Ricola.  Khirin is an attorney with my | 09:32:41 |
| 6 | law firm. | 09:32:45 |
| 7 |     MR. SHEEHAN:  My name is Spencer Sheehan, | 09:32:46 |
| 8 | attorney for the plaintiff here. | 09:32:49 |
| 9 |     THE VIDEOGRAPHER:  Would the court reporter | 09:32:55 |
| 10 | please administer the oath. | 09:33:00 |
| 11 |     THE REPORTER:  Please raise your right | 09:33:00 |
| 12 | hand, Dr. Matthews. | 09:33:00 |
| 13 |     Do you declare under penalty of perjury to | 09:33:00 |
| 14 | tell the truth, the whole truth, and nothing but the | 09:33:00 |
| 15 | truth? | 09:33:11 |
| 16 |     THE WITNESS:  I do. | 09:33:11 |
| 17 | | 09:33:11 |
| 18 |                 EXAMINATION | 09:33:11 |
| 19 | BY MS. HENRY: | 09:33:11 |
| 20 |    Q   Dr. Matthews, thank you for appearing here | 09:33:16 |
| 21 | today.  I wanted to take your deposition in person, | 09:33:19 |
| 22 | but I understand that you're on maternity leave, and | 09:33:22 |
| 23 | so asked that it be -- you asked that it be remote; | 09:33:26 |
| 24 | is that correct? | 09:33:30 |
| 25 |    A   That is correct.  And I appreciate it. | 09:33:30 |

|    |                                                                    |          |
|----|--------------------------------------------------------------------|----------|
| 1  | the one statement that best reflects their answer.                 | 11:30:42 |
| 2  |         It does not make sense for a respondent,                   | 11:30:51 |
| 3  | for instance, to say that benefits come only from                  | 11:30:54 |
| 4  | herbs and only from menthol.  That does not make                   | 11:30:58 |
| 5  | sense.                                                             | 11:31:03 |
| 6  |    Q    Why is that?                                               | 11:31:04 |
| 7  |    A    Because they do not overlap.  You cannot                   | 11:31:05 |
| 8  | have things that only come from more than one                      | 11:31:09 |
| 9  | source.                                                            | 11:31:13 |
| 10 |    Q    Okay.  So in this -- in this sentence here                 | 11:31:15 |
| 11 | on the top of page 34, you say "mutually exclusive                 | 11:31:23 |
| 12 | options means that answer categories do not overlap.               | 11:31:27 |
| 13 | Only one answer can be logically chosen, e.g., X and               | 11:31:32 |
| 14 | not X are mutually exclusive."                                     | 11:31:37 |
| 15 |         So to put it differently, if you're only                   | 11:31:40 |
| 16 | giving a survey respondent an opportunity to provide               | 11:31:46 |
| 17 | one answer, there can't be overlap in those answers                | 11:31:49 |
| 18 | because then what happens?                                         | 11:31:54 |
| 19 |    A    Exactly.  Because then respondents don't                   | 11:31:57 |
| 20 | know which button to push because more than one                    | 11:32:01 |
| 21 | button could accurately reflect their answer.                      | 11:32:05 |
| 22 |    Q    So if you're using closed-ended questions                  | 11:32:08 |
| 23 | with -- where only one -- where the respondents can                | 11:32:14 |
| 24 | only answer with one selection, for the results to                 | 11:32:17 |
| 25 | be valid, the options have to be mutually exclusive;               | 11:32:24 |

```
 1   correct?                                                11:32:29
 2        A    Correct.                                      11:32:29
 3        Q    Okay.  We were looking at the subject of      11:32:30
 4   your report.  And paragraph 16 is sort of where we      11:32:53
 5   left off, where we were talking about -- I asked you    11:33:00
 6   who had tasked you with testing the extent to which     11:33:06
 7   consumer confusion exists regarding the source of       11:33:09
 8   medicinal benefits, and for that task, just to be       11:33:14
 9   clear, that -- for that to be valid, you had to have    11:33:18
10   mutually exclusive answers in the -- in the             11:33:23
11   questions relevant to that task; correct?               11:33:27
12        A    Yes.                                          11:33:30
13        Q    Okay.  Paragraph 17 says, "We tested          11:33:31
14   whether the presence or absence of the qualifying       11:33:36
15   term 4.8 mg of menthol per drop changed consumer        11:33:40
16   expectations regarding the source of the medicinal     11:33:47
17   benefits for the product."  Why did you do that?        11:33:50
18        A    It is best practice, when conducting a        11:33:58
19   survey experiment, to assess consumer confusion or      11:34:03
20   deception, to present a control condition, as well      11:34:07
21   as an experimental condition, to be able to identify    11:34:14
22   and isolate out the impact of a particular claim        11:34:20
23   that is supposedly deceptive or confusing.              11:34:24
24             Therefore, we created an edited condition     11:34:29
25   of the label to identify the "but for" amount of        11:34:36
```

| | | |
|---|---|---|
| 1 | of the target population. | 01:34:50 |
| 2 |     We did not find, for instance, that less | 01:34:52 |
| 3 | than 10 percent of the population would prefer | 01:34:55 |
| 4 | herbal ingredients. | 01:34:58 |
| 5 |   Q   Well, you did forced choice here; right? | 01:35:02 |
| 6 |   A   Yes. | 01:35:07 |
| 7 |   Q   ==The only analysis that you did was you only== | 01:35:07 |
| 8 | ==looked at those people who would either pick herbal== | 01:35:11 |
| 9 | ==only or menthol; right?== | 01:35:15 |
| 10 |   A   ==We gave people a choice between herbal only== | 01:35:16 |
| 11 | ==and menthol only, that is correct.== | 01:35:19 |
| 12 |   Q   And it's pretty close to a coin toss | 01:35:21 |
| 13 | whether they picked herbal only versus menthol; | 01:35:24 |
| 14 | right? | 01:35:28 |
| 15 |   A   One could look and say that upper bounds of | 01:35:30 |
| 16 | the 95 percent confidence interval, over 60 percent | 01:35:34 |
| 17 | say it's probably a bit more than a coin toss. | 01:35:37 |
| 18 |     Then when you look at the people who had | 01:35:39 |
| 19 | previously purchased the brand being over 60 percent | 01:35:41 |
| 20 | up to 75 percent say that's substantially more than | 01:35:43 |
| 21 | a coin toss. | 01:35:47 |
| 22 |   Q   Now, you talked about the reason that you | 01:35:49 |
| 23 | dropped the 25 intervals in paragraph 65 was because | 01:35:51 |
| 24 | they were not part of your target market. | 01:35:55 |
| 25 |     Did those 190 respondents not identify | 01:35:58 |

| | | |
|---|---|---|
| 1 | A    I would be able to, but I would likely be | 02:30:33 |
| 2 | assisted by Dr. Will Ingersoll. | 02:30:36 |
| 3 | Q    Paragraph 168 talks about "Conjoint | 02:30:41 |
| 4 | analysis is a standard practice in marketing | 02:30:53 |
| 5 | research for identifying the unique impact of one | 02:30:56 |
| 6 | product factor, such as size, price, color, or other | 02:30:59 |
| 7 | attribute of a product, on willingness to purchase | 02:31:03 |
| 8 | this item." | 02:31:06 |
| 9 | Have you done any studies to analyze the | 02:31:13 |
| 10 | consumers or this survey's respondents' willingness | 02:31:16 |
| 11 | to purchase Ricola products? | 02:31:21 |
| 12 | A    No. | 02:31:24 |
| 13 | Q    Have you done any analysis to identify the | 02:31:26 |
| 14 | product factors and how -- which ones are more | 02:31:34 |
| 15 | important than others to the consumer? | 02:31:39 |
| 16 | A    Not other than the materiality component | 02:31:42 |
| 17 | that we have previously discussed. | 02:31:45 |
| 18 | Q    In your materiality component that we | 02:31:51 |
| 19 | previously discussed, you did not compare -- do a | 02:31:53 |
| 20 | comparison of other product features? | 02:31:59 |
| 21 | A    That is correct. | 02:32:01 |
| 22 | Q    Okay. So just to be clear, your | 02:32:03 |
| 23 | materiality analysis, so that we don't have any | 02:32:05 |
| 24 | ambiguity, just asked the consumer to tell you | 02:32:09 |
| 25 | whether they preferred a product that was herbal | 02:32:12 |

```
 1  ingredients only or menthol only; correct?                    02:32:15
 2       A    That is correct.  So it was comparing               02:32:18
 3  herbal only to menthol only, but did not compare              02:32:20
 4  that attribute to other attributes.                           02:32:24
 5       Q    And so for -- just to bring this to                 02:32:26
 6  paragraph 168, the materiality analysis that you've           02:32:30
 7  done thus far doesn't compare herbal only                     02:32:33
 8  ingredients or menthol only ingredients to things             02:32:40
 9  such as size, price, color, flavor?                           02:32:45
10       A    That is accurate.                                   02:32:48
11       Q    It doesn't analyze past experience with             02:32:49
12  product or brand strength either; correct?                    02:32:54
13       A    Correct.                                            02:32:57
14       Q    In paragraph 169, you described how                 02:32:59
15  consumers are presented with whether they're asked            02:33:17
16  to choose between a small number of hypothetical              02:33:22
17  products and indicate which they would purchase, or           02:33:25
18  whether they would not purchase any of these                  02:33:28
19  products.                                                     02:33:30
20            As of now, you haven't identified what              02:33:31
21  those hypothetical products would be that you would           02:33:34
22  use for a price premium analysis; correct?                    02:33:36
23       A    Not at that point in the report.  We state          02:33:40
24  that in paragraph 180.                                        02:33:49
25       Q    I see.  So in paragraph 180, if you were to         02:33:52
```

| | | |
|---|---|---|
| 1 | that has value to consumers, then including that in | 02:39:21 |
| 2 | a regression as a predictor variable could then be | 02:39:24 |
| 3 | associated.  We could observe how much of the price | 02:39:29 |
| 4 | is captured or explained by that particular factor | 02:39:31 |
| 5 | while holding constant controlling for all other | 02:39:36 |
| 6 | factors that go into the price, such as brand, | 02:39:39 |
| 7 | flavor, et cetera, so we can capture out the amount | 02:39:44 |
| 8 | of the price that is due to that relevant attribute. | 02:39:47 |
| 9 |     Q  Okay.  So in this sentence you talk about | 02:39:54 |
| 10 | an estimate for a characteristic of not being marked | 02:40:01 |
| 11 | 4.8 percent -- pardon me -- 4.8 milligrams of | 02:40:05 |
| 12 | menthol per job will give us a value of how much | 02:40:09 |
| 13 | more a product was marked up compared to a similar | 02:40:12 |
| 14 | product without this characteristic. | 02:40:15 |
| 15 |     Are you expecting that having the | 02:40:18 |
| 16 | 4.8 milligrams of menthol per drop will be -- have a | 02:40:22 |
| 17 | lower value than a product that doesn't have that on | 02:40:30 |
| 18 | the front? | 02:40:32 |
| 19 |     A  That is the assumption that we were given | 02:40:33 |
| 20 | in the complaint, that the product had a higher -- | 02:40:35 |
| 21 | was sold at a higher price because it did not | 02:40:40 |
| 22 | include that statement. | 02:40:42 |
| 23 |     Q  Have you done anything to determine whether | 02:40:44 |
| 24 | that's true or not? | 02:40:46 |
| 25 |     A  No. | 02:40:47 |

| | | |
|---|---|---|
| 1 | Q   So at this point you have no opinion one | 02:40:48 |
| 2 | way or another as to whether there is a price | 02:40:52 |
| 3 | premium on the Ricola original herb cough drop; | 02:40:55 |
| 4 | right? | 02:41:00 |
| 5 | A   Not due to that particular attribute.  I am | 02:41:01 |
| 6 | highly confident that Ricola, as a brand, has a | 02:41:09 |
| 7 | price markup due to generic brands. | 02:41:14 |
| 8 | Q   Because of the strength of its brand name? | 02:41:18 |
| 9 | A   Yes. | 02:41:22 |
| 10 | Q   But not because of the absence of | 02:41:22 |
| 11 | 4.8 milligrams on the front of the label; correct? | 02:41:25 |
| 12 | A   Correct. | 02:41:28 |
| 13 | Q   All right.  At the bottom of this page it | 02:41:30 |
| 14 | says it's executed on June 12, 2023.  Did you | 02:41:34 |
| 15 | execute it on that date? | 02:41:38 |
| 16 | A   That is a legal question.  I submitted my | 02:41:40 |
| 17 | report to Mr. Sheehan's office in April.  That may | 02:41:49 |
| 18 | have been the date that I was sent a DocuSign to | 02:41:53 |
| 19 | sign, but I am not sure what the "executed on" -- | 02:41:56 |
| 20 | whether that is what the "executed on" language | 02:42:03 |
| 21 | means. | 02:42:07 |
| 22 | Q   Okay.  When did you do the DocuSign? | 02:42:07 |
| 23 | A   I would have to look in my records and see | 02:42:10 |
| 24 | on what date I received it.  It was probably | 02:42:12 |
| 25 | June 12. | 02:42:16 |

```
 1    Q    Have you ever used --                                03:12:52
 2    A    Well, let me rephrase.                               03:12:57
 3         Is -- I think honey might count as an                03:12:59
 4    active ingredient possibly.  And I have used ones         03:13:01
 5    that included honey.                                      03:13:06
 6    Q    Have you used any that used camphor?                 03:13:08
 7    A    Not that I remember.                                 03:13:23
 8    Q    Did you consider using -- adding camphor as          03:13:26
 9    one of the possible sources of the oral anesthetic        03:13:31
10    and cough suppressant benefits?                           03:13:37
11    A    No, I did not consider it.                           03:13:40
12    Q    Why not?                                             03:13:41
13    A    It was not something that was relevant to            03:13:43
14    our analysis of herbal only versus not herbal only.       03:13:48
15    Q    Okay.  So your analysis that you were                03:13:54
16    tasked with was to compare herbal only versus             03:13:58
17    menthol only, not herbal only versus anything else        03:14:04
18    that could be the active ingredient; is that              03:14:09
19    correct?                                                  03:14:13
20    A    Our analysis for materiality was to assess           03:14:13
21    preferences for herbal only versus menthol only.          03:14:21
22    That was represented to us as the nature of the           03:14:24
23    complaint.                                                03:14:26
24         Our task in the preferences and -- sorry.            03:14:27
25    Our task in the perception/deception component was        03:14:30
```

**Abrams, Mah & Kahn** 154

|  |  |  |
|---|---|---|
| 1 | respondents to zoom in on. | 03:19:20 |
| 2 | Q    Okay.  And do you know whether any were | 03:19:22 |
| 3 | able to see those names of the herbs? | 03:19:26 |
| 4 | A    The entire package as shown was the | 03:19:30 |
| 5 | stimulus that was given to respondents. | 03:19:35 |
| 6 | Q    You mean just the front label? | 03:19:38 |
| 7 | A    Yes. | 03:19:40 |
| 8 | Q    Okay.  And did you ever consider adding, as | 03:19:41 |
| 9 | a closed-choice option, lemon balm as one of the | 03:19:46 |
| 10 | sources of the medicinal benefits of the original | 03:19:52 |
| 11 | herb cough drops? | 03:19:57 |
| 12 | A    No.  I believe that would fall under the | 03:19:59 |
| 13 | herbal-ingredients-only category. | 03:20:01 |
| 14 | Q    So it was unnecessary to do it since lemon | 03:20:04 |
| 15 | balm is an herb? | 03:20:09 |
| 16 | A    I -- yes. | 03:20:10 |
| 17 |      MS. HENRY:  All right.  I have no further | 03:20:29 |
| 18 | questions. | 03:20:30 |
| 19 |      Thank you so much for your time today, | 03:20:31 |
| 20 | Dr. Matthews.  I really appreciate it, and I | 03:20:33 |
| 21 | particularly appreciate you taking the time on your | 03:20:36 |
| 22 | maternity leave.  I wish you the best. | 03:20:39 |
| 23 |      THE WITNESS:  Thank you very much. | 03:20:42 |
| 24 |      MR. SHEEHAN:  I have no questions for | 03:20:44 |
| 25 | Dr. Matthews.  Let's go off. | 03:20:47 |

| | | |
|---|---|---|
| 1 | THE REPORTER: Off the record? | 03:20:48 |
| 2 | MS. HENRY: We're off the record. | 03:20:51 |
| 3 | THE VIDEOGRAPHER: Video deposition off the | 03:20:53 |
| 4 | record at 3:20 p.m. | 03:20:55 |
| 5 | Deposition concluded on August 28, 2023. | 03:20:58 |
| 6 | Conclusion of media one of one used in today's | 03:21:02 |
| 7 | deposition. Thank you. | 03:21:05 |
| 8 | (Ending time: 3:20 p.m.) | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

```
 1                    WITNESS'S CERTIFICATE
 2
 3
 4
 5           I am the witness in the foregoing
 6   deposition.  I have read the foregoing deposition
 7   and having made such changes and corrections as I
 8   desire, I certify that the same is true of my own
 9   knowledge, except as to those matters which are
10   therein stated upon my information or belief, and as
11   to those matters, I believe it to be true.
12           I declare under penalty of perjury under
13   the laws of the State of California that the
14   foregoing is true and correct.
15           Executed on _____,
16   at _____.
17
18
19
20
                              _____
21                            ANDREA LYNN MATTHEWS, Ph.D.
22
23
24
25
```

REPORTER'S CERTIFICATE

I, DEBORAH L. LUNDGREN, CSR No. 6727, RPR, a certified shorthand reporter in and for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing proceedings declared under penalty of perjury to testify to the truth, the whole truth, and nothing but the truth;

That said proceedings were taken by me in shorthand at the time and place herein named and was thereafter transcribed into typewriting under my direction, said transcript being a true and correct transcription of my shorthand notes.

Pursuant to Federal Rule 30(e), transcript review was not requested;

I further certify that I have no interest in the outcome of this action.

Dated: September 7, 2023

_____
DEBORAH L. LUNDGREN
CSR NO. 6727, RPR

I, Deborah L. Lundgren, Certified Shorthand Reporter, CSR No. 6727, hereby certify:

The foregoing is a true and correct copy of the original transcript of the proceedings taken by me as thereon stated.

Dated: September 12, 2023

*Deborah L. Lundgren*
Deborah L. Lundgren, CSR No. 6727

**Abrams, Mah & Kahn**