# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

Lacie Davis, individually and on behalf of all others similarly situated,

                        Plaintiff,

          - against -

Ricola USA, Inc.,

                      Defendant

                      3:22-cv-03071-CRL-KLM

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iv

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 1

RESPONSE TO UNDISPUTED MATERIAL FACTS ................................................. 2

    A.    Undisputed Material Facts .................................................................. 2

    B.    Disputed Material Facts ...................................................................... 2

    C.    Undisputed Immaterial Facts ............................................................. 3

LEGAL STANDARDS ................................................................................................. 6

ARGUMENT ............................................................................................................... 7

I.      SUMMARY JUDGMENT IS NOT WARRANTED ON THE ICFA CLAIM ............... 7

    A.    Menthol is Not an Herb....................................................................... 7

    B.    Front Label Representations were Materially Misleading to Plaintiff and Reasonable Consumers ................................................................ 8

    C.    Peppermint is Not Source of Active Ingredient of Menthol ................ 10

    D.    Menthol Used Comes from India, Not Switzerland.............................. 10

    E.    Literal Truth of Menthol Being Derived from Mint Plants Insufficient to Overcome Claim of Deception .......................................................... 11

    F.    Failure to Disclose Menthol Was Material to Plaintiff and Consumers .............. 12

    G.    Damages Can and Will Be Established ................................................ 13

II.     "MENTHOL" IS PART OF THE PRODUCT'S REQUIRED "ESTABLISHED NAME" ............................................................................... 14

III.    NO PREEMPTION BECAUSE "MENTHOL LOZENGE" ALREADY REQUIRED ON FRONT LABEL...................................................................... 17

IV.    SUMMARY JUDGMENT IS NOT WARRANTED ON THE UNJUST ENRICHMENT CLAIM ................................................................................ 18

CONCLUSION........................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Abdullahi v. City of Madison*,
   423 F.3d 763 (7th Cir. 2005) ............................................................................. 7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................... 6

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020) ........................................................................... 11

*Benson v. Newell Brands, Inc.*,
   No. 19-cv-6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ........................................ 5, 13

*Bob-Maunuel v. Chipotle Mexican Grill, Inc.*,
   10 F. Supp. 3d 854 (N.D. Ill. 2014) .................................................................... 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................... 7

*Connick v. Suzuki Motor Co., Ltd.*,
   675 N.E.2d 584 (1996) ................................................................................... 12

*Davis v. Ricola USA, Inc.*,
   No. 22-cv-3071, 2022 WL 4131588 (C.D. Ill. Sept. 12, 2022) ....................................... 1

*First Nat. Bank of Ariz. v. Cities Serv. Co.*,
   391 U.S. 253 (1968) ...................................................................................... 6

*Harney v. Speedway SuperAmerica, LLC*,
   526 F.3d 1099 (7th Cir. 2008) ......................................................................... 19

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*,
   No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ....................................... 14

*Jamison v. Summer Infant (USA), Inc.*,
   778 F. Supp. 2d 900 (N.D. Ill. 2011) .................................................................. 18

*Kraft, Inc. v. F.T.C.*,
   970 F.2d 311 (7th Cir. 1992) ....................................................................... 3, 11

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
   256 F.R.D. 586 (N.D. Ill. 2009) ........................................................................ 4

*Mednick v. Precor, Inc.*,
   320 F.R.D. 140 (N.D. Ill. 2017) ...................................................................... 14

iv

*Metro. Cas. Ins. Co. v. Donnelly*,
    158 F. Supp. 3d 734 (S.D. Ill. 2016) ................................................................ 7

*Modrowski v. Pigatto*,
    712 F.3d 1166 (7th Cir. 2013) ......................................................................... 7

*Morris v. Harvey Cycle and Camper, Inc.*,
    911 N.E.2d 1049 (Ill. App. Ct. 2009) ............................................................ 13

*Parker v. Brooks Life Sci., Inc.*,
    39 F.4th 931 (7th Cir. 2022) ........................................................................... 6

*Reid v. Neighborhood Assistance Corp. of Am.*,
    749 F.3d 581 (7th Cir. 2014) ........................................................................... 7

*Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*,
    600 N.E.2d 1218 (App. Ct. 1992) ................................................................... 5

*Smith on Behalf of Smith v. Severn*,
    129 F.3d 419 (7th Cir. 1997) ........................................................................... 7

*Stemm v. Tootsie Roll Indus., Inc.*,
    374 F. Supp. 3d 734 (N.D. Ill. 2019) ............................................................ 18

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) .................................................................... 17, 18

*Zarinebaf v. Champion Petfoods USA Inc.*,
    No. 18-cv-6951, 2022 WL 980832 (N.D. Ill. Mar. 31, 2022) ......................... 13

**Statutes**

21 U.S.C. § 352(e) ................................................................................................ 16

21 U.S.C. § 352(e)(1)(A)(i) ................................................................................. 15

21 U.S.C. § 352(e)(3) ..................................................................................... 15, 16

21 U.S.C. § 352(e)(3)(A) ..................................................................................... 16

21 U.S.C. § 352(e)(3)(B) ..................................................................................... 16

21 U.S.C. § 358 .............................................................................................. 15, 16

21 U.S.C. § 358(b) .......................................................................................... 2, 16

410 ILCS 620 ...................................................................................................... 18

410 ILCS 620/11(j) ............................................................................................. 18

815 ILCS 505/1 .................................................................................................................... 1

815 ILCS 505/2 .................................................................................................................. 18

**Regulations**

§ M012.70(b) ................................................................................................................... 14

§ M012.74 ........................................................................................................................ 14

21 C.F.R. § 201.61 .......................................................................................................... 14

21 C.F.R. § 201.61(b) ............................................................................................... 14, 15

21 C.F.R. § 299.4(a) ....................................................................................................... 15

21 C.F.R. § 299.4(b)(2) ................................................................................................... 16

21 C.F.R. § 356.55(a) ...................................................................................................... 14

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................... 6

## INTRODUCTION

Plaintiff Lacie Davis ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by Ricola USA Inc. ("Defendant") for Summary Judgment. ECF Nos. 34-35 Motion and Memorandum of Law in Support ("Def. Mem.").

## FACTUAL BACKGROUND

Plaintiff filed this action on May 8, 2022, asserting statutory and common law claims, on behalf of Illinois, Iowa, Ohio, Montana, Virginia, New Mexico, Arkansas, Maine, Wyoming, North Dakota, and Utah consumers who were misled by the Product's front label representations, including "Made With Swiss Alpine Herbs" and images of ten herbs, to believe that the Product's therapeutic effect was provided by herbal ingredients. ECF No. 1, Complaint ("Compl.") at ¶ 22.

Following Defendant's Motion to Dismiss, the Court permitted Plaintiff's Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") claim to proceed because she "plausibly allege[d] that a reasonable consumer would believe that Ricola lozenges are powered by 'Swiss Alpine Herbs' rather than ordinary menthol." *Davis v. Ricola USA, Inc.*, No. 22-cv-3071, 2022 WL 4131588, at *4 (C.D. Ill. Sept. 12, 2022).

On July 28, 2023, Plaintiff filed her Motion for Class Certification and Memorandum of Law in Support, accompanied by an expert report. ECF Nos. 23-2, 27-28. On November 17, 2023, Defendant filed a Motion for Summary Judgment. ECF No. 34.

As Defendant's Motion is based on a case theory contrary to what Plaintiff alleged misled her and reasonable consumers, and requires a selective reading of her deposition testimony, among other reasons, it should be denied.

## RESPONSE TO UNDISPUTED MATERIAL FACTS

A.    Undisputed Material Facts

1.        The active ingredient in the Product is menthol. (ECF No. 1 ("Compl."), ¶ 18.)

3.        The Drug Facts panel on the back of the Product's packaging discloses menthol as the active ingredient in the Product. (Compl., ¶ 19.)

4.        The Product functions as a cough suppressant and oral anesthetic due to the presence of the menthol in the Product, which menthol is an herbal ingredient. (Gafner Report, ¶¶ 7, 28-30, 34-35.)

5.        Peppermint is one of the herbs depicted on the front of the Product's label. (Compl., ¶ 2.)

B.    Disputed Material Facts

C.    Facts Relevant to Show The Claim is Preempted

Reason: Plaintiff's allegations are not preempted because "Menthol Lozenges" is "established name" and required to be on front label. 21 U.S.C. § 352(e)(3) and 21 C.F.R. § 299.4(b)(2) for products like Defendant's lozenges is "the official United States Pharmacopoeia." 21 U.S.C. § 358(b) ("Review of names in official compendiums").

16.        Ricola markets the Product under two FDA-approved monographs: The Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic Drug Products For Over-The-Counter Human Use Monograph M012: ("Cold/Cough Monograph") (21 C.F.R. pt. 341) and the Oral Health Care Drug Products for Over-the-Counter Human Use tentative final monograph ("Oral Anesthetic Monograph") (proposed 21 C.F.R. pt. 356) (53 Fed. Reg. 2436 (Jan. 27, 1988)).

C.     Undisputed Immaterial Facts

2.              The menthol in the Product is 100% herbal. (Henry Decl., Ex. 3 Expert Report

of Stefan Gafner, Ph.D. dated September 28, 2023 ("Gafner Report") ¶¶ 7, 28-

30, 34-35.)

Reason: That the menthol is "100% herbal" is a misleading fact because Plaintiff's allegations

are based on the label "not specifically saying that it has menthol. It is claiming that it is all

Swiss Alpine herbs." Davis Tr., 111:23-112:4 (referring to Product's efficacy). Further,  "even

literally true statements can have misleading implications." *Kraft, Inc. v. F.T.C.*, 970 F.2d 311,

322 (7th Cir. 1992).

6.              The menthol in the Product is obtained directly from mint, either from corn mint

(Mentha canadensis, syn. Mentha arvensis var. glabrata, Mentha arvensis var.

piperascens) or from peppermint (Mentha× piperita) (Gafner Report, ¶¶ 7, 28-30,

34-35.)

Reason: That the menthol is obtained only from corn mint is a misleading fact because "even

literally true statements can have misleading implications." *Kraft, Inc.*, 970 F.2d at 322.

7.              Plaintiff did not submit any expert report purporting to opine on the nature of the

menthol in the Product. (Henry Decl., ¶ 4.)

Reason: Plaintiff's allegations are not based on whether the menthol is natural or synthetic but

because "the Product's therapeutic effect is not provided by any of the herbs pictured on the

front label." Compl. ¶ 17.

8.              Plaintiff has no testing to support her allegation that the menthol in the Product

is synthetic. (Henry Decl., ¶ 4.)

Reason: Plaintiff's allegations are not based on whether the menthol is natural or synthetic but because "the Product's therapeutic effect is not provided by any of the herbs pictured on the front label." Compl. ¶ 17.

9.          Plaintiff did not submit any rebuttal expert report. (Henry Decl., ¶ 5.)

Reason: Plaintiff's allegations are not based on whether the menthol is natural or synthetic but because "the Product's therapeutic effect is not provided by any of the herbs pictured on the front label." Compl. ¶ 17.

12.         Plaintiff has admitted that she does not know whether the menthol in the Product is herbal or synthetic. (Henry Decl., Ex. 4, Davis Tr. 66:7-17; 90:21-91:13; 108:1-7.)

Reason: "it is well established that in complex actions a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance on the expertise of counsel is to be expected.'" *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 601 (N.D. Ill. 2009)

13.         Plaintiff did not submit any expert report opining as to the actual damages suffered by Plaintiff or the putative class. (Henry Decl., Ex. 2 ("Matthews Report") ¶¶ 165, 174-75, 188- 89; Ex. 5, Andrea Matthews, Ph.D. Deposition Transcript ("Matthews Tr.") 135:9-12, 140:15-25, 141:1-12.)

Reason: Plaintiff was not required to submit report establishing actual damages, because the Matthews Report "discusses his proposed conjoint analysis in detail, and it appears to be feasible and tied to plaintiffs' theory of liability that NUK pacifiers are not actually orthodontic or suitable for use by children who are older than 24 months, whereas defendants' criticisms of the

model are off base or asserted only superficially. *Benson v. Newell Brands, Inc.*, No. 19-cv-6836, 2021 WL 5321510, at *5 (N.D. Ill. Nov. 16, 2021).

B.          Facts Relevant to Show Lack of Intent

Reason: "Intent is not necessary to create a violation under the [ICFA]." *Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 600 N.E.2d 1218, 1227 (App. Ct. 1992).

14.          Plaintiff did not submit any expert report purporting to establish that Ricola intended that she rely on the alleged "misrepresentations" for information regarding the "herbal" qualities of the Product's active ingredients. (Henry Decl., ¶ 4.)

Reason: "Intent is not necessary to create a violation under the [ICFA]." *Roche*, 600 N.E.2d at 1227.

15.          Plaintiff has not identified any facts to support an allegation that Ricola intended that she rely on the alleged "misrepresentations" for information regarding the "herbal" qualities of the Product's active ingredients. (Henry Decl., ¶¶ 3, 8, Ex. 1.)

Reason: "Intent is not necessary to create a violation under the [ICFA]." *Roche*, 600 N.E.2d at 1227.

16          Ricola markets the Product under two FDA-approved monographs: The Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic Drug Products For Over-The-Counter Human Use Monograph M012: ("Cold/Cough Monograph") (21 C.F.R. pt. 341) and the Oral Health Care Drug Products for Over-the-Counter Human Use tentative final monograph ("Oral Anesthetic Monograph") (proposed 21 C.F.R. pt. 356) (53 Fed. Reg. 2436 (Jan. 27, 1988)).

Reason: Plaintiff does not dispute the relevance of these regulations.

17.        The active ingredient in the Product is menthol. (Compl., ¶ 18.)

Reason: Plaintiff does not dispute that menthol is the Product's active ingredient. Plaintiff's allegations under the ICFA are based on the fact "the herbs promoted on the front label are exclusively 'Inactive Ingredients.'" Compl. ¶ 20.

19.        The Cold/Cough Monograph and Oral Anesthetic Monograph do not distinguish between herbal menthol and synthetic menthol. See Cough/Cold Monograph at 21 C.F.R. § 341.14(b)(2); Oral Anesthetic Monograph at proposed 21 C.F.R. § 356.10(e).

Reason: Plaintiff's allegations are not based on whether the menthol is natural or synthetic but because "the Product's therapeutic effect is not provided by any of the herbs pictured on the front label." Compl. ¶ 17.

## LEGAL STANDARDS

A court should only grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

This standard requires a court "to view the facts and draw reasonable inferences in the light most favorable to the non-moving party." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022).

On summary judgment, a "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence." *Reid v.*

*Neighborhood Assistance Corp. of Am.*, 749 F.3d 581, 586 (7th Cir. 2014) (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005)).

The party seeking summary judgment must meet an "initial burden…to inform the district court why a trial is not necessary." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## ARGUMENT

## I.     SUMMARY JUDGMENT IS NOT WARRANTED ON THE ICFA CLAIM

To obtain summary judgment, "the admissible evidence considered as a whole [must] show[] there is no genuine issue as to any material fact and the movant is entitled judgment as a matter of law." *Metro. Cas. Ins. Co. v. Donnelly*, 158 F. Supp. 3d 734, 736 (S.D. Ill. 2016).

Therefore, Plaintiff "must[, and will,] make a showing sufficient to establish any essential element of [her] cause of action for which [she] will bear the burden of persuasion at trial." *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 873 (N.D. Ill. 2014) (quoting *Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997)).

Since Defendant's argument does not address the ICFA allegations, its Motion should be denied.

### A.     Menthol is Not an Herb

In seeking summary judgment, Defendant contends that "The undisputed facts [] demonstrate that the menthol in the Product comes solely from herbs." Def. Mem. at 8. In support, it includes over a hundred pages of documentation about how it sources its active ingredient of menthol.

According to the Oxford Dictionary, the definition of "herb" is "[a]pplied to plants of which the leaves, or stem and leaves, are used for food or medicine, or in some way for their scent

or flavor."[1]

Although each of the various whole plants depicted on the Product's front label can be considered an "herb" and thusly an "herbal ingredient," the same cannot be said for menthol, which is "a chemical naturally found in peppermint and other mint plants" that "can also be made in a lab."[2]

As menthol is a fraction of the peppermint and cornmint plants, it is false and misleading to assert this is an "herbal ingredient." This aligns with Plaintiff's expectations regarding the Product, as shown in the following exchange:

> Q      What makes a product more herbal in your opinion?
>
> A      More herbs, less chemicals, more green – greener process of things.
>
> Ex. A, Deposition Transcript of Plaintiff ("Davis Tr."), 125:8-10.

In other words, Plaintiff expected the ingredients on the front to provide the Product's therapeutic benefits.

B.      Front Label Representations were Materially Misleading to Plaintiff and Reasonable Consumers

Defendant's reliance on cherry-picked statements to assert that "Plaintiff concedes that if the menthol in the Product is in fact an herbal ingredient, the Product's label would not necessarily be misleading" is contrary to the facts and law and omits important context. Def. Mem. at 18. However, this distort Plaintiff's testimony and "not necessarily" misleading is not a defense to deception.

The Complaint and Plaintiff's Expert Report made clear that the Product's front label representations of "Made With Swiss Alpine Herbs" and images of various herbs, in conjunction

---

[1] https://www.oed.com/search/dictionary/?scope=Entries&q=herb
[2] https://www.lung.org/quit-smoking/smoking-facts/health-effects/what-is-menthol

with the absence of a clear identification of menthol as the active ingredient, were what attracted Plaintiff to the Product. Compl. at ¶¶ 17, 26; ECF No. 23-3, Declaration of Andrea Lynn Matthews ("Matthews Decl.") at ¶¶ 160-164. The Complaint even references four competitor herbal lozenges as examples of non-deceiving products due to their disclosure of "the presence of menthol on their front labels." Compl. at ¶ 26.

> This is further supported by Plaintiff's own testimony:

> Q       What is your problem with the Ricola product?

> A       That it is not specifically saying that it has menthol. It is claiming that it is all Swiss Alpine herbs.

> Q       But if you had read the entire package, you would have known what the ingredients were, correct?

> A       Yeah, but first glance…I'm going to look at that and go, oh, Swiss Alpine herbs, that's going to be more herbal and earthy . . .

> But with [] labeling [disclosing menthol] I don't feel like I'm paying more for something that doesn't have menthol in it . . .

> I could buy these brands about half the price of [the Product]. So, therefore, I'm paying more for Ricola because I'm thinking that it is better for me.

> Davis Tr., 111:23-112:4; 112:8-10; 112:18-24.

Plaintiff further testified: "It's stating here that these are Swiss Alpine herbs. I'm taking Ricola's word that that is inside the package, that that is what's going to help my cough, not that it's menthol that's helping my cough." Davis Tr., 120:20-120:24.

By omitting from the Product's front label that the Product's therapeutic effects are derived from menthol as the active ingredient, Defendant misled Plaintiff into falsely believing that the "group of all of those" herbs depicted on the front label of the Product was instead the active ingredients responsible for the Product's therapeutic effects. Davis Tr., 130:6.

C.     Peppermint is Not Source of Active Ingredient of Menthol

Notwithstanding that Plaintiff's allegations are not based on whether the Product contains fractions of herbal ingredients, its assertion that "peppermint, which is depicted on the front of the Product's label, is a contributing source for the menthol in the Product which provides the therapeutic effect," is false. Def. Mem. at 18 citing UMF 5-6.

However, the "peppermint herb pictured on the front label" does not supply any of the Product's menthol, contrary to Defendant's documents. Def. Mem. at 18 citing UMF No. 7-10.

While Defendant asserts "The menthol in the Product is obtained directly from mint, either from corn mint (*Mentha canadensis*, syn. *Mentha arvensis var. glabrata, Mentha arvensis var. piperascens*) or from peppermint (*Mentha× piperita*)," its documents reveal that the menthol "manufactured and supplied by Sharp Mint Limited is [] extracted from herb *Mentha Arvensis*." Def. Mem. at 9 citing Gafner Report, ¶¶ 7, 28-30, 34-35 *compare with* RICOLA0000030 (Declaration of Dr. Kamal Kumar, Head, Quality Assurance, Sharp Mint Ltd).

As pointed out by the Gafner Report, *Mentha arvensis* refers to corn mint, while peppermint is *Mentha × piperita*. Gafner Report, ¶ 7. Even the Gafner Report acknowledges that that the Product's "natural menthol crystals are produced from corn mint essential oil," not peppermint. Gafner Report ¶ 28 ("A statement confirming the natural origin of the menthol crystals has been provided by the supplier (RICOLA0000029, RICOLA0000030).")

Nowhere on the front label identified in the Complaint was cornmint identified as one of the "Swiss Alpine Herbs." Compl. ¶¶ 1-2 (noting front label "pictures of peppermint, elder, wild thyme, horehound, hyssop, mallow, sage, linden flowers, lemon balm and thyme").

D.     Menthol Used Comes from ███████████

Not only were Plaintiff and reasonable consumers misled into believing herbal ingredients were responsible for the Product's therapeutic effects, but they were also misled into believing that

10

the purported herb ingredients of the Product were of Swiss origin. As confirmed by Defendant's

discovery, the menthol in the Product was manufactured in ███████████████████

E.     Literal Truth of Menthol Being Derived from Mint Plants Insufficient to Overcome
       Claim of Deception

In purchasing the Product, Plaintiff relied on the "front label representations including

'Cough Suppressant,' 'Oral Anesthetic,' 'Effective Relief,' 'Made With Swiss Alpine Herbs,' and

pictures of ten herbs" to believe that the Product's therapeutic effect was provided by the "herbs

pictured on the front label." Compl. at ¶ 17. However, "the herbs promoted on the front label are

exclusively 'Inactive Ingredients'" such that they do not "provide a pharmacological or direct

effect in the mitigation or treatment of any condition." *Id.* at ¶¶ 19-20. Instead, menthol is listed as

the Product's only active ingredient.

Defendant now asserts that "the menthol in the Product is herbal" as it "is 100% derived

from the herbs *mentha arvensis* and *mentha × piperita*[,]" Def. Mem. at 13.

However, even assuming the "Made With Swiss Alpine Herbs" representation was

accurate by Defendant's own standards, such "literally true claims may deceive" where, as here

"[they] [] have misleading implications." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 479

(7th Cir. 2020); *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 322 (7th Cir. 1992).

What distinguished the Ricola "Made With Swiss Alpine Herbs" lozenges from its lower

priced competitors was that "it is not specifically saying that it has menthol. It is claiming that it

is all Swiss Alpine herbs." Davis Tr. 111:24-112:1.

That menthol may come from herbal ingredients is of no significance because this applied

to the "Competitor herbal lozenges from Meijer, Target, Dollar General, and Walmart." Compl. ¶

26.

All four disclose menthol on their front labels, while Meijer and Up&Up "tell you that there is such and such percentage of the menthol…that's in it," confirmed by "4.8 mg Menthol Per Drop" statements on packaging of competitors. Davis Tr. ; Compl. ¶ 26 (

That menthol's omission from the Product's front label that menthol misled Plaintiff and reasonable consumers into believing that the Product held a competitive edge to comparable products that clearly disclose the presence of menthol on their front label, as shown by the following exchange:

> A    But, then again, they also, at least the ones that I have seen, tell you that there is such and such percentage of the menthol or echinacea or ginseng or whatever other herb that's in it.
>
> Q    So you'll purchase products that contain menthol even though you have a preference for herbal ingredients because those products are herbal products?
>
> A    Sadly, they're cheaper, they're quicker . . . but I wouldn't pay more for the same type of product than something that I though was more herbal or more green, if that makes sense.

Davis Tr., 124:19-125:2; 125:5-7.

F.    <u>Failure to Disclose Menthol Was Material to Plaintiff and Consumers</u>

By definition, "[a] material fact exists where a buyer would have acted differently knowing the information," and Plaintiff has shown that "[w]hen shown an edited version of the label that included the statement, '4.8mg of menthol per drop,' the percent of customers who believed that the product's health benefits came only from herbal ingredients was significantly reduced ($p<.05$)." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 595 (1996); ECF No. 23-3, Matthews Decl. at ¶ 162.

Plaintiff is part of this group, having testified that she now purchases the cough drops of Defendant's competitors and has "never purchased a Ricola product since the filing of the Complaint in May of 2022." Davis Tr., 30:7-15.

This is consistent with Plaintiff's Expert Report, which determined that "55.9% of the sample (95/170 individuals) indicated that they would prefer to purchase cough drops that used herbal ingredients to provide cough suppressant and oral anesthetic benefits." ECF No. 23-3, Matthews Decl. at ¶ 65.

When the expert evidence and Plaintiff's testimony on the significance of the failure to disclose the presence of menthol is "viewed in a light most favorable to Plaintiff, [there] is not a sufficient basis to dismiss [her] claim[s] on summary judgment." *Zarinebaf v. Champion Petfoods USA Inc.*, No. 18-cv-6951, 2022 WL 980832, at *11 (N.D. Ill. Mar. 31, 2022).

G.  Damages Can and Will Be Established

Defendant asserts that Plaintiff "has failed to offer any viable damages model to support" that "she or the putative class overpaid for the Product because of the representations on the label." Def. Mem. at 22-23.

However, Plaintiff has gone beyond what the ICFA requires in "alleg[ing] actual damages in the form of specific economic injuries," and has identified "conjoint analysis" and "hedonic pricing" as tools capable of measuring the value of the "Made With Swiss Alpine Herbs" and images of herbs marketing attributes as a part of the total retail price of the Product. *Morris v. Harvey Cycle and Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009); ECF No. 23-3, Matthews Decl. at ¶¶ 165-189.

Such "[P]rice-premium damages calculations based on conjoint analysis designed to isolate the portion of the payment attributable to a misrepresented product feature have been accepted by several courts" in this Circuit. *Benson v. Newell Brands, Inc.*, No. 19-cv-6836, 2021 WL 5321510, at *5 (N.D. Ill. Nov. 16, 2021).

Furthermore, "[a] damages calculation that reflects the difference between the market price of the product as represented and as delivered is neither novel nor problematic from a class

certification perspective." *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *57 (N.D. Ill. Mar. 31, 2017).

This exercise is "as simple as computing the difference between the cost of the second best product in the product class (without a deceiving label) and the cost of the [P]roduct at issue (with the [challenged] label)."*Mednick v. Precor, Inc.*, 320 F.R.D. 140, 156 (N.D. Ill. 2017).

## II.   "MENTHOL" IS PART OF THE PRODUCT'S REQUIRED "ESTABLISHED NAME"

In asserting that the Product's labeling complies with relevant FDA requirements, Defendant reasserts the obfuscatory and misleading arguments it raised in its Motion to Dismiss. Def. Mem. at 25.

While it is true that relevant regulations "require[] that the Product [] be labeled with the statement(s) of identity 'Cough Suppressant' and/or 'Oral Anesthetic' on the principal display panel," Defendant ignores that "statement of identity" has two parts. Def. Mem. at 25 citing §§ M012.70(b), M012.74, 21 C.F.R. § 356.55(a) and 21 C.F.R. § 201.61.

The first part is "the established name of the drug, if any there be," which Defendant omits, yet includes "an accurate statement of [its] general pharmacological category" through the statement of "'Cough Suppressant' and/or 'Oral Anesthetic.'" 21 C.F.R. § 201.61(b).

By citing 21 C.F.R. § 201.61 generally, Defendant fails to inform the Court that an OTC product's "statement of identity shall be in terms of the established name of the drug, if any there be, followed by an accurate statement of [its] general pharmacological category." 21 C.F.R. § 201.61(b).

Plaintiff never asserted that the Product cannot be labeled as a "'Cough Suppressant' and/or 'Oral Anesthetic' on the principal display panel," only that its failure to "disclos[e] the presence of menthol on [its] front label[s], i.e., '4.8 mg Menthol Per Drop' and 'Menthol Cough

14

Suppressant,'" like its competitors, was false and misleading. Compl. ¶ 26.

Nowhere on its front label does Defendant include "the established name of the drug, if any," which is what the law requires and consistent with the marketing of competitor lozenges based on menthol. 21 C.F.R. § 201.61(b).

Defendant is correct that the "Complaint vaguely references a September 2022 draft FDA guidance document," but is incorrect in asserting this document "contains a recommendation that products list the 'Established Name' of an active ingredient near disclosures of strength." Def. Mem. at 27 n. 4 citing Compl. ¶ 20; *see* FDA Draft Guidance for Industry, entitled, "Statement of Identity and Strength – Content and Format of Labeling for Human Nonprescription Drug Products." ("Draft Guidance, Statement of Identity").[3]

That this Draft Guidance, like from any agency, is "non-binding," is of no relevance, because it does not advance any novel interpretation of law or introduce new law. Def. Mem. at 27 n. 4.

Instead, it reaffirms and reminds companies of the long-existing requirement that an OTC product's "statement of identity shall be in terms of the established name of the drug, if any there be, followed by an accurate statement of the general pharmacological category." Draft Guidance, Statement of Identity at 5, Section III citing 21 C.F.R. § 201.61(b).

A product's "established name is defined in [21 U.S.C. § 352(e)(3)] as an official name designated pursuant to [21 U.S.C. § 358]." Draft Guidance, Statement of Identity at 6, Section III; *see also* 21 C.F.R. § 299.4(a) (affirming requirement of 21 U.S.C. § 352(e)(1)(A)(i), which "prescribes that the labeling of a drug must bear its established name, if there is one").

This "[G]uidance[] describe[d] the [FDA]'s current thinking on [this] topic and should be

---

[3] Center for Drug Evaluation and Research (CDER), <u>Statement of Identity and Strength — Content and Format of Labeling for Human Nonprescription Drug Products</u>, Sept. 2022.

viewed only as recommendations, unless specific regulatory or statutory requirements are cited," which it does by pointing out 21 U.S.C. §§ 352(e)(3) and 358. Draft Guidance, Statement of Identity at 4, Introduction.

However, because Defendant's lozenges lack an "official name designated pursuant to [21 U.S.C. §] 358," the inquiry turns to whether "such drug, or such ingredient, is an article recognized in an official compendium, [in which case its name is]…the official title thereof in such compendium." 21 U.S.C. § 352(e)(3)(A)-(B); *see* 21 C.F.R. § 299.4(b)(2) ("if no such official name has been designated for the drug and the drug is an article recognized in an official compendium, then the official title thereof in such compendium").

The "official compendium" referred to in 21 U.S.C. § 352(e)(3) and 21 C.F.R. § 299.4(b)(2) for products like Defendant's lozenges is "the official United States Pharmacopoeia." 21 U.S.C. § 358(b) ("Review of names in official compendiums").

Since the "[FDA] will not routinely designate official names under [21 U.S.C. § 358] [] the established name under [21 U.S.C. § 352(e)] will ordinarily be either the compendial name of the drug or, if there is no compendial name, the common and usual name of the drug." 21 C.F.R. § 299.4(e) *compare with* Draft Guidance, Statement of Identity at 6 ("the established name of a drug product will ordinarily be the USP drug product monograph title for that drug product.").

In both scenarios, the Product's "established name" is "menthol lozenges." First, because "the current compendial name or the USAN adopted name listed in USAN and the USP Dictionary of Drug Names" is "menthol lozenges," the Court may rely on this as the Product's "established name." 21 C.F.R. § 299.4(e). This is confirmed by the applicable USP Monograph for Menthol Lozenges. Exhibit "A."[4]

---

[4] https://doi.usp.org/USPNF/USPNF_M48535_01_01.html

Second, even in the absence of the USP Monograph, the Product's name of "menthol lozenges" would be its "established name" based on the "General Nomenclature Practices" of the USP-NF's Nomenclature and Labeling Expert Committee. Exhibit "B," Nomenclature Guidelines.

The "Lozenge Nomenclature" is:

**[DRUG] Lozenges** (Clotrimazole Lozenges)

"Clotrimazole" is in the "imidazole class of drugs."[5] When this naming convention is applied to Defendant's Product, the result is "menthol lozenges," which appears on the labeling of competitor products, because it is its "established name."

Defendant's reliance on OTC Monograph M012 is of no assistance to its preemption argument, because it requires the labeling of "products containing menthol identified in § M012.14(b)(2) and § M022.12(f) of OTC Monograph M022…[to] contain[s] the established name of the drug, if any, and identif[y] [it] [] as a 'cough suppressant/oral anesthetic' or 'antitussive (cough suppressant)/oral anesthetic.'" Def. Mem. at 25 citing § M012.70(b).

Similarly, the "Labeling of antitussive drug products" requires the statement of identity to "contain[] the established name of the drug, if any, and identif[y] [it] [] as a 'cough suppressant' or an 'antitussive (cough suppressant).'" Def. Mem. at 25 citing § M012.74(a).

## III.  NO PREEMPTION BECAUSE "MENTHOL LOZENGE" ALREADY REQUIRED ON FRONT LABEL

Defendant's attempt to create a "conflict" between what federal and state law require for its labeling is illusory. Def. Mem. at 25 citing *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).

Contrary to Defendant's argument, Plaintiff's claims do not seek to "impose[] requirements

---

[5] Khatter NJ, Khan MAB. Clotrimazole. [Updated 2023 Jul 10]. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; 2023 Jan-. Available from: https://www.ncbi.nlm.nih.gov/books/NBK560643/

that are different from, additional to, or otherwise not identical with, the requirements of the [F]FDCA." Def. Mem. at 25 citing 21 U.S.C. §379r(a)(2) and 27.

Unlike the plaintiff in *Turek*, who sought to impose a "disclaimer" of "'non-natural' fiber" on added inulin, which was "not identical to the labeling requirements imposed on such products by federal law, and so [was] barred," Defendant is already required to identify the Product's "established name" of "menthol lozenges" on its front label. Def. Mem. at 24 citing *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).

Nor is Plaintiff seeking to "enforce" the FFDCA or the Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620 *et seq.*, which adopted all "federal regulations [] adopted pursuant to [the FFDCA]." 410 ILCS 620/21(j).

Plaintiff's allegations reside in a "narrow gap…[that] escape[s] express or implied preemption" because she is "suing for conduct that violates the [FFDCA]…[and] not because the conduct violates the [FFDCA]." *Bausch v. Stryker Corp.*, 630 F.3d 546, 557-58 (7th Cir. 2010) (finding no preemption in former scenario as opposed to the latter).

Like in *Bausch*, Plaintiff has asserted "tort law claims" which are the type of "misrepresentation or [] omission of [] material facts" which would be actionable in the absence of the FFDCA, and what the ICFA was designed to prevent. *Bausch*, 630 F.3d at 557; *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 742 (N.D. Ill. 2019); *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911 (N.D. Ill. 2011) citing 815 ILCS 505/2.

## IV.   SUMMARY JUDGMENT IS NOT WARRANTED ON THE UNJUST ENRICHMENT CLAIM

As Plaintiff's unjust enrichment claim is premised on the same factual allegations as her ICFA claim, Defendant asserts that Plaintiff's unjust enrichment claim fails as "Plaintiff has failed to put forward admissible evidence to support the[] elements" of "her ICFA and unjust enrichment

claims." Def. Mem. at 16-17 citing ECF No. 11, pp. 20-21 ("Under Illinois law, plaintiffs' request for relief based on unjust enrichment is not a standalone claim; rather, it is tied to the fate of their claim for statutory fraud.").

However, because Plaintiff has shown how the elements of her ICFA claim are satisfied, a contrary conclusion is required.

## CONCLUSION

The Court need not "scour the record in search of evidence to defeat [Defendant's] motion for summary judgment," because Plaintiff has "identif[ied] the evidence upon which [s]he relies," to show "genuine issue[s] of material fact exist[]," including how she and consumers were misled as a result of failing to truthfully disclose the presence of menthol on the front label, contrary to how the ICFA "sh[ould] be liberally construed to effect [its] purposes." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008); 815 ILCS 505/11a.

For the foregoing reasons, the Court should deny Defendant's Motion.

Dated:      December 9, 2023

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

**Certificate of Service**

I certify that on December 9, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan