EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Veronica Shirley, individually and on behalf of all others similarly situated, | 1:22-cv-00278 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Reynolds Consumer Products LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Reynolds Consumer Products LLC ("Defendant") manufactures, labels, markets, and sells aluminum foil stating, "FOIL MADE in U.S.A. * * *," under the Reynolds Wrap brand (the "Product").





2. American consumers value buying products which are made in America.

3. The Federal Trade Commission ("FTC") defines "Made in the United States," and its synonyms, such as "Made in U.S.A.," to mean any unqualified representation, express or implied, that a product, and by extension, the raw materials used in its manufacture, are of U.S. origin. 16 C.F.R. § 323.1(a).

4. Companies that use unqualified claims that a product is "Made in U.S.A." can mislead consumers when raw materials used in those products are sourced and/or transformed outside of the United States.

5. Studies show that more than half of consumers are misled by unqualified "Made in U.S.A." claims on products which contains components or natural resources that originate outside the United States.

6. The raw material for aluminum foil is bauxite, the only commercial ore of aluminum.

7. Until World War II, the U.S. and France were the world's major suppliers of bauxite, as well as the world's major producers of aluminum.

8. Since 1981, none of the bauxite mined in the US was used for aluminum.

9. In 2013, the US mined 1.3 percent of the bauxite it used, less than 0.1 percent of world production.

10. US-mined bauxite is used for abrasives, high-temperature refractory materials, and as a high-strength proppant for hydraulic fracturing of oil and gas wells.

11. The largest suppliers of bauxite for aluminum include Australia, Guinea, India, Brazil, Jamaica and Vietnam.

12. Through its representation, "FOIL MADE IN U.S.A. * * *," consumers will expect that all raw materials used in the foil are sourced from within the United States.

13.     The three stars reinforce the "Made in U.S.A." claim because stars are uniquely associated with the United States, seen through its flag.

14.     Without bauxite sourced from outside the United States, it would be impossible to produce the foil.

15.     The FTC considers it a deceptive practice to label a product as Made in the United States unless (1) the final assembly or processing of the product occurs in the United States, (2) all significant processing that goes into the product occurs in the United States, and (3) all or virtually all ingredients or components of the product are made and sourced in the United States. 16 C.F.R. § 323.2.

16.     Assuming that all the processing of the bauxite into foil occurs in the United States, none or virtually none of the raw materials and components used in the Product are sourced in this country.

17.     To the extent that bauxite is substantially transformed in the United States, Defendant's claim is not qualified to avoid consumer deception about the presence or amount of foreign bauxite used in the Product.

18.     Defendant attempts to qualify the claim by purporting to limit its applicability to the "[F]oil," that the "*Foil* [is] Made in U.S.A."

19.     This is insufficient to qualify the "Made in U.S.A." claim because consumers are not familiar with the sources of bauxite.

20.     Reasonable consumers do not understand Defendant's claim to refer only to the transformation of bauxite into aluminum foil.

21.     While Defendant processes and transforms bauxite into aluminum foil in the United States, using American workers, the claim does not state this.

22.　The Product contains and makes other representations and omissions which are false or misleading.

23.　Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

24.　The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

25.　Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

26.　Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

27.　The Product is sold for a price premium compared to other similar products, for no less than $4.99 per 75 square feet, excluding tax or any sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

28.　Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29.　The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

30.　Plaintiff Veronica Shirley is a citizen of Illinois.

31.　Defendant Reynolds Consumer Products LLC is a Delaware limited liability company with a principal place of business in Lake Forest, Lake County, Illinois and upon information and belief, at least one member of defendant is not a citizen of the same state as the

plaintiff.

32. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

33. Defendant transacts business within this District through sale of the Product to residents of this District and is headquartered in this District.

34. The Product is available to consumers in this District from third-parties, which includes grocery stores, warehouse club stores, drug stores, convenience stores, big box stores, and online

35. Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, i.e., Plaintiff's purchase and use of the Product and awareness and/or experiences of and with the issues described here.

Parties

36. Plaintiff Veronica Shirley is a citizen of Chicago, Cook County, Illinois.

37. Defendant Reynolds Consumer Products LLC is a Delaware limited liability company with a principal place of business in Lake Forest, Illinois, Lake County.

38. Defendant is one of the oldest producers of aluminum products in the world.

39. Defendant was instrumental in helping the United States achieve victory in the Second World War, through its commitment to converting bauxite into military equipment, used to defeat the Axis powers.

40. For these, and other reasons, Defendant's packaging truthfully states that "Reynolds Wrap [is] TRUSTED SINCE 1947."

41. Defendant's aluminum foil is a staple of Americana, with a variety of uses beyond wrapping up food.

5

42. The Product is available to consumers in this District from third-parties, which includes grocery stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

43. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Walmart, at locations including 7050 S Cicero Ave Bedford Park IL 60638-6402 between November 2021 and January 2022, among other times.

44. Plaintiff believed the Product was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country.

45. Plaintiff bought the Product because she expected it was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country because that is what the representations said and implied.

46. Plaintiff relied on the words, layout, packaging, and/or images on the Product, on the labeling, statements, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

47. Plaintiff is one of the many Americans who seeks to buy American and understands "Made in U.S.A." without qualifications to mean all or virtually all of a product, including its raw materials, were made in, and sourced, from the United States.

48. Plaintiff did not expect a product, especially from the Reynolds brand, would promise it was "Made in U.S.A." even though all of the raw materials used were from outside of the United States.

49. Plaintiff trusted the Reynolds Wrap brand, because it is the equivalent of Kleenex

(facial tissues) and Vaseline (petroleum jelly) in terms of its identity and position in its product category.

50.   Plaintiff was disappointed because she believed the Product was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country.

51.   Plaintiff bought the Product at or exceeding the above-referenced price.

52.   Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

53.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

54.   The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

55.   Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

56.   Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar aluminum products, because she is unsure whether those representations are truthful.

### Class Allegations

57.   Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of an:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and a

> **Consumer Fraud Multi-State Class**: All persons in the States of Iowa, New Hampshire, New Mexico, Georgia, Michigan, Texas, Arkansas, Delaware,

Wyoming, Virginia and Oklahoma, who purchased
the Product during the statutes of limitations for each
cause of action alleged.

58.    Common questions of law or fact predominate and include whether defendant's

representations were and are misleading and if Plaintiff and class members are entitled to damages.

59.    Plaintiff's claims and basis for relief are typical to other members because all were

subjected to the same unfair and deceptive representations and actions.

60.    Plaintiff is an adequate representative because her interests do not conflict with other

members.

61.    No individual inquiry is necessary since the focus is only on Defendant's practices

and the class is definable and ascertainable.

62.    Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

63.    Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

64.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

65.    Plaintiff incorporates by reference all preceding paragraphs.

66.    Plaintiff and class members desired to purchase a product that was made in the

U.S.A., understood to mean not only were the raw materials for the Product converted and

transformed in the U.S.A., but the raw materials were sourced within this country.

67.    Defendant's false and deceptive representations and omissions are material in that

they are likely to influence consumer purchasing decisions.

68.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

69.     Plaintiff relied on the representations that the Product was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country.

70.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

71.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

72.     Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

73.     As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

74.     In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breach of Contract

75.     Plaintiff entered into a contract with Defendant for purchase of the Product

76.     The terms of the contract provided that the Product was made in the U.S.A.,

9

understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country.

77.　Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

78.　Plaintiff was damaged by the breach, and those damages include the purchase price.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

79.　The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country.

80.　Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

81.　Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

82.　Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country.

83.　Defendant's representations affirmed and promised that the Product was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country.

10

84.     Defendant described the Product as one which was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

85.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

86.     This duty is based on Defendant's outsized role in the market for this type of Product, a trusted brand since 1947, a staple of American pantries, from a company which helped to preserve American freedom

87.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

88.     Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

89.     Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

90.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

91.     The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

92.     The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

93.     The Product was not merchantable because Defendant had reason to know the

particular purpose for which the Product was bought by Plaintiff, because she expected it was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

94.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

95.     Defendant had a duty to truthfully represent the Product, which it breached.

96.     This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand since 1947, a staple of American pantries, from a company which helped to preserve American freedom.

97.     Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated its extra-labeling promises and commitments to quality, transparency and putting customers first.

98.     These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

99.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

100.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

101.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

102.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country.

103.  Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity of the representations.

104.  Defendant knew of the issues described here yet did not address them.

105.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

106.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

13

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:    January 17, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com