EXHIBIT F

United States District Court
Eastern District of New York

1:17-cv-5191(ARR)(MRL)

| |
|---|
| Josh Davis, individually and on behalf of all others similarly situated, |
| Plaintiff, |
| - against - |
| The Hain Celestial Group, Inc. and Hain Blueprint, Inc., |
| Defendants |

First Amended Complaint

Plaintiff Josh Davis ("plaintiff") individually and on behalf of all others similarly situated, by

attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff,

which are based on personal knowledge:

1. The Hain Celestial Group, Inc. ("defendant Hain") and Hain Blueprint, Inc.

("defendant Hain BluePrint") (collectively, "defendants" or "Blueprint") manufacture and

sell a variety of beverage products under the "BluePrint" brand name.

2. The relevant products are included in multiple product lines, including but

not limited to those designated "BluePrint Cold Pressed" and "BluePrint Organic."

3. The Products are 10, twelve (12) and sixteen (16) ounces fruit and/or

vegetable juice sold in brick-and-mortar stores and online, by defendants and third-parties.[1]

4. The relevant representations may appear across both product lines and

include:

- Cold Pressed Juice or Cold Pressed Juice Beverage on the principal display panel

- Raw, Raw Fruit & Vegetable Drink, Raw Juice, 100% Raw

---

[1] "Products" shall refer to the products which comprise the BluePrint Cold Pressed Juice product line and the BluePrint Organic product line. Otherwise, the designations will be to either the BluePrint Cold Pressed Juice products or the BluePrint Organic products.

1

- Citrus juices indicated as cold-pressed

- Predominance of ingredients

5.      The following 16-ounce products are misrepresented as cold pressed juice, raw and implied to be "fresh" in part through the term "Manifreshto":[2]

     i.    Beet Apple Carrot Lemon Ginger
    ii.    Carrot Golden Beet Orange Ginger Lemon
   iii.    Pineapple Apple Mint
   iv.    Chard Basil Apple Romaine Celery Cucumber Collards Lemon
    v.    Arugula Kale Apple Romaine Celery Cucumber Lemon Ginger
   vi.    Apple Lemon Cayenne Ginger
  vii.    Lime Ginger Lemon Agave

6.      The below representation of the front label is similar or identical to the other products and differs with respect to the ingredients used.

Carrot



---

[2] Defendants may discontinue offering some products and regularly introduces new products that are also falsely and misleadingly labeled in the manner described here based on availability of fruits and vegetables. Defendant may also market and sell additional substantially similar products of which Plaintiffs are unaware. Plaintiffs will ascertain the identity of any such additional products as discovery progresses, and they reserve the right to amend the list of products at issue as necessary.

2

7. The following are misrepresented as to the predominant ingredient:

    i. Beet Apple Carrot Lemon Ginger
    ii. Chard Basil Apple Romaine Celery Cucumber Collards Lemon
    iii. Arugula Kale Apple Romaine Celery Cucumber Lemon Ginger

8. Of the BluePrint Organic 12-ounce products, the following are misrepresented as being made with "cold pressed juice":

    i. Lime Lifter
    ii. Lemon Yay

9. Defendants' Products are made through multiple steps, the first which is "cold-pressing" of the individual ingredients.[3]

10. Cold-pressing is a preferred method of obtaining juice vis-à-vis the traditional centrifugal machine (blender) for the reasons below:

| | Centrifugal | Cold-Pressed |
|---|---|---|
| Method | Spinning blades in loud blender quickly produces juice | Fruits and vegetables are grinded into pulp, which is deposited in a mesh bag. Up to 14,000 pounds of pressure are slowly applied to bag to express the liquid from the pulp |
| Nutrients | Heat produced by the spinning blades has a detrimental effect on the enzymatic and nutritional content of the final product | More enzymes, biological activity, vitamins and nutrients because the juice is slowly expressed instead of sliced up and blended |
| Leafy Greens | Thin blades inefficient at handling leafy greens | Grinding and pressing easily handles leafy greens |
| Taste/Texture | Grittier inconsistent taste and texture with more pulp | Smoother and cleaner taste, less pulp, crisper |
| Structure | Higher water content contributes to rapid deterioration | Juice is more evenly made with less separation |
| Shelf-life | Several hours | 3-5 days |
| Cost | Affordable for home use | Expensive |

---

[3] Cold-pressing is in quotes only because the pressing does not inject any cold air or lower temperatures. The cold is used to distinguish the mechanism from centrifugally produced juice.

Result of Leafy
Greens as
Ingredients




11.     The term "cold-press" is another term for a traditional masticating juice press

12.     The emergence of the cold-pressed juice market has shown consumers are seeking different kinds of juice products, which are:

- Typically sold in specialized, stand-alone stores, directly to consumers as opposed to being sold by third-party vendors (i.e., grocery stores)

- Cost c. $10-$12 per 12 ounces

- Several pounds of produce for ingredients

- Either made on site or at local facility

- No processing step

- Absence of added sugars and preservatives

- Emphasis on non-traditional juice ingredients like kale and spinach

13.     Cold-pressed juice is difficult to sell on a wide scale because

- Short shelf-life of 3-5 days

- difficulty in predicting supply and demand results in lots of discarded product

- impracticability of even overnight shipping for such a highly perishable product

14. Products represented as cold-pressed juice have a positive association among consumers, who are willing to pay a premium price for a designation.

15. To avoid discarding juice products and to reach a larger market, defendants subject their products to high pressure processing.

16. Nevertheless, defendants cannot immediately blend only the cold pressed ingredients and submit them to high pressure processing due to the nature of the food.

17. Many of defendants' products are based on and/or contain ingredients with pH levels above 4.6:

| Ingredient | Approximate pH |
| --- | --- |
| Carrots | 5.88 - 6.40 |
| Romain Lettuce | 5.78 - 6.06 |
| Beets (Red and Golden) | 5.30 - 6.60 |
| Celery | 5.70 - 6.00 |
| Chard | 6.20 - 6.80 |
| Arugula | 6.00 - 7.00 |
| Basil | 5.50-6.50 |
| Collards | 6.50-6.80 |
| Cucumbers | 5.10-5.70 |
| Kale | 6.40-6.80 |

18. FDA regulations require low-acid foods (defined as those with pH greater than 4.6) to undergo thermal processing because bacterial spores in low-acid products cannot be inactivated through increased pressure alone.

19. To avoid the requirement of thermal processing, the products are acidified through the addition of lemon juice, which has a pH range from 2.0-2.6 and is commonly used as an acidifying agent in the food industry.

20.     Once the total pH is below 4.6, the products can be processed in a more flexible manner.

21.     All the Products (except for Pineapple Apple Mint) contain lemon juice, indicated on the front label and on the ingredient list as "organic juice from: organic lemon(s)" ("lemon juice").[5]

Arugula Front Label                Arugula Ingredient List

    

22.     Because the ingredient list declares "lemon juice" without modifying words (i.e., from concentrate), the lemon juice is not from concentrate ("NFC").

23.     Citrus juices are not obtained through a cold-press in the same way juice from pome fruit (apples, pears) or stone fruit (peaches, plums) because:

- the outer skin or epicarp of citrus is a composite structure with flavoring substances

- direct pressing would result in imprecise quantities of peel, peel oil

---

[5] Other products identify the ingredient as "organic lemon juice."

6

- lemon juice processing depends upon capturing the juice, peel and peel oil.

24. Due to these issues, extraction machines developed to cleanly separate the juice, peel and peel oil.

25. The raw juice exiting the extractors is collected in a surge tank, which maintains a constant flow of juice. The juice is prone to rapid microbial, enzymatic, and oxidative deterioration, so it is chilled to 8–10°C or less as soon as possible.

26. Rapid chilling is achieved by pumping the juice through a heat exchanger against mechanically refrigerated water or brine.

27. The juice contains an excessive quantity of suspended solids - pulp juice sacs, membranes, and residual pieces of peel that would impair the flavor, color, and cloud stability of the juice if not removed.

28. The methods used to separate the suspended solids include screening, filtration, centrifugation and hydrocyclones.

29. During process, the juice is exposed to air, which causes vitamin C oxidation, non-enzymatic browning, degradation of aroma compounds, and induction of off-flavor. To prevent this, the juice undergoes deaeration/deoiling.

30. Stabilization is carried out through thermal pasteurization according to standard industrial protocols to inactivate enzymes (mainly pectin methylesterase or PME) and destroy pathogenic and spoilage-causing microorganisms.

31. Since the Products contain NFC lemon juice, the thermal treatment is less intensive than if it contained lemon juice from concentrate.

32. The flavonoids naringin and limonin cause the lemon juice to become bitter, which is minimized through debittering techniques such as adsorption onto cellulose resins.

33.     The final production step is the aseptic storage of the lemon juice.

34.     It is probable that defendants use lemon juice from third-parties because:

- labor intensive and unprofitable to have personnel manually peeling lemons

- Lemon juice has a standard of identity which requires:

    → when sealed at room temperature, it must either possess preservatives or be
       processed by heat

    → extracted from lemons

- Lemon processing operation obtains juice, peel and peel oil from the lemons,
  something a cold-press facility is not intended to do

- special equipment and expertise required to produce citrus products

- various grades of lemon juice established by USDA – not mandatory, but
  correspond to levels of quality to facilitate distribution among food manufacturers

- largest companies in the premium juice sector (cold pressing followed by high
  pressure) add lemon juice obtained from third parties, such as United Juice
  Companies and Perricone Farms

35.     Once the lemon juice is blended with the other cold-pressed juices and the
pH is lower than 4.6, the juice is bottled, sealed, then processed with high pressure. up to
87,000 pounds per square inch ("psi").

36.     The high pressure causes a compositional change to the Products in protein
denaturation, inhibition and reduction of enzymatic and microbial activities that existed prior
to the processing step, extending shelf life from 3-5 days to 6 weeks.

<u>Reasons Why Representations are Misleading</u>

37.     The representations are misleading by identifying and describing the products

as "cold-pressed juice," "raw" and "100% raw" as indicated below.

| Front Label | Panel Labels |
| :---: | :---: |

















38.     The products identified as "Cold Pressed Juice" are named differently than

competitor's similarly manufactured products, which promote "cold-pressed" as a feature or

attribute of said products, instead of defining them as such, rendering defendants' labels

misleading and deceptive by implication as shown below.

| **BluePrint** | **Bolthouse Farms (Owned by Campbell's Soup)** | **Evolution (Owned by Starbucks)** |

  

39.    This is misleading by implication because reasonable consumers see a higher price (defendants' products are priced higher by c. $2 per 16-ounce bottle, on average), more enticing representations bereft of any qualifying matter as to nature of the final product, no mention of the word "processing" and reasonably believe defendants products are compositionally superior (more enzymatic activity, fresher) when they are equivalent.

40.    Reasonable consumers understand a product identified as "cold pressed juice" refers to the juice in its consumable form, meaning that the last production step was the cold-pressed expression.

41.    It is deceiving to give a descriptive term to name a product which does not

describe the product at the point of sale.

42.     Consumers understand and interpret cold pressed as a verb, indicating a production method and as an adjective, as a descriptor or modifier prior to the word "juice."

43.     Because defendants utilize the term "cold press" in the precise spot consumers are accustomed to seeing the truthful and non-misleading product name, it is understood not as just another fact, but as what the product is.

44.     For example, canned grapefruit juice was at one-point fresh grapefruit juice, but to avoid deception, it bears the name as it exists as a final consumable product.

45.     Identification of the product as "cold pressed juice" implies the product is fresh in that it has not been processed after being cold pressed.

46.     Defendants claims the products are "raw," "100% Raw," "Never Heated" and not "'flash' pasteurized," are intended to make consumers think there is not a processing step, as indicated in part on alternate information panels below:

 

47.     Such claims are true yet misleading because:

•   It plays upon consumer familiarity with heat used for processing and preservation

•   It correctly assumes reasonable consumers are unfamiliar with non-thermal pasteurization or treatment methods such as high pressure or ultraviolet rays

48.     Defendants' labels contain roughly one hundred non-required words on three

panels with an entire panel devoted to the term "Manifreshto," a mashup of the words "Manifesto" and "Fresh."

49. Reasonable consumers understand a fresh juice product to be one that is not processed or preserved and that the occurrence of processing or preservation is not compatible with a fresh product.

50. It is misleading to imply the Products are "fresh" and in context, deceptive to omit the word "processing" or "processed" entirely.

51. Moreover, the labels latch onto the common etymological origin of "cold press" and "high pressure" in the word "press," meaning to squeeze.

52. For instance, the information panel emphasizes that "The BluePrintMethod applies tons of hydraulic pressure to get the most out of our organic fruits and vegetables," while simultaneously stating the products are "Never Heated" and that "BluePrint uses pressure instead of heat to keep our beverages raw and safe."



53. The use of these intralingual cognates is deceptive as it intentionally fails to demarcate where one "pressure" step begins and the other ends.

54. This message is effective because reasonable consumers:

- Expect the product name will be a truthful accurate description

- not aware of non-thermal methods which are tantamount to heat high pressure, ultraviolet rays in their processing, preservation and treatment effects

- Understand raw in the context of a food safety effect, i.e., thermal pasteurization to milk or grilling a hamburger

- Expect that raw refers to a product in its unprocessed, unpreserved state

- Expect that a product labeled raw would not undergo intervening processes following the earliest time it would be consumable – after cold pressed

55.    Defendants own internal research performed in 2016 confirmed that defendants had not dispelled any confusion.

56.    This research indicated to defendants that while consumers valued the "cold pressed" designation, they were unaware of what high pressure processing was and did not understand its connection to cold-pressed.

57.    This is because the cold-pressed and fresh claims describe a juice product which has not been treated following its expression/extraction.

58.    Due to the NFC lemon juice being subjected to thermal pasteurization to inactivate PME, it is false and misleading to describe the Cold Press Juice Products as "raw," even accepting defendants' attempt to pigeonhole "raw" as only applying to heat.

59.    It is eminently feasible to determine with a high degree of certainty the origins of the lemon juice in defendants' Products through testing for residual pectin methylesterase ("PME") and the presence of certain key flavonoids.

60.    Consumers are able to purchase juice which has only been cold-pressed and they will pay a premium for it – between $9.99 to $11.99 per 12 ounces.

61.     This high price is commanded because the juice is fresh – there are no processing or treatment steps applied following the point at which the product is consumable.

62.     When "Manifreshto" was registered in 2011, BluePrint juice products were available which were not processed.

63.     At some point after 2011 but at least three years prior to present, all of the products were processed.

64.     Defendants' vertical listing of ingredients on the front label is responsive to increased consumer demand for transparency.

65.     The products with the first-named vertically listed ingredients of Arugula, Chard and Beet give the false impression these more expensive ingredients are predominant.

| Arugula | Chard | Beet |
|---------|-------|------|
|  |  |  |

66.     This is shown by the ingredient lists indicating the main ingredients in the first two products is basic romaine lettuce – not arugula or chard – while instead of beets, the consumer gets apple juice.

67.     It is reasonable to expect the first ingredient on the front is predominant because:

- the Products are a premium price, so the consumer will think "you get what you pay for"

- absence of a product name such as chard-flavored vegetable juice blend

- label and juice color correspond to first named ingredient.

68.     Defendants' 12-ounce BluePrint Organic Products, Lemon Yay and Lime Lifter, are misleading because they are described as "crafted with cold pressed juice" despite being entirely citrus juices.

69.     Citrus juices are not cold pressed for the same reasons that apply with respect to the lemon juice production, *supra*.

Front Panel                              Information Panel

 

70. The above-referenced representations and omissions are material facts which plaintiff and class members relied on, paying more than they would have and not receiving all that they bargained for.

71. Excluding tax, the BluePrint Cold Pressed Juice products cost between $5.99 and $11.99 while the BluePrint Organic products cost between $3.99 and $5.99, premium prices compared to other products manufactured in multiple, similar production steps.

<u>Jurisdiction and Venue</u>

72. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

73. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

74. This Court has personal jurisdiction over defendants because they conduct

16

and transact business, contract to supply and supply goods within New York.

75. Venue is proper because plaintiff and many class members reside in this District and defendants have been doing business in this District and in New York.

76. A substantial part of events and omissions giving rise to the claims occurred in this District.

77. The class is all consumers in all states who purchased any Products bearing any of the actionable representations herein during the statutes of limitation periods.

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

79. The class is so numerous that joinder of all members, even if permitted, is impracticable, as plaintiff believes there are hundreds of thousands of members.

80. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

81. Plaintiff's claims and the basis for relief are typical to other members' owing to all being subjected to the same representations.

82. Plaintiff is an adequate representative because his interests do not conflict with other class members.

83. No individual inquiry is necessary since the focus is only on defendants' practices and the class is definable and ascertainable.

84. Individual actions risk inconsistent results, would be repetitive and are impractical to justify, as the claims are modest.

85. Plaintiff's counsel is competent and experienced in complex class action

litigation and intends to adequately and fairly protect class members' interests.

86. Plaintiff seeks class-wide injunctive relief because the practices continue, with the injunctive class maintained as a class action because it meets the same criteria as the non-injunctive class.

<u>Parties</u>

87. Plaintiff is a citizen of Queens County, New York.

88. The Hain Celestial Group, Inc. and Hain BluePrint, Inc. are corporations formed under the laws of Delaware and doing business in New York.

89. Hain Blueprint, Inc. is a wholly-owned subsidiary of The Hain Celestial Group, Inc.

90. In spring 2016, plaintiff purchased the BluePrint Cold Pressed Juice product for personal consumption with the "beet, apple, carrot, lemon, ginger" ingredients listed on the front label, for no less than $7.99, excluding tax, at a grocery market in this District.

91. Plaintiff bought this product because prior to purchase, he saw and relied upon its principal display panel which identified it as a "Cold Pressed Juice Beverage" and "Raw" and that it contained more beet juice than the other juices listed.

92. Plaintiff understood these terms together to mean the juice was not processed after being cold pressed, all of the ingredients were cold pressed, and that beets were the predominant ingredient due to its being first listed on the front label, the product's red color and red graphic.

93. In 2016, plaintiff purchased a BluePrint Organic (12) Lemon Yay for $2.99, excluding tax, at a store within this District because he read the supplemental information panel which said it was "crafted with cold pressed juice."

94.     The ingredients in Lemon Yay include water, organic lemon juice, organic agave syrup and pepper extract with cayenne.

95.     Since lemon juice is not expressed from lemons based on the reasons described, *supra*, syrup is already in a liquid form and pepper is a spice, none of the ingredients could have been obtained through being "cold pressed."

96.     Plaintiff purchased these Products because he intended to consume products which possessed the attributes and features described herein and opted against buying less expensive juices not so represented.

<u>Violations of New York General Business Law §§ 349 & 350</u>

97.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

98.     Defendants' acts and practices, advertising, labeling, packaging and representations are not unique to the parties and have a broader impact on the public.

99.     Consumers are not accustomed to inaccurate descriptions of a product on the front label in the place where a truthful, non-fanciful, non-boastful name is supposed to be.

100.    Cold pressed juice is misleading as an identification and description of the products because the cold pressed juice only exists at an intermediate stage before it is processed.  Moreover, all of the ingredients are not even cold-pressed.

101.    A reasonable consumer understands a product's name to refer to it in its final, consumable form, in the same way that calories or nutrients in a food are not based on a food before it is finished and ready to eat.

102.    Plaintiff and reasonable consumers were misled because they were not aware the products could be processed and preserved without heat, *viz*, thermal pasteurization.

103.    When they see labels stating 'cold-pressed,' 'never heated' and 'fresh,' they will pay a price premium, believing they have not been processed or preserved.

104.    Defendants offer partial, voluntary disclosures and fail to state additional or qualifying matter with respect to what they did say.

105.    Though certain of Defendants representations may be literally true so far as it goes, they are nonetheless misleading.

106.    The above-referenced representations and omissions on the labeling and packaging were material facts that are deceptive, misleading and false advertising which plaintiff and class members relied on, paying more than they would have and not receiving all that they bargained for.

107.    As a result, plaintiff and class members are entitled to damages.

<u>Fraudulent Misrepresentation</u>

108.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

109.    The cold-press identification and designation on the front label, the purposefully overlapping description between the expression and processing steps (both centered around pressure), the raw and "never heated" claims and "Manifreshto" are all based on representing the Product as one which has not undergone a second production step.

110.    Defendants had an affirmative duty to disclose:

- the Products were processed, because this would complete their partial statements with respect to their claims the Products were raw and identified in their final form as "Cold Pressed Juice" and

- that their definition of a raw product excludes products which are fresh.

20

111.    All of the representations are interrelated and designed to be viewed in totality, each discrete statement reinforcing the others.

112.    They are carefully worded and rely on the long-held association of heat and raw, because since the beginning of time and until recently, the main method used by humans preserve their food was fire.

113.    BluePrint began as a company which did not employ a processing step after cold-pressing and was one of the first companies to offer a different kind of juice product.

114.    Although BluePrint was acquired by defendant Hain Celestial, it was not as financially successful as the reported purchase price of $30 million would indicate

115.    Defendants' representations were made to plaintiff in the spring of 2016 in the form of the product identification as "Cold Pressed Juice Beverage" and that the product was "raw" and "100% Raw."

116.    At that time, defendants were motivated by financial gain and straining to hold back competition from large market entrants, from product options backed by the largest consumer packaged goods companies in the world.

117.    Defendants knew that other juice products more accurately represented their products and were lower-priced.

118.    The only way to differentiate its products, in a supermarket produce section filled to the brim with premium juice was to capitalize on the reasonable connection which consumers had between traditional heat preservation and the result of a commercially sterile product.

119.    By omitting the material fact that other, non-thermal technologies could and did, achieve commercial sterility, defendants induced plaintiff and consumers into believing

that their products were substantively different than they were.

120.     Plaintiff and class members reasonably relied on the specific absence of the occurrence of a processing step and paid a premium for the Cold Pressed Juice products, above what they would have paid had they known the truth, without getting all they bargained for – a product which was fresh and unprocessed.

<u>Unjust Enrichment</u>

121.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

122.     Defendants obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, plaintiff, on behalf of himself and all others similarly situated, prays for judgment:

1.  Declaring this a proper class action and certifying plaintiff as class representative;

2.  Entering preliminary and permanent injunctive relief and directing defendant to correct their practices to comply with the law;

3.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law claims and GBL §§ 349, 350;

4.  Awarding plaintiff and class members costs and expenses incurred, including reasonable allowance of fees for plaintiff's attorneys and experts; and

5.  Such other and further relief as the Court deems just and proper.

Dated: December 13, 2017

Respectfully submitted,

Levin-Epstein & Associates, P.C.

By: /s/Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

Sheehan & Associates, P.C.

By: /s/ Spencer Sheehan
Spencer Sheehan
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800
spencer@spencersheehan.com

1:17-cv-5191(ARR)(MRL)
United States District Court
Eastern District of New York

Josh Davis, individually on behalf of himself and all others similarly situated,

       Plaintiff,

   - against -

The Hain Celestial Group, Inc. and Hain Blueprint, Inc.,

       Defendants

# First Amended Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza
Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: December 13, 2017
     New York, New York

              /s/ Joshua Levin-Epstein
              Joshua Levin-Epstein