UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LACIE DAVIS, individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>      - against -<br><br>RICOLA USA INC.,<br><br>                 Defendant | 3:22-cv-03071-CRL-KLM |

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion for Contempt

**TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 1

LEGAL STANDARDS ............................................................................................................. 2

ARGUMENT ............................................................................................................................. 3

I. DEFENDANT'S AUTHORITIES ARE BASED ON FALSE
   EQUIVALENCE ........................................................................................................... 3

II. INDEPENDENT DISCOVERY OF PRODUCT'S INDIAN, NOT SWISS,
    ORIGINS ....................................................................................................................... 6

III. PUBLIC DISCLOSURE OF "SHARP MINT LTD. [AS] MENTHOL
     SUPPLIER FOR RICOLA" WAIVED PROTECTIONS .............................................. 8

IV. NO COMMERCIAL VALUE TO COMMON INFORMATION ............................... 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Am. Nat. Bank & Tr. Co. of Chicago ex rel. Emerald Invs. LP v. AXA Client Sols., LLC*,
   No. 00-cv-6786, 2002 WL 1067696 (N.D. Ill. May 28, 2002) ................................... 3

*Cambria Co. LLC v. Hirsch Glass Corp.*,
   No. 21-cv-10092, 2023 WL 6387680 (D. N.J. Sept. 29, 2023) ................................... 5

*Cleveland v. Ludwig Institute for Cancer Research Ltd.*,
   No. 19-cv-02141, 2021 WL 4993025 (S.D. Cal. Oct. 27, 2021) ................................. 4

*Crocs, Inc. v. Joybees, Inc.*,
   No. 21-cv-02859, 2023 WL 8851997 (D. Colo. Dec. 8, 2023) .................................... 7

*DEV Industries, Inc. v. Rockwell Graphic Systems, Inc.*,
   No. 91-cv-7197, 1992 WL 100908 (N.D. Ill. May 4, 1992) ........................................ 6

*Doe v. Lansal, Inc.*,
   No. 08-cv-5983, 2012 WL 707112 (N.D. Ill. Mar. 5, 2012) ........................................ 9

*Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America*,
   No. 94-cv-7568, 1995 WL 632037 (N.D. Ill. Oct. 25, 1995) ...................................... 9

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*,
   No. 15-cv-2044, 2017 WL 2418742 (S.D.N.Y. June 5, 2017) .................................... 5

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*,
   No. 15-cv-2044, 2017 WL 4678431 (S.D.N.Y. Oct. 16, 2017) ............................... 5, 6

*Essex Wire Corp. v. E. Elec. Sales Co.*,
   48 F.R.D. 308 (E.D. Pa. 1969) ................................................................................. 10

*Feed.ing BV v. Principle Sols., LLC*,
   No. 14-cv-1241, 2015 WL 136402 (E.D. Wis. Jan. 8, 2015) ..................................... 7

*GQ Sand, LLC v. Range Mgmt. Sys., LLC*,
   278 F. Supp. 3d 1115 (W.D. Wis. 2017) .................................................................. 4

*Hitz Ent. Corp. v. Mosley*,
   No. 16-cv-1199, 2017 WL 444073 (N.D. Ill. Feb. 1, 2017) ....................................... 9

*Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*,
   No. 99-cv-0762, 1999 WL 528545 (N.D. Ill. July 19, 1999) ..................................... 6

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ................................................................................... 4, 7

*Instant Tech., LLC v. DeFazio*,
   No. 12-cv-491, 2013 WL 5966893 (N.D. Ill. Nov. 8, 2013) ...................................... 3

*Kyles v. J.K. Guardian Sec. Servs.*,
   No. 97-cv-8311, 2006 WL 2861121 (N.D. Ill. Sept. 26, 2006) .................................. 9

*Marquis Procap Sys., LLC v. Novozymes N. Am., Inc.*,
   No. 20-cv-1020, 2023 WL 6936408 (C.D. Ill. Mar. 17, 2023) ................................ 10

*McGreevy v. CSS Indus., Inc.*,
   No. 95-cv-8063, 1996 WL 412813 (E.D. Pa. July 17, 1996) .................................... 9

*MPI Tech A/S v. IBM*,
   No. 15-cv-4891, 2017 U.S. Dist. LEXIS 59870 (S.D.N.Y. Apr. 18, 2017) .............. 4

*Nixon v. Warner Communications, Inc.*,
   435 U.S. 589 (1978) ................................................................................................ 10

*On Command Video Corp. v. LodgeNet Ent. Corp.*,
   976 F. Supp. 917 (N.D. Cal. 1997) ........................................................................... 6

*Packet Intel. LLC v. Ericsson Inc.*,
   No. 18-cv-00381, 2019 WL 8137142 (E.D. Tex. Jan. 10, 2019) .............................. 3

*Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*,
   525 F.3d 533 (7th Cir. 2008) ..................................................................................... 2

*Rhinehart v. Seattle Times Co.*,
   98 Wash. 2d 226 (1982) ............................................................................................ 8

*Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*,
   192 F. Supp. 3d 400 (S.D.N.Y. 2016) ....................................................................... 8

*Salomon Smith Barney, Inc. v. HBO & Co.*,
   No. 98-cv-8721, 2001 WL 225040 (S.D.N.Y. Mar. 7, 2001) .................................. 10

*SEC v. Hyatt*,
   621 F.3d 687 (7th Cir. 2010) ..................................................................................... 2

*Static Media LLC v. Leader Accessories LLC*,
   38 F.4th 1042 (Fed. Cir. 2022) ......................................................................... 2, 7, 8

*Static Media LLC v. Leader Accessories LLC*,
   No. 18-cv-330, 2019 WL 7281931 (W.D. Wis. Dec. 27, 2019) ............................... 3

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
   250 F.R.D. 426 (D. Neb. 2008) ............................................................................... 7

*Taggart v. Lorenzen*,
   139 S. Ct. 1795 (2019) ................................................................................... 2, 3

*Union Oil Co. of California v. Leavell*,
   220 F.3d 562 (7th Cir. 2000) ................................................................................ 10

*Vardon Golf Co. v. Karsten Mfg. Corp.*,
   213 F.R.D. 528 (N.D. Ill. 2003) ............................................................................. 9

*Whitehead v. Gateway Chevrolet, Oldsmobile*,
   No. 03-cv-5684, 2004 WL 1459478 (N.D. Ill. June 29, 2004) .............................................. 3

**Statutes**

28 U.S.C. § 2072 .................................................................................................. 5

**Rules**

Fed. R. Civ. P. 26(c) ............................................................................................. 3

Fed. R. Civ. P. 37 ................................................................................................. 2

Fed. R. Civ. P. 37(b)(2)(A)(vii) ................................................................................... 2

## INTRODUCTION

Lacie Davis ("Plaintiff") submits this Memorandum of Law, along with the Declaration of Spencer Sheehan ("Sheehan Decl.") in Opposition to the Motion by Ricola USA Inc. ("Defendant") for Contempt against Plaintiff's Counsel. ECF No. 53.

## FACTUAL BACKGROUND

On November 17, 2023, Defendant filed a Motion for Summary Judgment, supported by a Memorandum of Law, and several exhibits. ECF Nos. 34-36. The third of these was the "Expert Report Of Stefan Gafner, Ph.D.," which "Reference[d] Highly Confidential – Attorneys' Eyes Only ['AEO'] Information Under Protective Order (ECF No. 18)." ECF No. 36-3 ("Gafner Report").

On December 6, 2023, Plaintiff's Counsel "quickly reviewed the Gafner Report on [his] phone, having not reviewed any of Defendant's discovery documents." Sheehan Decl. ¶ 206. Plaintiff's Counsel described that he "was quite surprised to see the menthol supplier for Defendant identified as 'Sharp Mint Ltd.,'" since "supplier information is often highly protected." Sheehan Decl. ¶¶ 210-11.

In fact, Plaintiff's Counsel incorrectly believed that the Gafner Report "was filed inadvertently on the public docket and/or without any redactions," and notified Defendant of this, in addition to redacting information that was publicly disclosed in it. Sheehan Decl. ¶¶ 212, 218-19.

Several months later, Plaintiff's Counsel, who has a documented history of filing numerous consumer fraud cases based on misleading labeling and packaging, prepared a complaint for review by another attorney, for filing in a different court (the "*Cowit* Action"). Sheehan Decl. ¶ 232.

The allegations in *Cowit* were that it was misleading for Ricola to market its lozenges as "Made With Swiss Alpine Herbs" based on "facts and inferences [they] used menthol from India" as their active ingredient. Sheehan Decl. ¶ 228.

Following the filing of *Cowit*, Defendant's Counsel accused Plaintiff's Counsel of obtaining the information that its menthol was sourced in India in violation of the Court's Protective Order. Although Plaintiff's Counsel attempted to reach a compromise, this was not accepted or considered. Sheehan Decl. ¶¶ 235-254. For numerous factual and legal reasons, its Motion should be denied.

## LEGAL STANDARDS

Fed. R. Civ. P. 37 permits a district court to "treat[ ] as contempt of court the failure to obey any [court] order." Fed. R. Civ. P. 37(b)(2)(A)(vii). This requires the moving party "establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) citing *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008).

The Supreme Court has emphasized that "civil contempt is appropriate 'if there is *no fair ground of doubt* as to whether the order barred'" the conduct at issue. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1798 (2019) (emphasis in original).

Contempt "may be appropriate when the [contemnor] violates a [protective] order based on an objectively unreasonable understanding of the…order or the statutes that govern its scope." *Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1047 (Fed. Cir. 2022) (concluding "the district court's contempt finding and its award of sanctions and attorney's fees" because "the

2

disclosure was not a clear violation of the protective order") reversing *Static Media LLC v. Leader Accessories LLC*, No. 18-cv-330, 2019 WL 7281931, at *3 (W.D. Wis. Dec. 27, 2019) and quoting *Taggart*, 139 S. Ct. at 1801-02

While courts have "issued sanctions under Rule 37(b) for violations of a confidentiality order," it is typically the party which committed the violation that is the subject of such penalties. *Instant Tech., LLC v. DeFazio*, No. 12-cv-491, 2013 WL 5966893, at *3 (N.D. Ill. Nov. 8, 2013) (declining to accept plaintiff's assertion "that the inclusion of the [protected] exhibits on the public record was 'accidental' and 'an innocent clerical error'") citing *Whitehead v. Gateway Chevrolet, Oldsmobile*, No. 03-cv-5684, 2004 WL 1459478 at *3 (N.D. Ill. June 29, 2004).

Though it is true that "Upon entry of a protective order under Rule 26(c), [] Dissemination becomes controlled by [its] terms…or subject themselves to possible sanctions," there is no dispute that such an "order is not intended to impose additional limitations or restrictions on how a producing party accesses its own information." *Am. Nat. Bank & Tr. Co. of Chicago ex rel. Emerald Invs. LP v. AXA Client Sols., LLC*, No. 00-cv-6786, 2002 WL 1067696, at *3 (N.D. Ill. May 28, 2002); *Packet Intel. LLC v. Ericsson Inc.*, No. 18-cv-00381, 2019 WL 8137142, at *1 (E.D. Tex. Jan. 10, 2019).

**ARGUMENT**

I.  **DEFENDANT'S AUTHORITIES ARE BASED ON FALSE EQUIVALENCE**

Defendant's authorities rest on a false equivalence, because it was responsible for disclosing its own "confidential" information.

Unlike *MPI Tech*, where the new complaint filed by that plaintiff was based on "documents produced [which] were privileged, had been produced inadvertently despite reasonable precautions, and needed to be returned to [defendant] or [be] destroyed," the Gafner Report's identification of Sharp Mint Ltd as Ricola's menthol supplier was never claimed to have been

3

"inadvertent." Def. Mem. at 10 citing *MPI Tech A/S v. IBM*, No. 15-cv-4891, 2017 U.S. Dist. LEXIS 59870, at *46 (S.D.N.Y. Apr. 18, 2017).

More significantly, "MPI conceded that its only source of information for the Complaint in the New Action was the confidential Ricoh documents," contrary to the position of Plaintiff's Counsel here. *MPI Tech*, 2017 U.S. Dist. LEXIS 59870, at *27, *37 (noting that MPI "freely admitted that the pleading [at issue] had no other basis").

Nonetheless, that court's recommendation that "MPI should be directed to withdraw the New Action, without prejudice to refile, should it, through investigation, develop support for its new claims from sources other than the documents covered by the Protective Order in this case," is consistent with what Plaintiff's Counsel has already provided. *MPI Tech*, 2017 U.S. Dist. LEXIS 59870, at *48.

In contrast to *GQ Sand*, where a party's attorney "disclosed [an] [e]xhibit [] in his July 1, 2016, email, despite it having been marked 'confidential' under the provisions of the protective order in this case," the *Cowit* Complaint "went to great lengths to avoid revealing in the public filings anything it had learned in discovery." Def. Mem. at 10 citing *GQ Sand, LLC v. Range Mgmt. Sys., LLC*, 278 F. Supp. 3d 1115, 1124 (W.D. Wis. 2017); *Static Media LLC*, 38 F.4th at 1048 quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695-96 (9th Cir. 1993).

Unlike the plaintiffs in *Ludwig*, who "shared the [protected] April 2018 Minutes with new counsel," "quoted language from the April 2018 Minutes," and "publicly filed a complaint which referred explicitly to the April 2018 Minutes and quoted language from [it]," Plaintiff's Counsel has done none of these things. Def. Mem. at 10 citing *Cleveland v. Ludwig Institute for Cancer Research Ltd.*, No. 19-cv-02141, 2021 WL 4993025, at *11 (S.D. Cal. Oct. 27, 2021) (prohibiting

4

plaintiffs from use of subject minutes and declining to accept justifications that disclosure was "required by law," "improperly designated in violation of public policy," and "[in]consistent with the Rules Enabling Act [28 U.S.C. § 2072].").

With respect to the allegations in *Cambria Co.*, it was alleged that "the EDTX Complaint…contains specific allegations about Cambria's technical manufacturing processes that appear to correspond with specific topics that Hirsch asked about during contemporaneous HC-AEO depositions." Def. Mem. at 10 citing *Cambria Co. LLC v. Hirsch Glass Corp.*, No. 21-cv-10092, 2023 WL 6387680, at *8 (D. N.J. Sept. 29, 2023).

However, there is no comparable "heavy burden" for Plaintiff's Counsel to satisfy, because the Gafner Report identified the company. The difference between "allegations about Cambria's technical manufacturing processes" and performing a google search for "Sharp Mint Ltd" are night and day.

Defendant's comparison to *Errant Gene Therapeutics* is similarly misplaced for multiple reasons. Def. Mem. at 10 citing *Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*, No. 15-cv-2044, 2017 WL 2418742, at *5 (S.D.N.Y. June 5, 2017) ("*EGT I*") (granting sanctions but declining to find contempt because "[T]he Girondi declaration d[id] not explain how knowledge of an agreement between SKI and Bluebird supported [the] conclusion that" was the basis "for filing the New York complaint").

First, while Defendant asserts that "only the protected information could provide the [geographic origin of its menthol]," notwithstanding its disclosure of the name of its supplier, "[A] review of the circumstantial evidence available to [Plaintiff's Counsel] permits a reasonable deduction [it was from India]." *Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*, No. 15-cv-2044, 2017 WL 4678431, at *4 (S.D.N.Y. Oct. 16, 2017) ("*EGT II*").

5

Second, should Defendant contend "that '[Plaintiff's Counsel] itself created a number of the documents on which it relies [which is] the antithesis of the 'independently verifiable information' required to show independent development,'" the Court can conclude "that because the [internet searches of Plaintiff's Counsel]…were [carried out] prior to the filing of the [*Cowit*] Complaint…[it is] independently verifiable." *EGT II*, at *6.

The present circumstances do not require as many inferential leaps or "coincidences" because Defendant served up the name of its supplier in a publicly filed document, without sealing or redactions. It is only necessary to accept that Plaintiff's Counsel performed a Google search for the company's name, which the Sheehan Declaration, and contemporaneous evidence, support.

## II. INDEPENDENT DISCOVERY OF PRODUCT'S INDIAN, NOT SWISS, ORIGINS

In contrast to the plaintiffs in *On Command* and DEV Industries, who "did not dispute that [their] allegations were predicated upon information obtained in a prior action," the Sheehan Declaration credibly "maintains that [*Cowit*] used no confidential information obtained in [this action]." *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, No. 99-cv-0762, 1999 WL 528545, at *2 (N.D. Ill. July 19, 1999) citing *On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 922 (N.D. Cal. 1997)  and *DEV Industries, Inc. v. Rockwell Graphic Systems, Inc.*, No. 91-cv-7197, 1992 WL 100908 (N.D. Ill. May 4, 1992).

Ricola's "argument turns any protective order barring future use of confidential information that is independently relevant and discoverable in a subsequent action into a restriction on an attorney's right to practice law," which is "restriction on the lawyer's right to practice." *Hu-Friedy Mfg. Co.*, 1999 WL 528545, at *2.

The present facts are stronger than those in *Dual Deck*, because though "that [] plaintiff 'went to great lengths to avoid revealing in the public filings anything it had learned in discovery,'"

the *Cowit* Action declined to identify the publicly filed Gafner Report which confirmed their allegations. *Static Media*, 38 F.4th at 1048 quoting *Dual-Deck*, 10 F.3d at 695.

Defendant's Motion demands that Plaintiff's Counsel "achieve total amnesia," and essentially "change fields, and never do [consumer fraud] work again, lest they 'use' what they learned in a prior case 'in any way whatsoever' in any 'other action,'" notwithstanding the assertion that no such protected information was used in any way. *Static Media*, 38 F.4th at 1048 (recognizing that even the moving plaintiff "acknowledged that it would be permissible under the protective order for an attorney who gains knowledge in one case to use that information to develop a strategy applicable to another case.") quoting *Dual-Deck*, 10 F.3d at 695.

Like the attorneys in *Streck, Inc.*, "[P]laintiff's counsel did not disclose any confidential information, which was not ascertainable, accurately or not, through an independent source." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 435 (D. Neb. 2008) (finding facts "more akin to *Hu-Friedy*, than to *On Command*").

Moreover, the *Cowit* Action "[would] have occurred without counsel's knowledge of the [publicly filed Gafner Report] [and] to assume otherwise would be speculative." *Streck, Inc*, 250 F.R.D. at 435.

The "weight of authority supports the conclusion that the protective order does not deprive [Plaintiff's Counsel] of the right to file a separate lawsuit merely because the supporting information bears a confidential designation," especially because this was publicly disclosed and independently learned. *Crocs, Inc. v. Joybees, Inc.*, No. 21-cv-02859, 2023 WL 8851997, at *8 (D. Colo. Dec. 8, 2023) citing *Feed.ing BV v. Principle Sols., LLC*, No. 14-cv-1241, 2015 WL 136402, at *3 (E.D. Wis. Jan. 8, 2015) (holding that the filing of a second action did not violate a protective order where the complaint did not divulge confidential information, because a

7

"protective order was designed to protect the privacy of information,…not 'to shield [the defendant] from such a lawsuit") and *Static Media*, 38 F.4th at 1048.

The Protective Order "d[id] not restrict or limit any party's ability to disclose its own materials and information as it sees fit, including its voluntary disclosure of its own Confidential Information or Attorney Eyes Only Information." ECF No. 18 at ¶ 8.

The corollary is that once such "information that has been disclosed to the public or third persons in a manner making such information no longer confidential," the "Confidential Information or AEO [designations]" "[no longer] appl[ied]." ECF No. 18 at ¶¶ 4-5, 9.

These provisions are consistent with *Seattle Times*, which only applied "to protect the confidentiality of information given [to the receiving party] for purposes of litigation." *Seattle Times*, 467 U.S. at 28 n. 9 quoting and reversing *Rhinehart v. Seattle Times Co.*, 98 Wash. 2d 226, 239, 256 (1982).

Defendant's arguments are akin to what the court deemed "frivolous" in *Royal Park Investments*, because "[Ricola] itself filed [the Gafner Report] on the public docket…discussing [its menthol supplier, Sharp Mint Ltd]," then "conten[ding] that [Plaintiff's] [C]ounsel committed (or admitted to) a sanctionable violation of the Protective Order by [the *Cowit* action]." *Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*, 192 F. Supp. 3d 400, 405-06 (S.D.N.Y. 2016) (endorsing approach of *Dual Deck* "that a protective order should be interpreted 'to comply with common sense'").

### III. PUBLIC DISCLOSURE OF "SHARP MINT LTD. [AS] MENTHOL SUPPLIER FOR RICOLA" WAIVED PROTECTIONS

In filing the Gafner Report without any redactions nor "placing [it] under seal for in camera inspection, this Court [should conclude] [Defendant] [] waived [any] privilege" or confidentiality

8

with respect to Sharp Mint as its supplier of menthol. *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 532-33 (N.D. Ill. 2003).

That "Precedent exists for holding parties responsible for disclosure through court filings of purportedly confidential information" can be found within this Circuit, and this Court should conclude that "[Ricola] waived any confidentiality concerning [the Indian supplier of its menthol and the source of same] when it failed to file [the] [Gaffner Report] under seal." *McGreevy v. CSS Indus., Inc.*, No. 95-cv-8063, 1996 WL 412813, at *3 (E.D. Pa. July 17, 1996) citing *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America*, No. 94-cv-7568, 1995 WL 632037, at *2 (N.D. Ill. Oct. 25, 1995) (finding belated request to seal "lack[ed] merit" because that party's "reply contains Kraske's affidavit [which] describes in detail the differences between Marcal's pin mixer and ELI's substantially horizontal rotating drum," and it "was not filed under seal and is available to the public.").

Further, "It is the parties' obligation to identify documents filed under seal," lest "they [] waive their confidentiality interest." *Doe v. Lansal, Inc.*, No. 08-cv-5983, 2012 WL 707112, at *4 (N.D. Ill. Mar. 5, 2012) citing *Kyles v. J.K. Guardian Sec. Servs.*, No. 97-cv-8311, 2006 WL 2861121, at *5 (N.D. Ill. Sept. 26, 2006) (finding belated request "lack[ed] merit" because materials "[not] filed under seal" could no longer be "confidential"); *Hitz Ent. Corp. v. Mosley*, No. 16-cv-1199, 2017 WL 444073, at *7 (N.D. Ill. Feb. 1, 2017) (finding where party "voluntarily disclosed the CCTV report to the public [and] it remains publicly available, [it] is not confidential")

While Defendant "would prefer that the subject of th[is] case – [whether its active ingredients are from Switzerland, India, or elsewhere] [] – be kept from the curious (including its business rivals and customers)," "What happens in the halls of government is presumptively public business." *Marquis Procap Sys., LLC v. Novozymes N. Am., Inc.*, No. 20-cv-1020, 2023 WL

9

6936408, at *1 (C.D. Ill. Mar. 17, 2023) quoting *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99, 570 (1978).

IV.     **NO COMMERCIAL VALUE TO COMMON INFORMATION**

Unlike "any secret process, formula, or customer lists, which it is generally agreed should…be afforded great protection," "the name of the manufacturer [Sharp Mint Ltd.] and the country of origin [India] of the [menthol in the Swiss Alpine Herb lozenges]" are "At best…confidential business information which [Ricola] would want to keep to themselves," to avoid embarrassment, and it cannot show "that divulgence of this information to the public would result in a clearly defined injury." *Essex Wire Corp. v. E. Elec. Sales Co.*, 48 F.R.D. 308, 311 (E.D. Pa. 1969) (observing that "no cases were submitted [] nor were any found on independent research, which suggest that the country of origin is that type of confidential business information which should be guarded by a [] protective order.").

Since "implicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public," beyond the Gafner Report, that Defendant obtains menthol from India is hardly the type of information which could cause competitive harm, especially since most menthol comes from there. *Salomon Smith Barney, Inc. v. HBO & Co.*, No. 98-cv-8721, 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001)

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion.

Dated:      May 10, 2024

                                                    Respectfully submitted,

                                                    Sheehan & Associates, P.C.
                                                    /s/Spencer Sheehan

10

spencer@spencersheehan.com  
60 Cuttermill Rd Ste 412  
Great Neck NY 11021  
Tel: (516) 268-7080

**Certificate of Service**

I certify that on May 10, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

                                                /s/ Spencer Sheehan