E-FILED
Thursday, 10 October, 2024  06:44:45 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| LACIE DAVIS, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:22-cv-03071-CRL-KLM |
| | ) | |
| v. | ) | Hon. District Judge Colleen R. Lawless |
| | ) | |
| RICOLA USA, INC., | ) | Hon. Magistrate Karen L. McNaught |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**RICOLA USA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR ATTORNEYS' FEES**

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ................................................................................................1

II.   PROCEDURAL HISTORY.................................................................................3

      A.    Plaintiff Files This Lawsuit Alleging That The Menthol Active Ingredient In The Product Is Synthetic.........................................................................3

      B.    Plaintiff Misses The Deadline To File Her Class Certification Motion And Her Counsel Files A Nearly Identical Lawsuit Against Ricola In This District.....................................................................................................4

      C.    The Unrebutted Gafner Report Conclusively Establishes That The Product's Menthol Active Ingredient Is 100% Herbal .............................5

      D.    The Court Grants Ricola's Motion For Summary Judgment...................7

III.  THE COURT HAS COLLATERAL JURISDICTION OVER THIS FEE MOTION DESPITE FINDING THAT PLAINTIFF LACKS ARTICLE III STANDING ON SUMMARY JUDGMENT ................................................................................8

IV.  PLAINTIFF'S COUNSEL'S FAILURE TO DISMISS THE CASE AFTER LEARNING THAT PLAINTIFF'S ALLEGATIONS WERE FALSE WARRANTS A FEE AWARD UNDER 28 U.S.C. § 1927 ................................9

V.   RICOLA SHOULD ALTERNATIVELY BE AWARDED ITS ATTORNEYS' FEES AS THE PREVAILING PARTY UNDER ICFA .................................11

VI.  THE COURT SHOULD AWARD THE ENTIRE LODESTAR CALCULATION ........15

      A.    The Hourly Rates of Ricola's Counsel Are Reasonable........................15

      B.    The Hours Spent Are Reasonable .........................................................17

VII. CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Citizens for a Better Env't v. Steel Co.*
230 F.3d 923 (7th Cir. 2000), *cert. denied*, 532 U.S. 994 (2001)...............................................8

*Cooter & Gell v. Hartmarx Corp.*
496 U.S. 384 (1990)......................................................................................................................8

*Dakus v. KLM*
No. 22-CV-7962 (RA), 2024 U.S. Dist. LEXIS 171421 (S.D.N.Y. Sep. 23, 2024)
..................................................................................................................................2, 10, 11

*DalPozzo v. Basic Mach. Co.*
463 F.3d 609 (7th Cir. 2006) ........................................................................................................9

*Denius v. Dunlap*
330 F.3d 919 (7th Cir. 2003) ......................................................................................................15

*Durant v. Big Lots, Inc.*
No. 5:23-cv-561-GAP-PRL, 2024 U.S. Dist. LEXIS 117627 (M.D. Fla. July 3, 2024).....3, 13

*Fletcher v. Doig*
No. 13 C 3270, 2022 U.S. Dist. LEXIS 233651 (N.D. Ill. Dec. 30, 2022) .......................10, 11

*Guzman v. Walmart Inc.*
No. 22-cv-3465, 2023 U.S. Dist. LEXIS 84556 (N.D. Ill. May 15, 2023).........................2, 13

*Johnson v. GDF, Inc.*
668 F.3d 927 (7th Cir. 2012) ......................................................................................................15

*Jolly Group, Ltd. v. Medline Industries, Inc.*
435 F.3d 717 (7th Cir. 2006) ..............................................................................................2, 9, 11

*Knorr Brake Corp. v. Harbil, Inc.*
738 F.2d 223 (7th Cir. 1984) ..................................................................................................9, 11

*Kona Enters., Inc. v. Estate of Bishop*
229 F.3d 877 (9th Cir. 2000) ........................................................................................................8

*Krautsack v. Anderson*
223 Ill.2d 541 (2006) ..........................................................................................................2, 11, 12

*Mach v. Will County Sheriff*
580 F.3d 495 (7th Cir. 2009) ..............................................................................................2, 12, 13

*Montanez v. Simon*
755 F.3d 547 (7th Cir. 2014) ......................................................................................................16

-ii-

*Pickett v. Sheridan Health Care Ctr.*
664 F.3d 632 (7th Cir. 2011) ...............................................15

*Prescott v. Ricola USA, Inc.*
No. 23-cv-02983-MMC, 2024 U.S. Dist. LEXIS 78892 (N.D. Cal. Apr. 30, 2024)...............14

*Riddle & Assocs., P.C. v. Kelly*
414 F.3d 832 (7th Cir. 2005) ...............................................9, 11

*Ross v. City of Mich. City*
No. 3:08-CV-476-TLS, 2011 U.S. Dist. LEXIS 92141 (N.D. Ind. Aug. 16, 2011) .................8

*Singo v. Ricola USA, Inc.*
No. 7:2022-cv-10369, 2024 U.S. Dist. LEXIS 9311 (S.D.N.Y. Jan. 18, 2024) ......................14

*Small v. Richard Wolf Med. Instruments Corp.*
264 F.3d 702 (7th Cir. 2001) ...............................................16

*Tillman v. New Line Cinema*
374 Fed. Appx. 664 (7th Cir. 2010)...............................................9, 11

*Willy v. Coastal Corp.*
503 U.S. 131 (1992)...............................................8

## Statutes & Regulations

815 ILCS 505/10a(c)...............................................2, 11

28 U.S.C. § 1927...............................................1, 9, 10

Pursuant to Civil Local Rule 54.1, 28 U.S.C. § 1927, and 815 ICLS 505/10a(c), Defendant Ricola USA, Inc. ("Ricola") respectfully submits this Memorandum of Law in Support of Its Motion For Attorneys' Fees.[1]

## I.    **INTRODUCTION**

Plaintiff Lacie Davis's claims in this action were based on an unsubstantiated falsehood: that the active ingredient in Ricola's Original Herb cough drop product (the "Product") was not herbal.  Relying on this falsehood, Plaintiff sought to represent a class of Illinois consumers alleging that she had been misled to believe that the Product's active ingredient was herbal and that she had therefore overpaid for the Product.  Despite her allegations, however, Plaintiff failed to produce any evidence to support her assertion that the menthol was not herbal.  Moreover, Plaintiff revealed at her deposition that *even a year after filing her lawsuit in federal court* she had never bothered to determine if the menthol in the Product was an herbal ingredient.

On September 28, 2023, Ricola served Plaintiff and her counsel with the Expert Report of Stefan Gafner, P.h.D. (the "Gafner Report") which clearly established that the menthol active ingredient in the Product is 100% herbal.  But Plaintiff and her counsel continued to pursue her baseless claims in this action, thereby forcing Ricola to incur attorneys' fees in filing a motion for summary judgment – which the Court granted on September 24, 2024.  (ECF No. 64.)

Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously," and is found to have acted in subjective or objective bad faith, "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The Seventh Circuit has made clear that an attorney's conduct amounts to bad faith under Section 1927 if the attorney pursues "a

---

[1] Ricola believes that a hearing would be helpful to the Court in resolving these issues and respectfully requests that the motion be set for oral argument pursuant to Local Rule 7.1(A).

claim that *is without a plausible legal or factual basis and lacking in justification*." *Jolly Group, Ltd. v. Medline Industries, Inc*., 435 F.3d 717, 720 (7th Cir. 2006) (emphasis added).  Pursuant to 815 ILCS 505/l0a(c), a prevailing defendant may also be awarded attorneys' fees where the plaintiff is found to have acted in bad faith by needlessly increasing the cost of litigation or "making a frivolous claim." *Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009); *Krautsack v. Anderson*, 223 Ill.2d 541, 557-58 (2006).

The conduct of Plaintiff and her counsel, Spencer Sheehan, in pursuing baseless claims (even after learning of their falsity) unquestionably evidences bad faith under both statutes.  As the Court noted in granting Ricola's motion for summary judgment, Dr. Gafner's unrebutted expert report "determined that the menthol in the product is obtained directly from mint, either from corn mint or from peppermint."  (ECF No. 63 at p. 6.)  Nevertheless, Plaintiff pursued her claims and asserted (without any evidence) in her opposition to the motion that the menthol in the Product was "not an herb."  (ECF No. 37 at p. 13.)

Mr. Sheehan's conduct in this case is not an isolated incident.  Rather, district courts in this Circuit, and around the country, have repeatedly criticized Mr. Sheehan for pursuing baseless claims in false advertising class action cases that result in financial burdens on defendants. *See,* e.g., *Guzman v. Walmart Inc.*, No. 22-cv-3465, 2023 U.S. Dist. LEXIS 84556, at *9 (N.D. Ill. May 15, 2023) (stating that Mr. Sheehan "has become a wrecking ball when it comes to imposing attorneys' fees on other people" and noting that "[a]t some point, even lawyers have to internalize the costs of their own behavior"); *Dakus v. KLM*, No. 22-CV-7962 (RA), 2024 U.S. Dist. LEXIS 171421, at *10-11 (S.D.N.Y. Sep. 23, 2024) (explaining that "Spencer Sheehan is a highly prolific class action attorney who, according to a recent New Yorker article, once 'proudly' stated: 'I've never been sanctioned by a court for filing anything frivolous.' [. . .] He has since been subject to

monetary sanctions, while a 'chorus of courts around this nation [have] warn[ed] [him] to abide by the standards and rules governing [the legal] profession.'") (collecting cases); *Durant v. Big Lots, Inc.*, No. 5:23-cv-561-GAP-PRL, 2024 U.S. Dist. LEXIS 117627, at \*15 (M.D. Fla. July 3, 2024) (finding that "[w]ithout a monetary penalty, this Court's admonishment would simply join the chorus of courts around this nation warning Sheehan to abide by the standards and rules governing this profession").

Although the record in this case reflects that Plaintiff *never* had any evidence to support her allegations in the Complaint that the menthol active ingredient was not herbal, Ricola's motion seeks to recover only for its fees incurred in connection with the briefing on its motion for summary judgment – which was filed over two months after Plaintiff and her counsel were provided with undisputed evidence that her claims were false.  As discussed below, Ricola's request for these fees is eminently reasonable in light of the over two years of litigation it was required to endure after the filing of Plaintiff's meritless lawsuit.  Ricola respectfully requests that the Court enter an award for the full amount against Plaintiff and her counsel.

## II.    **PROCEDURAL HISTORY**

### A.    **Plaintiff Files This Lawsuit Alleging That The Menthol Active Ingredient In The Product Is Synthetic**

Plaintiff filed her Complaint in this action on May 8, 2022, alleging that she and other class members were harmed because, after viewing the Product's front label, they believed that "the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients." (Compl. ¶¶ 50, 68, 71; ECF No. 11 at p. 12 (Plaintiff "alleges that she purchased Ricola lozenges for what she believed was their herbally derived therapeutic properties").) Relying on these allegations, Plaintiff brought the following claims: (1) Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.; (2) Violation of State

Consumer Fraud Acts (of other states); (3) Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; (4) Negligent Misrepresentation; (5) Fraud; and (6) Unjust Enrichment.

Though counsel for Ricola attempted to informally resolve this dispute before incurring attorneys' fees for the defense of this case, Plaintiff was never informed of the demands made on her behalf or of Ricola's offers.  (ECF No. 31, ¶ 6; ECF No. 31-2, Tr. 28:8-10 (Q. "Have you been previously consulted on any negotiations in this case?" A. "Negotiations, no."); 47:23-1 (Q. "To your knowledge, has Ricola made any offers to settle this lawsuit?"  A. "Not that I know of.").)

On September 12, 2022, United States District Judge Sue E. Myerscough dismissed Plaintiff's claims for breach of express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose under the Magnuson Moss Warranty Act, along with her claim for negligent misrepresentation and demand for injunctive relief.  (ECF No. 12).  Judge Myerscough allowed Plaintiff's ICFA and unjust enrichment claims – premised on her allegations that the Product's labeling "deceived her and other consumers into believing that Ricola lozenges were 'herbal remedies'" – to proceed to discovery.  (*Id.* at p. 11.)

## B.     Plaintiff Misses The Deadline To File Her Class Certification Motion And Her Counsel Files A Nearly Identical Lawsuit Against Ricola In This District

On November 1, 2022, Judge Myerscough entered a scheduling order setting fact and expert discovery deadlines in this case.  (ECF No. 16.)  Plaintiff's deadline to file a motion for class certification and serve her Rule 26 expert reports (if any) was May 5, 2023, but Plaintiff did not file or serve any by that date.  (*Id.*)  On June 19, 2023, Plaintiff's counsel filed a nearly identical complaint in this district styled as *Tabitha Jordan v. Ricola USA, Inc.*, Case No. 3:2023-cv-03212, asserting claims against the Product and another flavor lozenge, Berry Medley (the "*Jordan* Action").  Three days later, on June 22, 2023, Plaintiff filed a motion for an extension of time in

this action acknowledging that the deadline to file her motion for class certification had passed and seeking to extend the deadline.  (ECF No. 23.)  Plaintiff attached the Declaration of Andrea Matthews, Ph.D. as an exhibit to that motion.  (ECF No. 23-3.)

In her motion, Plaintiff argued that Ricola could not show that it would prejudiced by the extension of time "because of the recently filed action, *Jordan v. Ricola USA, Inc.*, No. 3:23-cv-03212 (C.D. Ill. June  19, 2023) in this District and Springfield Division, assigned to the same District Judge as *Davis*."  (ECF No. 23 at p. 13.)  On July 28, 2023, Magistrate Judge McNaught granted Plaintiff's motion for an extension of time and deemed the motion and supporting documents filed.  (ECF No. 27.)  Judge McNaught's written order noted that "[a]ccording to plaintiff, this action will be dismissed, if the motion is denied and the  claim will be litigated in Jordan v Ricola USA, Inc., 23-3212, which plaintiff's counsel also filed."  (ECF No. 26.)

At the hearing on July 31, 2023, Judge McNaught set a briefing schedule for the motion for class certification and extended: (i) Ricola's deadline to depose Plaintiff's expert to August 30, 2023; (ii) Ricola's deadline to file an opposition to the motion for class certification and exchange Rule 26 expert reports to September 28, 2023; (iii) Plaintiff's deadline to file a reply brief in support of motion for class certification (if any) to October 12, 2023; and (iv) Plaintiff's deadline to depose Ricola's expert(s) to October 26, 2023.  (ECF No. 36, ¶ 2.)  No other changes were requested by the parties or made to the Court's original scheduling order.  (*Id.*)

### C.     The Unrebutted Gafner Report Conclusively Establishes That The Product's Menthol Active Ingredient Is 100% Herbal

Ricola took Plaintiff's deposition on August 31, 2023.  (ECF No. 36-4.)  During her deposition, Plaintiff admitted that she did not know where menthol comes from, how it was used in the Product, or whether menthol is an herbal ingredient.  (ECF No. 36-4, Tr. 66:7-17 ("I don't know how menthol is made or pressed or however it's done, no.") 110:7-10; *see also id.* 90:21-

91:13 ("it's not, that I know of, herbal").)   Despite filing this lawsuit, which alleges that the menthol in the Product is non-herbal, Plaintiff never "actually looked it up to see if it is or not." (*Id.*, Tr. 108:1-7.)

On September 28, 2023, Ricola produced the Gafner Report to Plaintiff's counsel. (Declaration of Sascha Henry ("Henry Decl.") ¶ 2, Ex. 1.)   The Gafner Report was also publicly filed as an exhibit in support of Ricola's opposition to Plaintiff's motion for class certification that same day.  (*See* ECF No. 31-4.)   The Gafner Report established that the menthol active ingredient in the Product is 100% herbal and is obtained directly from mint, either from corn mint (*Mentha canadensis*, syn. *Mentha arvensis* var. *glabrata*, *Mentha arvensis* var. *piperascens*) or from peppermint (*Mentha × piperita*).  (ECF No. 31-4, ¶¶ 7, 28-30, 34-35.)

As Dr. Gafner explained in the report, "the active ingredient identified in the drug facts panel of the Product is herbal and natural and sourced from crystals obtained from corn mint as well as essential oils from corn mint and peppermint." (*Id.* ¶ 45.)  Hence, "Plaintiff's allegation that the Product does not contain herbal ingredients is without any basis in fact. The menthol in the Product, identified as the active ingredient of the Product, is an herbal product." (*Id.* ¶ 34.) Moreover, "[t]he allegation that the therapeutic effect is not provided by peppermint (one the herbs shown in the Ricola herb mixture) is incorrect because the menthol, the active ingredient in the Product clearly indicated in the drug facts panel on the package, is at least in part obtained from peppermint oil." (*Id.* ¶ 36.)

All discovery in this matter closed on October 31, 2023.  (ECF No. 16.)  Plaintiff never submitted any expert report or rebuttal expert report purporting to opine on the nature of the menthol in the Product.  (ECF No. 36, ¶¶ 4-5.)  Plaintiff also did not produce any facts contradicting the herbal nature of the menthol in the Product or otherwise showing that the menthol

in the Product is synthetic.  (ECF No. 63 at p. 3.)  However, even after learning that the menthol in the Product was herbal, Plaintiff did not dismiss the case.

### D. The Court Grants Ricola's Motion For Summary Judgment

On November 17, 2023, while Plaintiff's motion for class certification was still pending, Ricola filed a motion for summary judgment.  (ECF Nos. 34-36.)  Plaintiff filed an opposition to the motion on December 9, 2023 and proceeded to argue (without evidence) that menthol is "not an herb."  (ECF No. 37 at p. 13.)  Three days later, the court denied Plaintiff's motion for class certification, finding *inter alia* that "there is no evidence that anyone shares plaintiff's belief that the menthol in the product is synthetic and worse for her than herbal ingredients."  (ECF No. 41-1, Tr. 20:21-23.)  On December 22, 2023, Ricola filed a reply in support of its motion for summary judgment.  (ECF Nos. 41-42.)

On September 26, 2024, the Court granted Ricola's motion for summary judgment.  (ECF No. 63.)  In its written order, the Court found in relevant part that: (1) "Plaintiff alleges she relied on Defendant's representations and omissions to believe the product served as a cough suppressant and oral anesthetic due to the presence of herbal ingredients"; (2) "Plaintiff  does not dispute the conclusions of Defendant's expert, Stefan Gafner, Ph.D., that the menthol in the product is 100% herbal and the product functions as a cough suppressant and oral anesthetic due to the presence of menthol. Dr. Gafner further determined that the menthol in the product is obtained directly from mint, either from corn mint or from peppermint"; and (3) "The record establishes that Plaintiff paid for and received a cough suppressant and oral anesthetic with an active herbal ingredient." (*Id.* at pp. 6-7.)  In light of these facts, the Court found that Plaintiff lacked a cognizable injury under Article III and dismissed the case for lack of subject matter jurisdiction. (*Id.*) The clerk entered judgment on the same day.  (ECF No. 64.)

III.  **THE COURT HAS COLLATERAL JURISDICTION OVER THIS FEE MOTION DESPITE FINDING THAT PLAINTIFF LACKS ARTICLE III STANDING ON SUMMARY JUDGMENT**

"It is well established that a federal court may consider collateral issues after an action is no longer pending," and the United States Supreme Court has specifically recognized the imposition of attorney's fees as one example of such a "collateral issue." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 136 (1992) ("[T]here are some circumstances in which federal courts may impose attorney's fees or costs, even where the court eventually proves to be without subject-matter jurisdiction.").

Consistent with this principle, the Seventh Circuit has found that even where a district court has determined that is lacks subject matter jurisdiction over the merits, "Article III allows an award of other costs of litigation, including attorneys' fees, incurred in the proceedings." *See Citizens for a Better Env't v. Steel Co.,* 230 F.3d 923, 926 (7th Cir. 2000), *cert. denied*, 532 U.S. 994 (2001) (reversing district court's holding that it lacked jurisdiction to award attorneys' fees after dismissal of action for lack of subject matter jurisdiction, because "courts that lack jurisdiction with respect to one kind of decision may have it with respect to another."); *see also Ross v. City of Mich. City*, No. 3:08-CV-476-TLS, 2011 U.S. Dist. LEXIS 92141, at *5 (N.D. Ind. Aug. 16, 2011) (finding that where the parties had "litigated the present case within the Court's jurisdiction for more than two years" and  "following *Citizens for a Better Environment*", the court "has jurisdiction to resolve the Defendant's claim for attorney's fees and costs accrued in this litigation even though the Court does not have jurisdiction to resolve the substantive claims at issue"); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 887 (9th Cir. 2000) (holding that "the fact that plaintiffs' Complaint was dismissed with prejudice for lack of subject matter jurisdiction did not deprive the district court of jurisdiction to award defendant's attorneys' fees" under applicable state statute).

IV.    **PLAINTIFF'S COUNSEL'S FAILURE TO DISMISS THE CASE AFTER LEARNING THAT PLAINTIFF'S ALLEGATIONS WERE FALSE WARRANTS A FEE AWARD UNDER 28 U.S.C. § 1927**

Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The purpose of § 1927 'is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.'" *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Id.* An award of sanctions under § 1927 also requires a finding of either subjective or objective bad faith. *DalPozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006).

The Seventh Circuit has noted that the objective bad faith standard is met where an attorney pursues "a claim that is without a plausible legal or factual basis and lacking in justification, or pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Group*, 435 F.3d at 720. Moreover, the Seventh Circuit has interpreted the § 1927 standard "***to impose a continuing duty upon attorneys to dismiss claims that are no longer viable***." *Id* (emphasis added).

As such, courts routinely impose § 1927 sanctions where an attorney knew or should have known that the plaintiff's claims lacked merit, but they chose to continue with the litigation anyway. *See Tillman v. New Line Cinema*, 374 Fed. Appx. 664, 666 (7th Cir. 2010) (attorney has a duty to dismiss when "fac[ed] with evidence showing [they] had no chance to prevail"); *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226-27 (7th Cir. 1984) (sanctions properly imposed when an attorney prosecutes a claim that lacks plausible legal or factual basis); *Riddle*, 414 F.3d

at 836 (affirming award of §1927 sanctions against a law firm that "multiplied the proceedings by filing counterclaims and contesting summary judgment"); *Fletcher v. Doig*, No. 13 C 3270, 2022 U.S. Dist. LEXIS 233651, at *32 (N.D. Ill. Dec. 30, 2022) (imposing § 1927 sanctions where "Plaintiffs and [their counsel] either knew or should have known [. . .] that they had no objectively reasonable basis for their claims and that it was unreasonable for them to continue with the suit").

Here, Plaintiff's counsel, Spencer Sheehan, knew or should have known that the claims in the Complaint lacked merit after receiving the Gafner Report on September 28, 2023, which conclusively established that the active ingredient in the Product was 100% herbal.  This is particularly the case where Mr. Sheehan had *no evidence* to the contrary.  Instead of dismissing Plaintiff's claims, however, Mr. Sheehan incredulously asserted in opposing the motion for summary judgment that "menthol is not an herb."  (ECF No. 37 at p. 13.)  Yet, as the Court noted in its order dated September 26, 2024, Plaintiff "presented no testing to support her allegation that the menthol in the product is synthetic," nor "any facts contradicting the herbal nature of the menthol in the product or otherwise showing that the menthol in the product is synthetic" and entirely failed to "dispute the conclusions of Defendant's expert, Stefan Gafner, Ph.D., that the menthol in the product is 100% herbal and the product functions as a cough suppressant and oral anesthetic due to the presence of menthol."  (ECF No. 63 at pp. 3, 6.)

Notably, Mr. Sheehan's conduct in this action is strikingly similar to his conduct in *Dakus v. KLM* in which a New York district court recently imposed sanctions under § 1927 where Mr. "Sheehan opposed [the defendant's] motion to dismiss after it provided evidence demonstrating the allegations *necessary to establish standing were false*" and caused it to unnecessarily incur fees.  *Dakus*, 2024 U.S. Dist. LEXIS 171421, at *10-11 (emphasis added).  There, the court found that despite receiving "clear evidence" that the central allegations

-10-

underlying the plaintiff's claims were false, Mr. Sheehan "improperly relied on the Rule 12(b)(6) standard that a court 'must accept all well pleaded allegations as true'" and continued to pursue the case.  *Id.* at *11.

Here too, despite lacking any evidence to support Plaintiff's allegation that the menthol active ingredient in the Product was non-herbal, Mr. Sheehan again relied on the Rule 12(b) plausibility standard at the pleadings stage to argue that Plaintiff's claims had merit.  (ECF No. 23.)  But, even if Mr. Sheehan truly believed his own argument at the pleadings stage (which is doubtful given that Plaintiff admitted she had no understanding of whether menthol was an herbal ingredient at her deposition), he could not possibly have maintained a good faith belief that Plaintiff could prevail on her claims after receiving the Gafner Report on September 28, 2023 which clearly demonstrated that her claims were false.

Rather, once Mr. Sheehan learned that the active ingredient in Ricoa's Product was herbal, he was duty bound to withdraw Plaintiff's claims as early as possible – and certainly before Ricola was required to needlessly expend further resources in moving for summary judgment. Mr. Sheehan's decision not to do so was objectively unreasonable and warrants the award of Ricola's fees incurred in bringing the motion for summary judgment. *Jolly Group,* 435 F.3d at 720; *Knorr,* 738 F.2d at 226-27; *Riddle*, 414 F.3d at 836; *Fletcher*, 2022 U.S. Dist. LEXIS 233651, at *32; *Tillman*, 374 Fed. Appx. at 666.

## V.   RICOLA SHOULD ALTERNATIVELY BE AWARDED ITS ATTORNEYS' FEES AS THE PREVAILING PARTY UNDER ICFA

ICFA provides that the court may award "reasonable attorney's fees and costs to the prevailing party."  815 ILCS 505/10a(c).  A "prevailing party" encompasses both a prevailing plaintiff and a prevailing defendant.  *Krautsack*, 223 Ill. 2d at 554.  However, a prevailing defendant must make a threshold showing that the plaintiff acted in bad faith before the trial court

may consider other circumstances relevant to the exercise of its discretion in awarding fees and costs. *Id.* at 559. The Seventh Circuit has described "bad faith" actions as those resulting in "harassment, unnecessary delay, ***needless increase in the cost of litigation***, willful disobedience, and recklessly making a frivolous claim." *Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) (emphasis added).

Once the threshold finding has been made, courts generally consider the following non-exhaustive factors when determining whether to award fees to a prevailing defendant: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions. *Krautsack*, 223 Ill. 2d at 554. Each of these factors weighs heavily in favor of Ricola.

First, as discussed at length above, the record reflects that Plaintiff and her counsel acted in bad faith in filing this action without any factual support for her allegation that the Product's active ingredient was non-herbal and pursuing these claims in the face of uncontroverted evidence to the contrary. Indeed, during her deposition on August 31, 2023, Plaintiff admitted that she (i) had no understanding of how menthol was made (ECF No. 36-4, Tr. 66:7-15), (ii) had never attempted to investigate this information (*Id.,* Tr. 66:16-17; 108:1-7); and (iii) was completely unaware of whether or not menthol is an herbal ingredient (*Id.,* Tr. 90:21-91:13). Making matters worse, Plaintiff then continued to litigate her claims even after the Gafner Report conclusively demonstrated that the Product's menthol active ingredient is herbal. Thus, at minimum, Plaintiff's actions in failing to dismiss her claims after receiving this information resulted in a "needless

increase in the cost of litigation" to Ricola by requiring it to file a motion for summary judgment and amounted to bad faith. *Mach*, 580 F.3d at 501.

Second, regarding Plaintiff's ability to pay any fee award, Section 7 of Mr. Sheehan's retainer agreement expressly provides that he will pay "all legal costs and expenses incurred in this matter" on behalf of Plaintiff. (ECF No. 31-1 at p. 7.) Accordingly, any award of fees and costs in connection with this motion would be the obligation of Plaintiff's counsel, not Plaintiff.

Third, an award of fees here would serve public policy and critically deter Mr. Sheehan and other plaintiffs from acting similarly in other cases. As other district courts have recognized, Mr. Sheehan routinely "collects consumer plaintiffs through social media advertising in whose name he can file and re-file complaints in jurisdictions around the nation" in an effort to exert settlement pressure on defendants. *Durant*, 2024 U.S. Dist. LEXIS 117627, at *10. "In this manner, Sheehan and his associates [] pursue nationwide defendants [like Ricola] around the country in court after court seeking a different result from the same claims." *Id.* In so doing, plaintiffs (like Plaintiff here), routinely make contact with Mr. Sheehan in response to his online advertising and rely on his representations in bringing meritless claims which ultimately provide no benefit to consumers – yet still result in the imposition of fees on innocent defendants. *See Guzman*, 2023 U.S. Dist. LEXIS 84556, at *8 (noting that "[m]any of the complaints have suffered the judicial equivalent of a crash landing, or perhaps an explosion on the launch pad").

Illustratively, during the pendency of this action, Mr. Sheehan brought *six* other lawsuits against Ricola, including: (1) the *Jordan* Action; (2) U.S. District Court for the Middle District of Florida, Case No. 6:23-cv-01709, entitled *Wilmot v. Ricola USA, Inc.*; (3) U.S. District Court for

the District of Connecticut, Case No. 3:2024-cv-00734, entitled *Cowit et al. v. Ricola USA Inc.*[2]; (4) U.S. District Court for the Southern District of New York, Case No. 7:2022-cv-10369, entitled *Singo v. Ricola USA, Inc.*; (5) U.S. District Court for the Northern District of California, Case No. 5:2023-cv-02983, entitled *Prescott v. Ricola USA, Inc.*; and (6) U.S. District Court for the Eastern District of New York, Case No. 2:2024-cv-04107, entitled *Mandil et al. v. Ricola USA Inc.*

The *Singo* case was dismissed on preemption grounds.  *See Singo v. Ricola USA, Inc.*, No. 7:2022-cv-10369, 2024 U.S. Dist. LEXIS 9311, at *14 (S.D.N.Y. Jan. 18, 2024) (alleging that Ricola's "Green Tea with Echinacea Cough Drops" misled the plaintiff to believe that green tea and echinacea were the product's active ingredient, instead of menthol).  And the *Wilmot* and *Cowit* actions were voluntarily dismissed by Mr. Sheehan before any pleadings challenges could be heard (but not until after Ricola had unnecessarily incurred fees and costs in its defense).

The *Jordan* and *Prescott* actions were <u>nearly identical</u> to the claims asserted in this action and involved the exact same Product.  As this Court is aware, the *Jordan* action (which was filed in this same district) was voluntarily dismissed after the plaintiff in that action twice failed to sit for deposition.  The *Prescott* case was dismissed after the court granted Ricola's motion for judgment on the pleadings.  *See Prescott v. Ricola USA, Inc.*, No. 23-cv-02983-MMC, 2024 U.S. Dist. LEXIS 78892, at *2 (N.D. Cal. Apr. 30, 2024).

In view of this pattern of abusive litigation conduct, an award of fees in this action would serve the public interest by chilling other litigants from pursuing meritless claims, alleviating unnecessary burdens on the court system, and preventing the unfair imposition of fees and costs on innocent defendants.

---

[2] Mr. Sheehan's use of confidential information obtained in this lawsuit in drafting the Complaint in the *Cowit* action also violated the stipulated protective order in this action which forced Ricola to bring a motion for contempt and sanctions that is separately pending.  (*See* ECF Nos. 52-54.)

Fourth, through its summary judgment motion, Ricola sought the determination of a number of important legal issues related to the ICFA statute including: whether a plaintiff is required to come forward with evidence of a defendant's intent to state a claim under ICFA and whether claims premised on an over-the-counter drug product's FDA-mandated label disclosures are expressly preempted by the Food, Drug, and Cosmetic Act.

Finally, the relative merits of the parties' positions also weigh heavily in favor of an award of fees.  Plaintiff's Complaint alleged six claims.  (*See generally* Compl.)  Judge Myerscough dismissed four of these claims at the pleadings stage.  (ECF No. 23.)  Plaintiff's remaining claims were dismissed on summary judgment after the Court found that Plaintiff had not even established that she had Article III standing in this case.  (ECF No. 64.)  Moreover, Plaintiff never submitted any evidence to substantiate her claims regarding the Product's active ingredient.

Accordingly, in view of these factors, it is exceptionally fair that Ricola be awarded its fees incurred in connection with being forced to submit a motion for summary judgment in this action.

## VI.    THE COURT SHOULD AWARD THE ENTIRE LODESTAR CALCULATION

Courts generally determine the reasonableness of attorneys' fees using the "lodestar" method.  *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011).  Under the lodestar method, attorney's fees are calculated as "the hours reasonably expended multiplied by the reasonable hourly rate." *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012).  "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award."  *Pickett*, 664 F.3d at 639.  Here, both the hours expended and hourly rates are reasonable in light of the prevailing market rates and complexity of the litigation.

### A.    The Hourly Rates of Ricola's Counsel Are Reasonable

The Seventh Circuit has defined a reasonable hourly rate as one that is "derived from the market rate for the services rendered." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003).  "A

-15-

reasonable hourly rate should reflect the attorney's market rate, defined as the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (quotations omitted).  "The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

Here, the claims asserted by Plaintiff against Ricola necessitated substantial legal services, which ultimately led to Ricola's prevailing on all causes of action in the litigation.  Sascha Henry, a partner at Sheppard Mullin, has submitted a declaration in support of this motion and is familiar with Sheppard Mullin's practice in setting the billing rates of its attorneys and has actively participated in setting those rates.  (Henry Decl. ¶ 3.)   The rates at Sheppard Mullin are adjusted from time to time, typically on an annual basis.  (*Id*.)  The primary factors determining how an individual attorney's rate is set and adjusted are the experience, skill and reputation of the attorney, and market conditions (including rates charged by attorneys of comparable experience, skill and reputation at other firms capable of handling matters of a similar size and complexity).  (*Id*.)

The rates set forth in the Henry Declaration accurately reflect the hourly rates charged by Sheppard Mullin for the attorneys and other professional staff that worked on this matter.  (*Id.* ¶ 4.)  The billing rates charged by Sheppard Mullin and for its attorneys and other professional staff, and specifically those who worked on this matter, are comparable to – and typically less than – both the quoted rates and the rates charged by attorneys of comparable skill, experience, and reputation at other firms capable of handling matters of a similar complexity, including this case. (*Id.* at ¶ 5.)

Sheppard Mullin's procedure for recording and billing attorney time is as follows: The attorney (or the attorney's secretary) manually enters his/her time directly into Sheppard Mullin's computerized billing system. (*Id.* at ¶ 6.)  The billing entries set forth the total time spent each day to the tenth of an hour, the date the services were performed, and a description of the services rendered. (*Id.*)  At the beginning of the following month, the time entered is then reviewed by the billing partner for accuracy before being sent to the client for payment. (*Id.*)

During the course of this matter, Ms. Henry personally reviewed the monthly client billings for accuracy, reasonableness of time spent on tasks, efficiency and reasonableness of expenses charged. (*Id.* at ¶ 7.)  After review and making any adjustments, billing statements were sent to Ricola for payment and were actually paid by Ricola.  (*Id.*)

### B.    The Hours Spent Are Reasonable

While Ricola could properly seek an award fees and costs for the entirety of this litigation, Ricola seeks to recover only a limited portion of its attorneys' fees incurred as a direct result of Plaintiff and her counsel's bad faith in failing to dismiss the Complaint after receiving the Gafner Report in September 2023.  Specifically, as set forth in Exhibit 2, Ricola seeks a total of $60,029.00 in attorneys' fees incurred between September 29, 2023 and December 21, 2023.  (Henry Decl. ¶¶ 4, 8, Ex. 2.)

These entries reflect less than eighty hours of attorney time spent in connection with tasks such as: reviewing the court's local rules and procedures, researching and developing arguments for Ricola's motion for summary judgment, analyzing the relevant expert reports and evidence to assess arguments for the motion, drafting and revising the motion for summary judgment and supporting documents, preparing supporting exhibits, reviewing and analyzing plaintiff's opposition and supporting documents, and drafting the reply brief and supporting declaration. Moreover, as reflected in Exhibit 2, over fifty hours of this work was performed by the most junior

member of the litigation team (which further resulted in a lower billing rate). (Henry Decl. ¶¶ 4, 8, Ex. 2.)

Given the narrow category of fees requested, and the low number of hours spent, Ricola's request for an award of $60,029.00 is exceptionally reasonable and the Court should therefore award the entire lodestar amount.

**VII.   CONCLUSION**

For the foregoing reasons, Ricola respectfully requests that the Court grant its motion for fees and award $60,029.00 against Plaintiff and her counsel, Spencer Sheehan.

Dated:  October 10, 2024                    Respectfully submitted,

By:  */s/ Sascha Henry*
David M. Poell (Ill. State Bar No. 6302765)
Sheppard Mullin Richter & Hampton LLP
321 N. Clark St., 32nd Flr.
Chicago, Illinois 60602
Telephone:  (312) 499-6349
Facsimile:  (312) 499-6301
E mail: dpoell@sheppardmullin.com

Paul Garrity (N.Y. State Bar No. 2756419)
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza,
New York, NY 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701
E mail: pgarrity@sheppardmullin.com

Sascha Henry (Cal. State Bar No. 191914)
Khirin A. Bunker (Cal. State Bar No. 329314)
Sheppard Mullin Richter & Hampton LLP
333 S. Hope St., 43rd Flr.
Los Angeles, CA 90071-1422
Telephone: (213) 620-1780
Facsimile: (213) 620-1398
E mail: shenry@sheppardmullin.com
        kbunker@sheppardmullin.com

*Counsel for Defendant Ricola USA, Inc.*

## **CERTIFICATE OF COMPLIANCE**

This Ricola's Motion for Attorneys' Fees complies with the type volume limitations of Local Rule 7.1(B)(4) because it contains 5,786 words.

By: */s/ Sascha Henry*

## <u>CERTIFICATE OF SERVICE</u>

I, Sascha Henry, an attorney, hereby certify that, on October 10, 2024, a copy of the foregoing document was filed via this Court's CM/ECF electronic filing system, which effects service on all counsel of record in this matter.

Dated:  October 10, 2024

Respectfully submitted,

By: *<u>/s/ Sascha Henry</u>*

Sascha Henry
*Counsel for Defendant Ricola USA, Inc.*