**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| Lacie Davis, individually and on behalf of all others similarly situated,  Plaintiff,  - against -  Ricola USA, LLC,  Defendant | 3:22-cv-03071-CRK-KLM |

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion for Attorneys' Fees

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ........................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 1

LEGAL STANDARDS ................................................................................................................ 2

ARGUMENT ................................................................................................................................ 3

I.     815 ILCS 505/10a(c) FACTORS FAIL TO SUPPORT FEE
AWARD TO PREVAILING DEFENDANT ................................................................... 3

     A.     No Ability for Plaintiff and Plaintiff's Counsel to
Unilaterally Terminate Case ................................................................................. 3

     B.     815 ILCS 505/10a(c) Applies Differently to Plaintiffs and
Defendants ............................................................................................................. 5

     C.     Not Succeeding Not Tantamount to "Bad Faith" .................................................. 5

     D.     A Plaintiff's Lack of Knowledge About Complex Legal
Issues is the Norm ................................................................................................. 6

     E.     No Basis to Assume Plaintiff's Counsel did not Act at
Plaintiff's Directive ............................................................................................... 7

     F.     "Relative Merits" Weighs Against Punitive Fee Motion ...................................... 8

II.     DETERRENCE EFFECT FOR OTHER CASES
INCONSISTENT WITH ALLOWANCE UNDER ICFA ............................................... 9

III.     GAFNER REPORT WAS IRRELEVANT TO PLAINTIFF'S
LEGAL THEORY .......................................................................................................... 10

IV.     NO LEGITIMATE QUESTIONS ABOUT PLAINTIFF'S
PURCHASE OF RICOLA'S LOZENGES .................................................................... 13

CONCLUSION ........................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Bell v. Publix Super Markets, Inc.*,
    982 F.3d 468 (7th Cir. 2020) .................................................................................. 11, 13

*Benson v. Newell Brands, Inc.*,
    No. 19-cv-6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ................................. 4

*Brewer v. Protexall, Inc.*,
    50 F.3d 453 (7th Cir. 1995) ....................................................................................... 3

*Cowit v. Ricola USA Inc.*,
    No. 24-cv-00734 (D. Conn. Apr. 18, 2024) .......................................................... 9, 10

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
    No. 22-cv-7962, 2024 WL 4265646 (S.D.N.Y. Sept. 23, 2024) ............................ 13

*Davidson v. Canteen Corp.*,
    No. 89-cv-9105, 1990 WL 251857 (N.D. Ill. Dec. 27, 1990) ................................. 9

*Davis v. Ricola USA, Inc.*,
    No. 22-cv-3071, 2022 WL 4131588 (C.D. Ill. Sept. 12, 2022) ....................... passim

*Davis v. Ricola USA, Inc.*,
    No. 22-cv-3071, 2024 WL 4311640 (C.D. Ill. Sept. 26, 2024) ........................... 1, 8

*Durant v. Big Lots, Inc.*,
    No. 23-cv-561, 2024 WL 3321879 (M.D. Fla. July 3, 2024) ................................. 10

*Frietsch v. Refco, Inc.*,
    No. 92-cv-6844, 1994 WL 10014 (N.D. Ill. Jan. 13, 1994) .................................... 7

*Gordon v. United Airlines, Inc.*,
    246 F.3d 878 (7th Cir. 2001) ..................................................................................... 8

*Haskell v. Blumthal*,
    204 Ill. App. 3d 596, 598 (1990) ............................................................................... 3

*In re AM Int'l, Inc. Sec. Litig.*,
    108 F.R.D. 190 (S.D.N.Y. 1985) ............................................................................... 7

*In re Caremark Int'l, Inc. Sec. Litig.*,
    No. 94-cv-4751, 1996 WL 351182 (N.D. Ill. June 24, 1996) ................................. 6

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*,
    No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) .............................. 4

*Jordan v. Ricola USA, Inc.*,
    No. 23-cv-03212 (C.D. Ill. June 18, 2023) ......................................................... 9, 10

*Kolbe & Kolbe Health & Welfare Ben. Plan v. Med. Coll. of Wisconsin, Inc.*,
    657 F.3d 496 (7th Cir. 2011) ............................................................................................... 2

*Kraft, Inc. v. F.T.C.*,
    970 F.2d 311 (7th Cir. 1992) ............................................................................................. 11

*Krautsack v. Anderson*,
    861 N.E.2d 633 (2006) ............................................................................................ 2, 4, 5, 7

*Latuga v. Hooters, Inc.*,
    No. 93-cv-7709, 1996 WL 164427 (N.D. Ill. Mar. 29, 1996) ............................................... 6

*Mach v. Will Canty Sheriff*,
    580 F.3d 495 (7th Cir. 2009) ............................................................................................... 4

*Mandil v. Ricola USA, Inc.*,
    No. 24-cv-04107 (E.D.N.Y. June 8, 2024) ..................................................................... 9, 10

*Meredith v. Navistar Int'l Trans. Corp.*,
    935 F.2d 124 (7th Cir.1991) ................................................................................................ 3

*Prescott v. Ricola USA, Inc.*,
    No. 23-cv-02983, 2024 WL 1892290 (N.D. Cal. Apr. 30, 24) ....................................... 9, 10

*Remijas v. Neiman Marcus Group, LLC*,
    794 F.3d 688 (7th Cir. 2015) ............................................................................................. 14

*Singo v. Ricola USA, Inc.*,
    No. 22-cv-10369, 2024 WL 196709 (S.D.N.Y. Jan. 18, 2024) ..................................... 9, 10

*Sprague v. Cent. States, Se. & Sw. Areas Pension Fund*,
    No. 99-cv-7726, 2001 WL 1914700 (N.D. Ill. Nov. 6, 2001) .............................................. 3

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966) ............................................................................................................. 7

*Tucker v. Williams*,
    682 F.3d 654 (7th Cir. 2012) ............................................................................................. 10

*Warmack-Stillwell v. Christian Dior, Inc.*,
    No. 22-cv-4633, 2023 WL 4825413 (N.D. Ill. July 27, 2023) ............................................. 2

*Wetzler v. Illinois CPA Soc'y & Found. Ret. Income Plan*,
    No. 07-cv-1326, 2008 WL 11366178 (C.D. Ill. Dec. 11, 2008) ......................................... 14

*Wilmot v. Ricola USA, Inc.*,
    No. 23-cv-01709 (M.D. Fla. Sept. 6, 2023) .................................................................... 9, 10

**Statutes**

28 U.S.C. § 1927 ..................................................................................................................... 10

815 ILCS 505/1 ......................................................................................................................... 1

815 ILCS 505/10a(c) .................................................................................................... 2, 3

**Regulations**

21 C.F.R. § 201.61 ........................................................................................................ 6

21 C.F.R. § 201.61(b) ................................................................................................ 6, 8

21 C.F.R. § 356.55(a) .................................................................................................... 6

**Rules**

Fed. R. Civ. P. 11 ........................................................................................................ 10

Fed. R. Civ. P. 41(a)(1)(A)(i) ........................................................................................ 4

Fed. R. Civ. P. 41(a)(1)(A)(ii) ....................................................................................... 4

## INTRODUCTION

Lacie Davis ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by Ricola USA, Inc. ("Defendant") for Attorneys' Fees. ECF No. 66.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action on May 8, 2022, alleging that the representation "Made With Swiss Alpine Herbs" was misleading, as it led her to expect "the lozenges' therapeutic effect was based on [] herbal ingredients," despite the Product's "therapeutic effect [] not provided by any of the herbs pictured on the front label." ECF No. 1, Complaint ("Compl.") ¶¶ 1-2, 17.

Following Defendant's Motion to Dismiss, filed on June 21, 2022 (ECF No. 5), the Court permitted Plaintiff's consumer fraud claims arising under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, to proceed because "the omission of any front label reference to the active menthol ingredient" suffices for an ICFA claim. *Davis v. Ricola USA, Inc.*, No. 22-cv-3071, 2022 WL 4131588, at *3 (C.D. Ill. Sept. 12, 2022). The Court also denied dismissal of the unjust enrichment claim based on its "f[inding] that Ms. Davis state[d] a claim under the ICFA." *Davis*, 2022 WL 4131588, at *6.

On September 26, 2024, the Court entered an order granting Defendant's Motion for Summary Judgment, determining that "Plaintiff suffered no injury and thus lacks standing." *Davis v. Ricola USA, Inc.*, No. 22-cv-3071, 2024 WL 4311640, at *3 (C.D. Ill. Sept. 26, 2024); ECF No. 63.

Having failed in seeking to hold Plaintiff's Counsel in contempt, and require payment of fees based on its own failure to redact its Expert Report, before the Court dismissed this case, Defendant again seeks attorneys' fees, but now for those incurred between September 29, 2023 and December 21, 2023, because of "counsel's failure to dismiss the case after learning that

Plaintiff's allegations were false."[1] Def. Mem. at 9-10. For multiple reasons, like its moot contempt request, this Motion should be denied.

## LEGAL STANDARDS

The ICFA fee provision states that "in any action brought by a person under this Section, the Court…may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." *Warmack-Stillwell v. Christian Dior, Inc.*, No. 22-cv-4633, 2023 WL 4825413, at *1 (N.D. Ill. July 27, 2023) quoting 815 ILCS 505/10a(c).

Since the ICFA "states that a prevailing party 'may' receive attorneys' fees," it follows that "such awards are left to the discretion of the trial court." *Warmack-Stillwell*, 2023 WL 4825413, at *1 citing *Krautsack v. Anderson*, 861 N.E.2d 633, 643 (2006).

In determining whether to enter an award of attorneys' fees, the Court must "examine the fee-shifting provision in light of the entire statute, keeping in mind the subject the statute addresses, the legislature's apparent objective in adopting the statute, and the evils sought to be remedied." *Krautsack*, 861 N.E.2d at 645.

Some courts have observed that the dichotomy between "good faith" suits and suits brought to harass "did not account for the many cases that fell into the gray area between the two, noting that a party's argument 'may be a clear loser without necessarily being offered in bad faith or with harassing intent.'" *Kolbe & Kolbe Health & Welfare Ben. Plan v. Med. Coll. of Wisconsin, Inc.*, 657 F.3d 496, 501 (7th Cir. 2011).

---

[1] In support of its motion, Defendant submitted the Declaration of Sascha Henry ("Henry Decl."), ECF No. 67, a copy of an email from Ricola to Plaintiff's counsel providing the Expert Report of Stefan Gafner, P.h.D. (the "Gafner Report"), Ex. 1, ECF No. 67-1, a copy of a summary of all attorneys' fees incurred by Ricola between September 29, 2023 and December 21, 2023, related to the briefing on Ricola's motion for summary judgment, Ex. 2, ECF No. 67-2, a copy of Sascha Henry's profile on Sheppard Mullin's website, Ex. 3, ECF No. 67-3, a copy of Paul Garrity's profile on Sheppard Mullin's website, Ex. 4, ECF No. 67-4, and a copy of Khirin Bunker's profile on Sheppard Mullin's website, Ex. 5, ECF No. 67-5.

2

Though the Seventh Circuit has applied different tests, "the bottom-line question [under any approach] is essentially the same: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Meredith v. Navistar Int'l Trans. Corp.*, 935 F.2d 124, 128 (7th Cir.1991).

## ARGUMENT

I. **815 ILCS 505/10A(C) FACTORS FAIL TO SUPPORT FEE AWARD TO PREVAILING DEFENDANT**

While the Court may consider five factors in determining whether fees should be awarded, "(1) the degree of the opposing part's culpability or bad faith; (2) ability to satisfy an award of fees; (3) the deterring effect of an award on the filing of unfounded claims; (4) whether a party seeking fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions," there is a "difficulty in envisioning a circumstance arising under the [Consumer Fraud] Act where fees should be awarded a defendant absent bad faith on the part of a plaintiff." Def. Mem. at 16 citing 815 ILCS 505/10a(c); *but see Sprague v. Cent. States, Se. & Sw. Areas Pension Fund*, No. 99-cv-7726, 2001 WL 1914700, at *1 (N.D. Ill. Nov. 6, 2001) citing *Brewer v. Protexall, Inc.*, 50 F.3d 453, 458 (7th Cir. 1995); *Krautsack*, 861 N.E.2d at 644 citing *Haskell v. Blumthal*, 204 Ill. App. 3d 596, 598 (1990) (noting the "difficulty in envisioning a circumstance arising under the [Consumer Fraud] Act where fees should be awarded a defendant absent bad faith on the part of a plaintiff").

   A.   <u>No Ability for Plaintiff and Plaintiff's Counsel to Unilaterally Terminate Case</u>

Defendant's allegations that Plaintiff and Plaintiff's Counsel acted in "bad faith" in "maintaining" this action disregards that "[P]laintiff [could not] dismiss [the] action without a court order by filing: a notice of dismissal" is apparent because Defendant filed its answer on October 14, 2022. Def. Mem. at 15-16 citing *Mach v. Will Canty Sheriff*, 580 F.3d 495, 501 (7th

3

Cir. 2009) and *Krautsack*, 861 N.E.2d at 644; Fed. R. Civ. P. 41(a)(1)(A)(i); ECF No. 15.

On December 13, 2023, the Court denied Plaintiff's Motion for Class Certification. *See* ECF No. 39. If Defendant were concerned with incurring attorney fees, it could have, but did not, tendered a stipulation of dismissal, with prejudice, following denial of the Motion for Class Certification. Fed. R. Civ. P. 41(a)(1)(A)(ii). At no point, however, did it do so. Had it done so, Defendant would not have been required to make a motion for summary judgment and would not have "incur[red] attorneys' fees in filing" such a motion. Def. Mem. at 5.

Following denial of class certification, the value of Plaintiff's individual claim, based on "price-premium damages," "[a] damages calculation that reflects the difference between the market price of the product as represented and as delivered," was likely significantly less than the purchase price of "approximately no less than no less than $3.99 per 21 lozenges." ECF No. 28 quoting *Benson v. Newell Brands, Inc.*, No. 19-cv-6836, 2021 WL 5321510, at *5 (N.D. Ill. Nov. 16, 2021) and *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *57 (N.D. Ill. Mar. 31, 2017); ECF No. 1 at ¶ 32.

To even countenance such a significant fee award, where Plaintiff's individual damages may not even reach ten dollars, with no option to certify a class, is inequitable, especially where the other party does not offer to stipulate to a full dismissal.

That Plaintiff's Counsel would have, with the consent of Plaintiff, taken this opportunity, is supported by the actions of Plaintiff's Counsel in *Jordan*. There, when the Plaintiff could not accommodate a deposition, her Counsel agreed, even broached the issue of a full dismissal with Defendant's Counsel, then volunteered to pay, and did pay, the legitimate, incurred costs for court reporter personnel.

4

Indeed, after the proceedings held before District Judge Lawless on December 13, 2023 and oral arguments on the issue of certification, Plaintiff effectively ceased litigating this action.

Out of the dozens of filings made since that date, the only filings from Plaintiff were oppositions to motions, several unnecessary, filed by Defendant, along with numerous requests from Plaintiff's Counsel to stay further trial preparations in light of the pending summary judgment decision.

### B.  815 ILCS 505/10a(c) Applies Differently to Plaintiffs and Defendants

Courts have recognized how "different standards should be used for plaintiffs and defendants," in assessing fees under the ICFA, since "the amounts at issue [in small claims type class actions] are not normally large enough to sustain litigation." *Krautsack*, 861 N.E.2d at 644.

This means that if attorneys for plaintiffs, not just plaintiffs, "are routinely subject to liability for the defendants' fees and costs, such actions would be deterred, defeating the purpose of the Act." *Krautsack*, 861 N.E.2d at 644.

In this circumstance, it means that plaintiffs, with colorable claims, get, and should get, the benefit of the doubt, which applies here, based on this case, not on a list of other cases involving Plaintiff's Counsel.

### C.  Not Succeeding Not Tantamount to "Bad Faith"

Even though Plaintiff was not successful, her action "sought to benefit all consumers," by trying to hold companies to what the law requires, through long-established legal requirements, consistent with the "honesty and fair dealing" embodied by the Federal Food Drug and Cosmetic Act ("FFDCA") and the identical Illinois Food, Drug and Cosmetic Act ("IFDCA").

Granting Defendant's fees would be an invitation to reward companies who decides it is worthwhile to "roll the dice" and not to adequately label their OTC products, through failing to

affix an adequate "statement of identity," with two parts. 21 C.F.R. § 356.55(a) and 21 C.F.R. § 201.61. The first is "the established name of the drug, if any there be," menthol, followed by "an accurate statement of [its] general pharmacological category." 21 C.F.R. § 201.61(b).

That the Court granted summary judgment is not a license for Defendant to not only get a "free pass," but be rewarded, for failing to conform its lozenges to every other competitor who has to declare "menthol" on their front labels.

D.     A Plaintiff's Lack of Knowledge About Complex Legal Issues is the Norm

That "Plaintiff admitted that she [] had no understanding of how menthol was made, [] had never attempted to investigate this information, and [] was completely unaware of whether or not menthol is an herbal ingredient," is irrelevant. Def. Mem. at 16 quoting ECF No. 36-4, Tr. 66:7-15, 16-17, 108:1-7, 90:21-91:13.

First, the fact remains that the "therapeutic effect" of Ricola's lozenges "[wa]s not provided by any of the herbs pictured on the front label." *Davis*, 2022 WL 4131588, at *6.

Second, since "The modern trend [] to require little in the way of factual knowledge on the part of the class representative," to equate this with awarding fees against a losing plaintiff and plaintiff's counsel goes beyond what other courts have done. *Latuga v. Hooters, Inc.*, No. 93-cv-7709, 1996 WL 164427, at *5 (N.D. Ill. Mar. 29, 1996).

Courts have even eliminated a knowledge threshold, noting that "[c]lass actions do not impose a higher standard upon named plaintiffs" than in non-class litigation, where "[t]he pre-filing factual investigation is typically the responsibility of the attorney, not the client." *In re Caremark Int'l, Inc. Sec. Litig.*, No. 94-cv-4751, 1996 WL 351182, at *5 (N.D. Ill. June 24, 1996)

In "complex litigations such as [class] actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance on the

6

expertise of counsel is to be expected." *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 196-97 (S.D.N.Y. 1985) citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372-74 (1966) (finding that complaint in a derivative suit was properly verified even though the party signing the complaint was unable to read)

Since "[plaintiffs] lack of knowledge about a case does not [even] represent solid ground upon which to deny class certification," it surely does not warrant imposing attorney fees against them and their counsel, should they not succeed. *Frietsch v. Refco, Inc.*, No. 92-cv-6844, 1994 WL 10014, at *6 (N.D. Ill. Jan. 13, 1994) (finding that "class certification should not be denied because the named plaintiffs lack detailed knowledge of the allegations in the complaint.")

Furthermore, as the "front label prominently notes only the presence of 'Swiss Alpine Herbs,'" and the Product, "unlike its competitors, does not disclose on its [] front label the presence or function of menthol," Plaintiff's understanding of "menthol" or whether it is considered herbal is irrelevant. *Davis*, 2022 WL 4131588, at *6. Indeed, Plaintiff had no reason to believe the Product contained menthol, other than viewing the fine-print back label or Dr. Gafner's report, none of which are required for a "reasonable consumer."

E.     <u>No Basis to Assume Plaintiff's Counsel did not Act at Plaintiff's Directive</u>

Defendant's argument, that "any award of fees and costs in connection with this motion would be the obligation of Plaintiff's counsel, not Plaintiff," is made without knowing whether Plaintiff's Counsel acted at Plaintiff's directives. *Krautsack*, 861 N.E.2d at 644.

Defendant's assertion, that the fourth factor, whether it sought to "resolv[e] a significant legal question," applies since it sought determination of "whether a plaintiff is required to come forward with evidence of a defendant's intent to state a claim under the ICFA," and "whether claims premised on an over-the-counter drug product's FDA-mandated label disclosures are

7

expressly preempted," are hardly unique, but mundane issues courts resolve regularly. Def. Mem. at 19.

Moreover, the Court's Order did not reach scienter or preemption, entering summary judgment because "Plaintiff paid for and received a cough suppressant and oral anesthetic with an active herbal ingredient," and therefore "has not shown that she suffered any cognizable injury." *Davis*, 2024 WL 4311640, at *3.

To grant a fee request where the successful party's flagship product, unlike all other competitors, fails to include "the established name of the drug, if any," menthol, on the front label, would be inconsistent with encouraging companies to represent their products lawfully and truthfully, irrespective of whether a plaintiff is successful in court. 21 C.F.R. § 201.61(b).

F.    "Relative Merits" Weighs Against Punitive Fee Motion

Lastly, Defendant argues that the "relative merits of the parties' positions also weigh heavily in favor of an award of fees," because Plaintiff did not "establish[] that she had Article III standing in this case," and "never substantiated her claims regarding the Product's active ingredient." Def. Mem. at 19 citing ECF Nos. 23, 64.

First, this continues to distort the Complaint's allegations, because the "active ingredient" was not a "Swiss Alpine Herb," but "menthol," which, as Defendant's multiple contempt motions acknowledge, is not from Switzerland, nor any alpine territory.

Second, this ignores that "[s]ummary judgment is a hurdle high enough," and that dismissal is hardly tantamount to having had no chance of success. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 896 (7th Cir. 2001).

Third, that two of Plaintiff's claims survived Defendant's Motion to Dismiss, including her ICFA claim, the claim upon which all her other causes of actions depended, supports the idea that

there was no "significant disparity between the strength of the [Defendant's] position and that of the [Plaintiff]." Def. Mem. at 19; *see Davidson v. Canteen Corp.*, No. 89-cv-9105, 1990 WL 251857, at *1 (N.D. Ill. Dec. 27, 1990).

## II. DETERRENCE EFFECT FOR OTHER CASES INCONSISTENT WITH ALLOWANCE UNDER ICFA

In again seeking fees, Defendant reveals its true purpose, unrelated to this case, and Plaintiff Davis' unsuccessful ICFA claim, but demanding an "award of fees [to] serve the public interest by chilling other litigants from pursuing meritless claims, alleviating unnecessary burdens on the court system, and preventing the unfair imposition of fees and costs on innocent defendants." Def. Mem. at 17-19 citing *Jordan v. Ricola USA, Inc.*, No. 23-cv-03212 (C.D. Ill. June 18, 2023), *Wilmot v. Ricola USA, Inc.*, No. 23-cv-01709 (M.D. Fla. Sept. 6, 2023), *Cowit v. Ricola USA Inc.*, No. 24-cv-00734 (D. Conn. Apr. 18, 2024), *Singo v. Ricola USA, Inc.*, No. 22-cv-10369, 2024 WL 196709, at *2 (S.D.N.Y. Jan. 18, 2024), *Prescott v. Ricola USA, Inc.*, No. 23-cv-02983, 2024 WL 1892290, at *1 (N.D. Cal. Apr. 30, 24), and *Mandil v. Ricola USA, Inc.*, No. 24-cv-04107 (E.D.N.Y. June 8, 2024).

First, in all these cases, the labeling in question was contrary to the law, notwithstanding two of the above courts granted dismissal, finding consumers would not be misled. It is audacity for Ricola to describe itself as "innocent defendant," who, unlike every other seller of menthol lozenges, fails to disclose the presence of menthol on its front label, which the law has required for decades.

Second, in several of the cases cited, Plaintiff's Counsel never entered so much as a formal appearance, nor did Plaintiff Davis have any role.

Third, none of those cases were deemed "frivolous," revealing this "fee request," like the previous contempt motion, and emergency motion, for what they really are, a punitive attempt to

9

chill advocacy, without a lawful purpose.

Fourth, Defendant's assertion that "an award of fees here would serve public policy and critically deter Mr. Sheehan and other plaintiffs from acting similarly in other cases," disregards that the Court's discretion under the ICFA fee-shifting provision is not "a grant of authority to do good, rectify shortcomings of the common law…or undermine the American rule on the award of attorneys' fees to the prevailing party." Def. Mem. at 17 citing *Durant v. Big Lots, Inc.*, No. 23-cv-561, 2024 WL 3321879, at *4 (M.D. Fla. July 3, 2024);[2] *Tucker v. Williams*, 682 F.3d 654, 661-62 (7th Cir. 2012) (finding imposition of sanctions and fees under Rule 11, 28 U.S.C. § 1927, and a court's "inherent power" "in the interest of 'fairness'" "precisely the sort of sanction that is outside the court's inherent power").

Fifth, notwithstanding the absence of a punitive purpose from the ICFA's fee-shifting provision, the other actions were filed prior to this Court's Order granting Defendant summary judgment. Def. Mem. at 17-19; ECF No. 63.

Accordingly, an award of attorneys' fees would have no "deterrent effect" on Plaintiff Davis, who was not a party to any of those cases, the other attorneys in those actions where the cases were dismissed, several voluntarily without a court order, nor Plaintiff's Counsel. *See, e.g.*, *Jordan*, No. 23-cv-03212; *Wilmot*, No. 23-cv-01709; *Cowit*, No. 24-cv-00734; *Mandil*, No. 24-cv-04107; *Singo*, 2024 WL 196709 (dismissed), *Prescott*, 2024 WL 1892290 (same).

## III.   GAFNER REPORT WAS IRRELEVANT TO PLAINTIFF'S LEGAL THEORY

Defendant's assertions about how Plaintiff's Counsel "should have known that the claims in the Complaint lacked merit after receiving the Gafner Report on September 28, 2023," is wrong for several reasons. Def. Mem. at 14.

---

[2] A notice of appeal has been filed in *Durant*.

First, Plaintiff's allegations were based on the theory that the "Swiss Alpine Herbs," prominently pictured on the front label, were not the lozenges' "active ingredients." The Gafner Report was irrelevant to whether the Product's "active ingredient" was a "Swiss Alpine Herb." In fact, the Gafner Report essentially admitted the provenance of that particular ingredient was not the European continent, but a certain "subcontinent."

Second, to characterize menthol as "100% herbal" is a stretch, because what distinguished the Ricola "Made With Swiss Alpine Herbs" lozenges from its lower priced competitors was that "it is not specifically saying that it has menthol. It is claiming that it is all Swiss Alpine herbs." Davis Tr. 111:24-112:1.

Even Defendant's attempts to demonstrate, with the Gafner Report, that some of the front label herbal ingredients were the source for its menthol, were unsuccessful, by admitting that the Product's "natural menthol crystals are produced from corn mint essential oil," not peppermint. Gafner Report ¶ 28.

However, even assuming the "Made With Swiss Alpine Herbs" representation was technically accurate by Defendant's own standards, such "literally true claims may deceive" where, as here "[they] [] have misleading implications." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 479 (7th Cir. 2020); *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 322 (7th Cir. 1992).

What distinguished the Ricola "Made With Swiss Alpine Herbs" lozenges from its lower priced competitors was that "it is not specifically saying that it has menthol. It is claiming that it is all Swiss Alpine herbs." Davis Tr. 111:24-112:1.

That menthol comes from herbal ingredients is of no significance, because this applied to the "Competitor herbal lozenges from Meijer, Target, Dollar General, and Walmart." Compl. ¶ 26.

11

As noted by District Judge Myerscough in her denial of Defendant's motion to dismiss, "Ricola, unlike its generic competitors, d[id] not disclose on its lozenges' front label the presence or function of menthol," but rather "prominently note[d] only the presence of 'Swiss Alpine Herbs,'" which "misled her," and which "is enough to state a claim under the ICFA." *Davis*, 2022 WL 4131588, at *3.

Notwithstanding that Plaintiff's allegations were not based on whether the lozenges contained fractions of corn mint oil, its assertion that "peppermint, which is depicted on the front of the Product's label, is a contributing source for the menthol in the Product which provides the therapeutic effect," was false. Def. Mem. in Support of Summary Judgment at 18 citing UMF 5-6; Def. Mem. at 18 citing UMF No. 7-10.

Indeed, this case was not about whether "the menthol active ingredient in the Product was non-herbal," but rather whether "a reasonable consumer would believe that Ricola lozenges [we]re powered by 'Swiss Alpine Herbs' rather than ordinary menthol." Def. Mem. at 15; *Davis*, 2022 WL 4131588, at *4.

Defendant had previously contended that any deception caused by the Product's front label was "overcome by the inclusion of menthol on the back label," an argument which was rejected. *Davis*, 2022 WL 4131588, at *4. Yet, "reasonable consumers" often do not scrutinize the back label, and they certainly do not read expert reports from cases they have no involvement with. Def. Mem. at 14-15.

What mattered, and what still matters, "is that Ricola's front label prominently notes only the presence of 'Swiss Alpine Herbs,'" such that "a reasonable consumer would believe that [the Product] [is] powered by 'Swiss Alpine Herbs,' rather than ordinary menthol," regardless of its origins in the corn mint plant. *Davis*, 2022 WL 4131588, at *4 citing *Bell*, 982 F.3d at 474.

12

As Plaintiff's expectations were neither "unreasonable [n]or fanciful," whether the "back label may [have] resolve[d] th[at] ambiguity [wa]s immaterial," similarly immaterial to Plaintiff's Counsel's alleged "bad faith," in not voluntarily dismissing this action, upon receipt of an expert report which addressed issues distinct from the underlying legal theory, beyond the time she could take the action Ricola now says she should have. *Davis*, 2022 WL 4131588, at *4 citing *Bell*, 982 F.3d at 474.

### IV.    NO LEGITIMATE QUESTIONS ABOUT PLAINTIFF'S PURCHASE OF RICOLA'S LOZENGES

Defendant's comparison of this action, to one filed by Plaintiff's Counsel, where a plaintiff inadvertently did not disclose to her counsel that she indirectly paid the defendant airline, through a tour group operator, such that she could "not rely on [its] representations about its environmental commitments," is not relevant to any substantive purpose relative to the ICFA's fee-shifting provision. Def. Mem. at 14-15 citing *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-cv-7962, 2024 WL 4265646, at *4 (S.D.N.Y. Sept. 23, 2024).

Unlike in *Dakus*, Plaintiff testified she viewed "Made With Swiss Alpine Herbs" on Ricola's front label, causing her to purchase them. Def. Mem. at 14-15 citing *Dakus*, 2024 WL 4265646, at *4; s*ee* ECF No. 37-1, Davis Tr., 111:23-112:4; 112:8-10; 112:18-24.

> Q    What is your problem with the Ricola product?
> A    That it is not specifically saying that it has menthol. It is claiming that it is all Swiss Alpine herbs.
> Q    But if you had read the entire package, you would have known what the ingredients were, correct?
> A    Yeah, but first glance…I'm going to look at that and go, oh, Swiss Alpine herbs, that's going to be more herbal and earthy . . .
> But with [] labeling [disclosing menthol] I don't feel like I'm paying more for something that doesn't have menthol in it . . .
> I could buy these brands about half the price of [the Product]. So, therefore, I'm paying more for Ricola because I'm

13

thinking that it is better for me.

This was consistent with her theory of damages, a "financial injury in the form of an overcharge," because "the Product is sold at a premium price…higher than it would be sold for, absent the misleading representations and omissions." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 695 (7th Cir. 2015); Compl. ¶ 32.

That her claims did not succeed does not mean attorney fees should be imposed against her and her counsel.

Accordingly, because "this case sought 'resolution of a genuine dispute,'" and there is "[no]thing suggesting that the litigation was brought in bad faith or for purposes of harassment," "the Court must conclude that [Plaintiff's] apparent good faith [] is sufficient to overcome the modest presumption in favor of an award of fees." *Wetzler v. Illinois CPA Soc'y & Found. Ret. Income Plan*, No. 07-cv-1326, 2008 WL 11366178, at *2 (C.D. Ill. Dec. 11, 2008).

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendant's Motion.

Dated: October 24, 2024

                                        Respectfully submitted,

                                        /s/Spencer Sheehan
                                        Sheehan & Associates P.C.
                                        60 Cuttermill Rd Ste 412
                                        Great Neck NY 11021
                                        (516) 268-7080
                                        spencer@spencersheehan.com

## Certificate of Service

I certify that on October 24, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan